UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

ROSELAND McGRATH,            )
                             )
            Plaintiff        )
                             )
        v.                   )   Case No. 2:07 cv 34
                             )
EVEREST NATIONAL INSURANCE   )
COMPANY,                     )
                             )
            Defendant        )

OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment filed by the defendant, Everest National Insurance Company, on February 6, 2008 (DE 77); the Motion for Leave to File Second Amended Complaint filed by the plaintiff, Roseland McGrath, on February 6, 2008 (DE 81); the Motion for Leave to Serve Answers to Plaintiff's Discovery with Objections filed by the defendant on February 11, 2008 (DE 83); the First Motion to Compel filed by the plaintiff on February 29, 2008 (DE 89); the Motion to Strike Improperly Filed Materials filed by the plaintiff on March 3, 2008 (DE 93); the Motion for Attorney Fees and Sanctions filed by the plaintiff on March 3, 2008 (DE 94); the Motion That Defendant's Motion for Summary Judgment be Denied Without Prejudice filed by the plaintiff on March 10, 2008 (DE 98); and the Motion for Leave to Substitute Amended Reply in Support of Motion for Leave to Serve Discovery Responses with Objections filed by the defendant on March 26, 2008 (DE 108).

For the reasons set forth below, the Motion for Summary Judgment filed by the defendant, Everest National Insurance Company, (DE 77) is **DENIED**; the Motion for Leave to File Second Amended Complaint filed by the plaintiff, Roseland McGrath (DE 81) is **GRANTED**; the Motion for Leave to Serve Answers to Plaintiff's Discovery with Objections filed by the defendant (DE 83) is **DENIED**; the First Motion to Compel filed by the plaintiff (DE 89) is **GRANTED IN PART** and **DENIED IN PART**; the Motion to Strike Improperly Filed Materials filed by the plaintiff (DE 93) is **DENIED**; the Motion for Attorney Fees and Sanctions filed by the plaintiff (DE 94) is **GRANTED**; the Motion That Defendant's Motion for Summary Judgment be Denied Without Prejudice filed by the plaintiff (DE 98) is **DENIED AS MOOT**; and the Motion for Leave to Substitute Amended Reply in Support of Motion for Leave to Serve Discovery Responses with Objections filed by the defendant (DE 108) is **GRANTED.**

<u>Background</u>

This action arose from injuries sustained by the plaintiff, Roseland McGrath, after falling while leaving Eli's Pub in Hammond, Indiana. McGrath's injuries formed the basis of a complaint filed in the Lake County Superior Court against Eli's Pub in September 2006. Service of this state court complaint was made on Randy Godshalk, the registered agent for Eli's Pub. On September 18, 2006, in a letter from the underwriters to "Aiden Allen LLC d/b/a Eli's Bar Randall Neely, LLC" the underwriters indicated that they were "in receipt of a summons and complaint"

2

and had retained the firm of Brenner, Ford, Monroe & Scott to defend the suit. A default judgment in the state court action was entered against Eli's Pub on October 4, 2006. In November 2006, McGrath amended her state court complaint to name Aidan Alan, LLC, an Indiana limited liability company that operated Eli's Pub, as an additional defendant. On November 28, 2006, one day before a hearing on damages following the entry of default, counsel for the defendants entered their appearance and moved to set aside the default judgment.

The Brenner, Ford, Monroe & Scott attorney who entered an appearance, K. Amy Lemon, did not have a valid license to prac-tice in Indiana. Further, prior to paying her past due Indiana license fees, Lemon also represented herself as local Indiana counsel in the *pro hac vice* application of a second defense attorney, Steven Kolodziej. The grounds for the denial of this application apparently were made clear to the attorneys. At the November 29, 2006 hearing, Lemon stated "I know my co-counsel Steve Kolodziej's pro hac vice was denied based on the problem with my license." (Hearing, p. 2) Nevertheless, in a letter sent less than two weeks later to Everest's third-party claims admin-istrator, Kolodziej stated that Lake Superior Court Judge Robert Pete "would not give a reason for this . . . It seemed clear from his demeanor and subsequent comments that Judge Pete does not like Chicago lawyers and was 'home-towning' me." (Pltf. Brief in Support of Mot. for Leave to File Second Am. Comp. Exh. 15) Kolo-dziej accused the plaintiff's attorney of manipulating the court

3

to obtain a judgment and stated "Judge Pete seems quite willing to allow - and to help - plaintiff do this." Kolodziej added, "I have never seen such an egregious abuse of discretion and miscarriage of justice by a trial judge, and I am quite frankly stunned at this turn of events."

The hearing was continued, and on December 11, 2006, evidence was presented regarding damages that followed from a series of medical complications that left McGrath wheelchair bound and in need of daily assistance. McGrath presented evidence in support of her damages exceeding $15 million. McGrath has alleged that the defendants presented no evidence of damages and did not contest the plaintiff's assertion of damages.

On December 8, 2006, the defendants filed a "Rule 60(b) Motion for Relief from Default Orders." On December 11, 2006, the defendants filed an answer to the amended complaint and an "Objection to the Court's Default Judgment Proceedings."

The plaintiff initially filed this federal court action against only Randy A. Godshalk, the sole member of the Aidan Alan, LLC, on February 8, 2007. In the complaint, McGrath alleged that Godshalk was the alter ego of the Aidan Alan LLC. On April 16, 2007, after learning of a second limited liability company controlled by Godshalk named Randall Neely, LLC, McGrath amended her federal complaint to allege that this company owned the real property and assets associated with Eli's Pub and also was negligent.  The amended complaint also named Everest National Insurance as a defendant.

4

In the amended federal complaint, McGrath alleged that Aidan Alan, LLC was insured under a policy with Everest separately from Rand- all Neely, LLC. McGrath's complaint alleged a count in negligence against Godshalk directly, another count in negligence against "Eli's Pub" as a sole proprietorship of Godshalk, and a count in negligence against Randall Neely, LLC. The complaint further included two counts seeking declaratory judgments. In the first, McGrath alleged that Godshalk was the alter ego of both Aidan Alan, LLC and Randall Neely, LLC. In the second declaratory count, McGrath sought a declaration that independent acts of negligence committed by the defendants Godshalk and the Randall Neely, LLC were separate "occurrences" according to the terms of the Everest policy, and consequently, the potential compensation is not limited to the policy's $1,000,000 "per occurrence" limit and instead may be measured by the policy's aggregate $2,000,000 limit.

Following some settlement discussions in April 2007 and again in December 2007, a mediation was scheduled for January 16, 2008.  Everest did not attend the mediation. However, the plain- tiff and the other defendants – Randall Neely, LLC, Eli's Pub, and Godshalk – agreed on a damage amount of approximately $12 million. These parties further agreed to withdraw the motions in state court to reconsider the default judgment. The plaintiff agreed not to execute on the judgment against these defendants in exchange for an assignment of these defendants' cause of action

against Everest. Accordingly, Everest is the sole remaining
defendant in this federal claim.

Discussion

Based on these events, McGrath seeks to her amend her com-
plaint. Leave to amend a party's pleadings "shall be freely given
when justice so requires." Federal Rule of Civil Procedure 15(a).
Permission to amend shall be granted absent evidence of bad
faith, dilatory motive, undue delay, or unfair prejudice to the
opposing party. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227,
230, 9 L.Ed.2d 222 (1962); *Jackson v. Rockford Housing Authority*,
213 F.3d 389, 393 (7th Cir. 2000)("The general rule that amend-
ment is allowed absent undue surprise or prejudice to the plain-
tiff is widely adhered to by our sister courts of appeal.");
*Larkin v. Galloway*, 266 F.3d 718, 722 (7th Cir. 2001). The court
also may deny leave because the amendment is futile. *Bethany
Pharmacal Company Inc. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir.
2001)(*citing Foman*, 371 U.S. at 182, 83 S.Ct at 230). Futility
generally is measured by whether the amendment would survive a
motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).
If a summary judgment motion is pending, futility may be shown
with reference to the entire summary judgment record. *Peoples v.
Sebring Capital Corp.*, 209 F.R.D. 428, 430 (N.D. Ill. 2002)
(*quoting Bethany Pharmacal Company*, 241 F.3d at 860). *See also
King ex rel. King v. East St. Louis School District 189*, 496 F.3d
812, 819 (7th Cir. 2007)(deciding motion to amend at summary
judgment and stating that "[a]n amendment is futile if the amend-

ed complaint would not survive a motion for summary judgment."). The decision of the district court to deny leave to amend a complaint is reviewed for abuse of discretion. *Ajayi v. Aramark Business Services*, 336 F.3d 520, 530 (7th Cir. 2003).

Everest has not raised the objection that the desired amendment violates the scheduling order established pursuant to Federal Rule of Civil Procedure 16. *See Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995); *Medical Informatics Engineering, Inc. v. Orthopedics Northwest P.C.,* 2008 WL 141504 at *1 (N.D. Ind. Jan. 11, 2008). *See also Crockett & Myers, Ltd. v. Napier, Fitzgerald, & Kirby*, 430 F.Supp.2d 1157, 1163 (D. Nev. 2006)("Where a party moves to amend the pleadings after a deadline set in the Rule 16 scheduling order, the Court should not modify the scheduling order except upon a showing of good cause."). Instead, Everest objects to the proposed amended complaint solely on the grounds of Federal Rule of Civil Procedure 8, noting that it is "anything but a short and plain statement of Plaintiff's claims." (Defendant's Response in Opposition, p. 4)

Rule 8(a)(2) requires nothing more of a complaint than a "short and plain statement of the claim showing that the pleader is entitled to relief." The rule goes on to state that "each averment of a pleading shall be simple, concise and direct." Rule 8(e)(1). "Although the Court generally regards Rule 8 as a shield for pleaders rather than a sword for those pleaded against, it is true that in unusual cases an excessively lengthy complaint may

7

be so confusing and disjointed as to warrant dismissal for fail-
ure to comply with Rule 8." *George v. Kraft Foods Global, Inc.*,
No. 06-cv-798, 2007 WL 853998 at *3 (S.D. Ill. March 16, 2007).
Courts have used a variety of terms to describe a pleading that
violates the short and plain statement requirement, and consis-
tently courts require something beyond mere length or even
redundancy. *United States v. Lockheed-Martin Corporation*, 328
F.3d 374, 378 (7th Cir. 2003); *Davis v. Ruby Foods, Inc.*, 269
F.3d 818, 820 (7th Cir. 2001)(noting that dismissal of a "com-
plaint merely because it contains repetitious and irrelevant
matter, a disposable husk around a core of proper pleading" is an
abuse of discretion.); *Bennet v. Schmidt*, 153 F.3d 516, 517 (7th
Cir. 1998)("Prolixity is a bane of the legal profession but a
poor ground for rejecting potentially meritorious claims.")

Rather, a complaint violates the rule when it fails to
provide notice to a party of the claim or is "unintelligible."
*Fidelity National Title Insurance Company of New York v. Inter-
county National Title Insurance Company*, 412 F.3d 745, 749 (7th
Cir. 2005)("Fidelity's 52-page complaint with its 177 numbered
paragraphs is sprawling, confusing, redundant - in short a mess.
And a district judge has the authority to dismiss a complaint
because it is confusing, though only in a rare case would he be
justified in dismissing it on this ground with prejudice . . .");
*Lindell v. McCallum*, 352 F.3d 1107, 1110 (7th Cir. 2003); *Davis*,
269 F.3d at 820; *Lockheed-Martin*, 328 F.3d at 376 (describing
complaint as "incomprehensible."); *Bennet,* 153 F.3d at 517

8

("rambling and disorganized"); *Vicom v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 776 (7th Cir. 1994)("confusing, redundant, and seemingly interminable").

Further, though a short plain statement is the minimum requirement, "in practice, a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atlantic Corporation v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007)(internal citations and quotations omitted); *Tomayo v. Blagojevich*, 526 F.3d 1074, 1082-1085 (7th Cir. 2008); *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)("allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court."). Consequently, a plaintiff is required to do no more than navigate the wide berth between the need to present sufficient, non-speculative allegations and the need to avoid a rambling, incomprehensible complaint.

In her proposed amended complaint, McGrath has alleged a claim for declaratory relief that separate negligent acts of Eli's Pub and Randall Neely, LLC, constitute different occurrences according to that term in the policy. McGrath also has asserted claims against Everest pursuant to the assignment of claims from the former defendants. These include claims for

breach of contract, bad faith and breach of fiduciary duty, negligence, and fraud.

The 49-page amended complaint includes 230 numbered para-graphs. It is lengthy, but it is not incomprehensible, rambling, disorganized, confusing, redundant, or seemingly interminable. In fact, Everest does not suggest the complaint exhibits any of these characteristics and instead objects to the "undue burden" of responding to the volume of allegations. This case, which began as a routine, though serious, slip and fall, has acquired an inordinate degree of complexity. Under *Bell Atlantic*, each of these new claims, which include a fraud claim subject to the heightened pleading of Federal Rule of Civil Procedure 9(b), must be alleged with enough detail to "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Concentra Health Services, Inc.*, 496 F.3d at 776. There is no indication that McGrath has gone beyond this level. Further, *Bell Atlantic*, which requires a party to plead allegations "respecting all the material elements necessary to sustain recovery under *some* viable legal theory," casts consider-able doubt on the conclusion that Everest draws from *Clausen & Sons, Inc. v. Theo. Hamm Brewing*, 395 F.2d 388 (8th Cir. 1968) (noting that a complaint need not "formulate the issues" or "summarize the facts"). Accordingly, even if McGrath may have been capable of reducing the length of the complaint, Everest has presented insufficient grounds to support denying leave to file the amended complaint. *See Lockheed Martin*, 328 F.3d at 378

10

("Some complaints are windy but understandable. Surplusage can and should be ignored. Instead of insisting that the parties perfect their pleadings, a judge should bypass the dross and get on with the case."). McGrath's motion for leave to file a second amended complaint is **GRANTED.**

The initial question raised by Everest's motion for summary judgment regards the timeliness of the motion in light of the scheduling order adopted at the Rule 16 conference held on November 30, 2007. At that conference, the court entered an order establishing a series of deadlines, including that dispositive motions were to be filed by December 31, 2008 and a briefing schedule based on this date.  (DE 64) McGrath argues in her motion to defer ruling on the summary judgment that Everest was not entitled to file the motion until December 31, 2008. McGrath's related argument is that, pursuant to the order, she is not required to respond until January 29, 2009. Everest, in turn, has argued that the order established only the outside date for filing the motion - noting that it set a date "to be filed by" - and, perhaps implicitly, that the briefing schedule established by the local rules of this court establish the dates by which subsequent briefs must be filed.

Everest has the more accurate view of the scheduling order. Federal Rule of Civil Procedure 56(b) provides that a defendant "may, at any time, move . . . for summary judgment." *See also* ***Daley v. Grajec***, 1:06-cv-1493, 2007 WL 2286132, at *4 (S.D. Ind. August 7, 2007)("Plaintiffs argue that the motion for summary

judgment is 'inappropriate' and 'premature,' but there is no such thing as a premature motion for summary judgment."). There is no indication that the minute entry setting this date was intended to contradict the rules. Further, Rule 56(f) provides the mechanism by which a party who believes the record is insufficient to respond to a summary judgment may seek relief. In fact, the bulk of McGrath's argument is based on Rule 56(f), which provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

A motion seeking relief under Rule 56(f) requires the non-moving party to file an affidavit "outlining the reasons for needing further discovery." *Woods v. City of Chicago*, 234 F.3d 979, 990 (7th Cir. 2001). Generally, Rule 56(b) does not require that discovery commence or reach any certain point before filing, or granting, a motion for summary judgment. *Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641, 648 (7th Cir. 2006). Accordingly, a non-moving party's affidavit must demonstrate, beyond general assertions that discovery is needed, that further discovery is likely to "unearth" a genuine issue of material fact. *Woods*, 234 F.3d at 990-91; *Allen v. Martin*, 460 F.3d 939, 943 (7th Cir. 2006)("Diligence in obtaining the evidence, however, is not the issue under Rule 56(f); we are con-

cerned with whether the facts sought are essential to justify the party's opposition.").

Everest's motion for summary judgment has alleged that the injury suffered by McGrath was a single "occurrence" as that term is used in the policy. McGrath, in support of her Rule 56(f) motion, has responded that the use of the term is ambiguous and that discovery would shed light on its meaning.

Under Indiana law, "the interpretation of an insurance policy presents a question of law and is thus appropriate for summary judgment." *Cinergy Corporation v. Associated Electric & Gas Insurance Servcices, Ltd.*, 865 N.E.2d 571, 574 (Ind. 2007). Insurance policies are subject to the same rules of construction as other contracts, and when the language is clear and unambiguous, it is given its plain and ordinary meaning. *Cinergy Corporation*, 865 N.E.2d at 574; *Amerisure, Inc. v. Wurster Construction Company, Inc.*, 818 N.E.2d 998, 1001-02 (Ind. App. 2004). When language is ambiguous, the contract will "be construed strictly against the insurer and the language must be viewed from the standpoint of the insured." *Cinergy Corporation*, 865 N.E.2d at 574. An insurance contract is not deemed ambiguous merely because parties dispute its meaning or application, but instead "when reasonable people would honestly differ as to the meaning of its terms." *Amerisure, Inc.*, 818 N.E.2d at 1002 (*citing Ramirez v. American Family Mutual Insurance Company*, 652 N.E.2d 511, 514 (Ind. App. 1995).

Both motions depend on whether the use of the term "occurrence" in this policy is ambiguous, at least as a threshold consideration in support of McGrath's bid to conduct discovery on the issue. From Everest's perspective, a conclusion that the events surrounding McGrath's injuries unambiguously constitute a single occurrence resolves the single issue raised in McGrath's declaratory count, namely whether the $1,000,000 limit per occurrence provision is implicated.

The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Section V, 13) The policy does not define accident. The policy provides that the insurer "will pay those sums that the insured becomes legally obligated to pay as damages" but that "the amount we will pay for damages is limited as described in Section III." (Section 1 – 1(a)) Section III makes clear that the limits of insurance are implicated regardless of the number of insureds, the number of claims, or the number of persons making claims. Finally, the policy's declarations indicate that the insureds on the policy are "Aiden Allen, LLC DBA Eli's Bar and Randall Neely, LLC" and that the limits of the policy include a general aggregate limit of $2,000,000 and an "each occurrence limit" of $1,000,000.

In large part, the parties' dispute regards whether an "occurrence" is the defendants' conduct that produces the injury – the cause – or, in contrast, the effects of the defendants' conduct on the plaintiff.  In some instances – A hits B, for

14

example – it is not difficult to make such a distinction. In other examples, the two events, cause and effect, are widely separated. For instance, a building owner's negligent maintenance of a stairway may not cause a fall for months or years. If a dozen people are on the stairway when it finally collapses, the "cause" focused inquiry would find a single occurrence. The effects inquiry would find twelve. The majority of courts interpreting identical and nearly identical definitions of "occurrence" generally conclude that the proper focus is upon the causative act. *See U.E. Texas One-Barrington, Ltd. v. General Star Indem. Co.*, 332 F.3d 274, 277 (5th Cir. 2003)("Under Texas law, the proper focus in interpreting 'occurrence' is on the events that cause the injuries and give rise to the insured's liability, rather than on the number of injurious effects."); *Heggem v. Capitol Indem. Corp.*, 336 Mont. 429, 438, 154 P.3d 1189, 1195 (2007)("In interpreting the term 'occurrence' as used in liability policies which limit the insurer's liability to a specified amount per 'occurrence,' the vast majority of courts view it from the perspective of causation – referring to the cause or causes of the damage or injury – and not the number of injuries or claims.").

Indiana cases, though apparently not confronting the question directly, also focus upon the causative acts, rather than the injury. *See e.g. Cinergy Corporation*, 865 N.E.2d at 582 (noting policy language that conditioned an insurer's obligation to compensate an injury "caused by an 'occurrence.'"); *Amerisure,*

818 N.E.2d at 1004-05 (noting that Indiana "case law in this area is limited," and examining whether workmanship can constitute an occurrence in a commercial general liability policy.).

The policy at issue appears to conform to this view, particularly when it notes that the coverage limits are applicable regardless of the number of insureds, the number of claims, or the number of persons making claims. In other words, the limits apply regardless of whether one or more people were injured on the hypothetical stairway. This detail shifts the focus away from the injury - specifically the number of claims or number of persons making claims - and consequently supports the causative view. The policy at issue also contains language identical to that in *Cinergy Corporation*, limiting coverage to "'bodily injury' or 'property damage' . . . *caused by an 'occurrence*.'" (emphasis added) These details support McGrath's allegation that the policy may provide coverage if more than one "occurrence" lead to her injuries.

In addition, the court acknowledges that at a theoretical level a single injury may give rise to liability for multiple defendants based upon their separate acts that contributed to the injury. However, the key to McGrath's argument is the statement that the policy "applies as if each Named Insured were the only Named Insured; and separately to each insured against whom claim is made or 'suit' is brought." (Pltf Brief in Support, p. 4) According to McGrath, this provision, and the fact that Eli's Pub is a named insured and Randall Neely, LLC also is a named in-

16

sured, means that these two entities are treated as though they had independently purchased separate liability policies. However, McGrath approaches this provision too generally. The provision on which McGrath relies, under the heading "Separation of Insureds," expressly excludes its application to the policy's Limits of Insurance section. Consequently, when interpreting the limits of the policy - specifically the aggregate and per occurrence limits - separate insureds are not treated as though each was independent of the other. This conclusion is further clarified in the Limits of Insurance section where it states that the aggregate and per occurrence limits are "the most we will pay regardless of the number of insureds."

However, all that this conclusion establishes is that $2,000,000 is the most that ever can be paid under this policy, whether there are one or more "insureds." Under the causative definition of "occurrence," it still may be possible that one insured entity engaged in multiple separate acts that caused an injury. *See **Arizona Property and Casualty Insurance Guaranty Fund v. Helme***, 153 Ariz. 129, 135, 735 P.2d 451, 457 (1987)("Multiple acts causing a single injury will constitute multiple occurrences, while a single act will constitute a single occurrence even though it causes multiple injuries or multiple episodes of injury"); ***Wiltshire v. Virgin Island***, 893 F.2d 629, 634 (3rd Cir. 1990)(describing separate acts of negligence underlying a single malpractice claim as "the unusual factual scenario . . . where

three separate acts of negligence were inflicted upon one person" as "peculiar" but "not an impediment to recovery.").

However, that is not McGrath's allegation. To the contrary, McGrath appears to rely on an argument that separate entities - each an insured - caused her injury. The factual basis under which McGrath supports this is not spelled out. In fact, because of the posture of this case, following a default judgment in state court, it is not necessary for McGrath to do so here. The default judgment in the state court action is a judgment on the merits. *Eichenberger v. Eichenberger*, 743 N.E.2d 370, 374 (Ind. App. 2001)("A default judgment is a judgment on the merits for the purpose of res judicata."); *Whitaker v. Ameritech Corporation*, 129 F.3d 952, 957 (7th Cir. 1998)("The fact that Whitaker failed to defend her case does not alter this analysis because a default judgment in Illinois is a judgment on the merits and has the same preclusive effect as a judgment resulting from arduous litigation.").

The state court complaint on which the default judgment was entered, alleged that McGrath's damages were caused by the "unreasonably steep angle of the defendant's entryway step," and in a separate count, alleged that the defendant also negligently allowed ice to accumulate on the stairs. The defendants' failure to defend the suit in state court allows preclusive effect to attach to both causes. In light of this conclusion - that separate factual causes trigger multiple occurrences under the policy and that the state court judgment determined two separate causes

18

- the defendant's motion for summary judgment as a matter of law is **DENIED.** The plaintiff's motion under Rule 56(f) is **DENIED AS MOOT.**

There remain a significant number of disputes between Everest and McGrath. The first of these revolves around Everest's motion for leave to serve answers to plaintiff's discovery requests with objections. Addressing the same requests, McGrath has filed a motion to compel. In addition, Everest has filed a Motion for Leave to Substitute Amended Reply in Support of Motion for Leave. (DE 108) This motion is **GRANTED.** The reply filed as an exhibit to that motion is **DEEMED** properly filed.

A party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things." Federal Rule of Civil Procedure 26(b)(1). For discovery purposes, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (*quoting Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)). Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard. *Sanyo Laser Products, Inc. v. Arista*

19

*Records, Inc.*, 214 F.R.D. 496, 502 (S.D. Ind. 2003). *See Adams v. Target*, 2001 WL 987853, *1 (S.D. Ind. July 30, 2001) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action").

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses.  Federal Rule of Civil Procedure 37(a)(2)-(3).  The burden "rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Protection District*, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006).  The objecting party must show with specificity that the request is improper.  *Graham v. Casey's General Stores*, 206 F.R.D. 253, 254 (S.D. Ind. 2002).  That burden cannot be met by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Burkybile v. Mitsubishi Motors Corp.*, 2006 WL 2325506, *6 (N.D. Ill. Aug. 2, 2006) (internal quotations and citations omitted).

A series of errors creates the backdrop for the motion and the parties' disputes. Everest's motion for leave to serve objections was filed and refiled three times.  On February 5, 2008, Everest sought to withdraw the most recent filing of the motion so that it could "file as an exhibit a single document that contains both the discovery questions and responses and

20

objections." In the motion, Everest indicated that "the reason
the document was filed three times was due to the mistakes of
Defense counsel's staff member." (Motion to Withdraw ¶ 6) The
motion was granted, and on February 11, 2008, the motion for
leave to serve answers again was filed. In this motion, Everest's
attorney indicated that he "believed that he had requested from
Plaintiff's attorney, an extension to provide answers" but then
realized "such a request was not made."  Everest further indi-
cated that on the day after the responses were due to the discov-
ery requests in question, January 22, 2008, the plaintiff's at-
torney wrote to the defendant insisting upon production of the
answers and threatening that objections had been waived. However,
Everest later filed a supplement to its Local Rule 37.1 certifi-
cation to indicate that such a letter, in fact, was not sent
until January 28, 2008, as well as to correct another "editing
error." McGrath's response to the motion, primarily in its motion
to strike, noted that Everest, even with the final version filed,
did not in fact file the exhibit as a single document that con-
tained both the questions, responses, and objections and filed
responses that did not match those eventually served on McGrath.
In the meantime, McGrath also argued that motion is procedurally
improper because it is not "grounded in any court rule or proce-
dure."

 In the meantime, against this backdrop, the substantive
nature of this issue has changed. First, in the context of the
case, the relief sought in Everest's motion is clear, even though

Everest was not explicit in naming the rule on which the motion was grounded. The time in which to respond to outstanding discovery requests had passed, and the risk of waiver of objections loomed. As such, the motion is the equivalent of a motion seeking to assert untimely objections. This standard is described in Federal Rule of Civil Procedure 33(b)(4), which provides that "The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."

Everest has claimed that good cause exists to permit the belated objections and has acknowledged that the primary reason that the responses were not made was Everest's attorney's mistaken belief that he sought an extension. Everest incorrectly asserts that such a mistake is good cause under the rules. *See Tschantz*, 160 F.R.D. at 572 (collecting cases). Everest further appears to suggest that good cause exists because the plaintiff seeks information that Everest considers irrelevant. However, this merely restates the objection and not a grounds for making belated objections.

When objecting, the party must show with specificity that the request is improper. *Graham*, 206 F.R.D. at 254. As previously stated, that burden cannot be met by a catch-all objection. *Burkybile*, 2006 WL 2325506, at *6. Everest almost exclusively has relied on exactly this reflexive and generalized form of objection. Accordingly, Everest has not shown good cause and has

22

not made valid objections. The motion for leave to serve answers is **DENIED.**

This motion likely also is moot, but only in part. As discussed above, some discovery sought by McGrath regarding the interpretation of the insurance policy was not required in light of the standard by which policies are construed and the court's conclusion that the policy was ambiguous.  This detail renders moot discovery aimed at the issue of defining "occurrence." However, McGrath also served discovery aimed at responses Everest made in its answer to McGrath's amended complaint. Specifically, McGrath sought information regarding Everest's denial that Randall Neely, LLC  is a named insured under the policy. Specifi- cally, in the complaint, McGrath recited that the declarations page of the policy lists "Aiden Allen LLC" and "Randall Neely" as separate named insureds. Everest has denied this allegation. Interrogatory 3 asks precisely for the basis for this denial. In its response to the interrogatory, Everest has suggested that the interrogatory asks for irrelevant information because it is "vague" and violates the work product doctrine. Everest has not supported these assertions in its motion to serve belated objec- tions or in its response to the motion to compel. It is difficult to imagine the substance of such an argument had Everest tried to make it. Relevance is gauged by the issues raised in the plead- ings, and in this case, the answer filed by Everest raised this issue. Everest further ignored the application of the work product doctrine to information prepared in anticipation of

23

litigation. *See* Rule 26(b)(3)(A)("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."); *Mattenson v. Baxter Healthcare Corp.,* 438 F.3d 763, 768 (7th Cir. 2006); *Hobley v. Burge,* 433 F.3d 946, 949 (7th Cir. 2006). There is no argument made that the basis for listing Randall Neely on the declarations page of the policy was, or even could have been, accomplished in anticipation of this litigation over an accident that had not yet occurred. The suggestion portrays a fundemental misunderstanding of the doctrine. *See Stout v. Illinois Farmers Ins. Co.,* 150 F.R.D. 594, 598 (S.D. Ind. 1993).

In other cases, Everest has engaged in gamesmanship. Its response to Interrogatory 5 stated that "Interrogatory 5 is a misstatement. Randall Neely is not a named insured under the policy. Under the policy of insurance, the named insured is "Randall Neely, LLC." It is not clear if Everest was suggesting that because McGrath did not include "LLC" this interrogatory includes a "misstatement."  In addition, it also is not clear whether Everest intended to contradict its position that Randall Neely, LLC was not an insured under the policy.  For what its worth, McGrath's "definitions," which provided that a reference to Randall Neely was equivalent to a reference to Randall Neely, LLC, would clear up this discrepancy. The court further notes that Everest objected to any definitions in its answers to these

24

interrogatories because the "Federal Rules of Civil Procedure do
not allow for definitions" in interrogatories. Everest never
expounded on or supported this theory. In fact, such support
would appear to be lacking. *See e.g.* ***Deseret Management Corp. v.
United States***, 75 Fed.Cl. 571, 572 (Fed. Cl. 2007)(noting without
objection interrogatories that included "a preliminary statement
[and] definitions section."); ***Chudasama v. Mazda Motor Corp.***,
123 F.3d 1353, 1357 (11th Cir. 1997).  This is exactly the type
of discovery dispute that the federal rules and local rules
anticipate parties should work out without involving the re-
sources of the court.  In any event, the interrogatory sought
relevant information, and Everest has not made a valid objection.
To the extent that McGrath has sought discovery related to
Everest's denial that Randall Neely - or Randall Neely, *LLC* - is
an "insured" under the policy, the motion to compel is **GRANTED.**

With other requests, McGrath has sought information in terms
that strain the broad reach of discovery under the federal rules.
For instance, in one request for production, McGrath sought "any
and all documents and/or materials comprising or related to the
application for the Policy of Insurance and supporting materials,
the processing of the policy application, or the drafting review-
ing, editing, or approval of the declarations page of the pol-
icy." Further, as Everest points out, the operative complaint at
the time this discovery was served included claims based on the
aggregate policy limit and the denial of Randall Neely as an
insured. The first issue has been resolved with this order, and

25

the court has concluded that McGrath is entitled to discovery on the second. No further discovery is warranted under that complaint. Notwithstanding Everest's almost complete failure to offer specific objections, the court will not order production of irrelevant material. Accordingly, the balance of McGrath's motion to compel is **DENIED.**

This analysis likely will be altered in subsequent instances under the amended complaint, which brings the court to the subject of sanctions. In her separate motions for sanctions, as well as the motion to strike, McGrath details her efforts to gain appropriate, timely responses to discovery, as well as the details surrounding the increasingly contentious nature of the parties' attempts to meet even the most basic levels of cooperation contemplated by the rules. McGrath has argued that behind this inability to cooperate and inordinate number of errors claimed by Everest, that Everest has maintained inconsistent representations to McGrath and to the court, has made insincere and ineffective attempts to resolve these issues, and has failed to conform with this court's September, 18, 2007 order.

In this context, McGrath first seeks an order striking Everest's motion for leave to serve objections as well as the Local Rule 37.1 certification filed by Everest. Because the court has denied the motion, striking the motion raises a moot issue. Regarding Everest's Rule 37.1 certification, the parties dispute whether they have represented in good faith that they attempted to resolve discovery disputes as required by Rule 37. The content

26

of the Rule 37 certification does not warrant an order striking the certification. The motion to strike is **DENIED**. Nevertheless, the court will not tolerate disputes that have run this far afoul of the rule's requirement, particularly in light of a case that, in its early stages, has demanded an inordinate amount of the court's resources. Accordingly, beginning with this order, sanctions will be imposed.

The failure to disclose, which includes providing evasive or incomplete answers, is sanctionable and properly remedied by an order compelling discovery.  Rules 37(a)(2)(B), (a)(3), (a)(4); *Lucas v. GC Services, L.P.*, 226 F.R.D. 328, 329-30 (N.D. Ind. 2004). Rule 37(a)(4)(A) states that the court shall require sanctions based upon the costs of seeking a motion to compel. *Stookey v. Teller Training Distributors, Inc*., 9 F.3d 631, 637 (7th Cir. 1993)("Rule 37(a)(4) clearly allows for an award of the expenses incurred in obtaining an order to compel, including attorney's fees."). Sanctions under Rule 37(a)(4) are appropriate unless the party's nondisclosure was "substantially justified." Rule 37(a)(4)(A). In addition, Rule 37(c)(1) states that a party who fails to disclose, provides false or misleading disclosure, or refuses to admit information required by Rule 26(a) without "substantial justification" may be sanctioned unless such failure was "harmless." *See Musser v. Gentiva Health Services*, 356 F.3d 751, 755 (7th Cir. 2004); *Salgado v. General Motors Corp*., 150 F.3d 735, 742 (7th Cir. 1998). *See also Engel v. Town of Rose-land*, 2007 WL 2903196 at *6 (N.D. Ind. Oct. 10, 2007). Thus, Rule

27

37(a) is a fee-shifting rule, and the loser must pay unless it demonstrates that its position was "substantially justified."

In a response that barely tops two pages, Everest suggests that McGrath is not entitled to sanctions because she has not shown that Everest's position in raising objections was not substantially justified. The argument demonstrates Everest's misunderstanding of the rule.  In response to the discovery requests, Everest offered nothing more than a series of boiler-plate, virtually meaningless objections and now purports to require McGrath to prove they were not substantially justified. In fact, it is Everest's burden to show that these objections were justified. As should have been made clear by this point, they were not. Further, whether the ill motive that McGrath alleged actually is present in this instance is irrelevant. The rule presumes sanctions absent justification. There is no bad-faith requirement. Accordingly, the motion is **GRANTED.** McGrath is **ORDERED** to submit an affidavit of costs associated with filing the motion to compel and the motion for sanctions within 20 days of the date of this order.  Given the nature of this case, McGrath is **WARNED** that any fee request must be reasonable.

The court notes that the claims described in the amended complaint are almost certain to broaden discovery in this matter. With the addition of the assigned claims, the amended complaint includes claims for breach of the insurance contract based upon allegations that Everest improperly denied that Randall Neely, LLC was an insured and failing to provide independent counsel, a

28

claim that Everest acted in bad faith, a claim that Everest acted negligently in the state court proceeding, and a claim alleging fraud. Across two lengthy orders, this court has made clear the standards by which pleading is accomplished and the limits of relevancy in this matter. The court reiterates now that unnecessarily revisiting these issues will result in further sanctions.

––––––––––––––––––

For the foregoing reasons, the Motion for Summary Judgment filed by the defendant, Everest National Insurance Company, on February 6, 2008 (DE 77) is **DENIED;** the Motion for Leave to File Second Amended Complaint filed by the plaintiff, Roseland McGrath, on February 6, 2008 (DE 81) is **GRANTED;** the Motion for Leave to Serve Answers to Plaintiff's Discovery with Objections filed by the defendant on February 11, 2008 (DE 83) is **DENIED;** the First Motion to Compel filed by the plaintiff on February 29, 2008 (DE 89) is **GRANTED IN PART** and **DENIED IN PART;** the Motion to Strike Improperly Filed Materials filed by the plaintiff on March 3, 2008 (DE 93) is **DENIED;** the Motion for Attorney Fees and Sanctions filed by the plaintiff on March 3, 2008 (DE 94) is **GRANTED;** the Motion That Defendant's Motion for Summary Judgment be Denied Without Prejudice filed by the plaintiff on March 10, 2008 (DE 98) is **DENIED AS MOOT;** and the Motion for Leave to Substitute Amended Reply in Support of Motion for Leave to Serve Discovery Responses with Objections filed by the defendant on March 26, 2008 (DE 108) is **GRANTED.**   The plaintiff is **DIRECTED** to

file separately the amended complaint attached as an exhibit to her motion.

ENTERED this 19th day of June, 2008

s/ ANDREW P. RODOVICH
United States Magistrate Judge