UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

ROSELAND McGRATH,                    )
                                     )
              Plaintiff              )
                                     )
        v.                           )    Case No. 2:07 cv 34
                                     )
EVEREST NATIONAL INSURANCE           )
COMPANY,                             )
                                     )
              Defendant              )

OPINION AND ORDER

This matter is before the court on the Motion for Partial
Judgment on the Pleadings, or Alternatively, Partial Summary
Judgment [DE 145] filed by the plaintiff, Roseland McGrath, on
September 15, 2008; Everest National Insurance Company's Motion
to Strike Portions of Plaintiff's Statement of Material Facts [DE
162] filed on October 20, 2008; and the Motion to Strike Ever-
est's "Reply" Brief or, Alternatively, to File Response [DE 179]
filed by McGrath on November 24, 2008.  For the following rea-
sons, the Motion to Strike Portions of Plaintiff's Statement of
Material Facts [DE 162] is **DENIED,** the Motion to Strike Everest's
"Reply" Brief [DE 179] is **GRANTED,** and the Motion for Partial
Judgment on the Pleadings, or alternatively, Partial Summary
Judgment [DE 145] is addressed as a Motion for Partial Summary
Judgment and is **GRANTED IN PART** and **DENIED IN PART.**

Background

On February 11, 2005, the plaintiff, Roseland McGrath, fell
as she was using the front door of Eli's Pub in Hammond, Indiana.

At the time of McGrath's fall, Eli's Pub was a named insured on a Commercial General Liability Policy of Insurance maintained with Everest National Insurance Company. McGrath's counsel advised Randy Godshalk, the principal member of the company operating Eli's Pub, Aidan Alan, LLC d/b/a Eli's Pub, of her claim against the pub. Godshalk, in turn, reported her claim to Everest and its third party administrator, Risk Control Associates ("RCA"). Godshalk also is an attorney licensed to practice law in Indiana.

On September 5, 2006, McGrath, filed a complaint against "Eli's Pub" in the Lake County Superior Court. Service of this state court complaint was made on Godshalk. Godshalk also was the managing or principal member of Randall Neely, LLC, which owned the building and leased that property to Eli's Pub. The complaint was sent by certified mail to Eli's Pub, and plaintiff's counsel also sent a copy of the complaint to Peter Buthmann, a representative from RCA who had investigated the claim for the insurer.

On September 8, 2006, an Everest manager contacted Stephen Kolodziej, an attorney at the law firm of Brenner, Ford, Monroe & Scott ("Brenner Ford"), and Kolodziej advised Everest that Brenner Ford employed a licensed Indiana attorney who could appear for and defend the interests of Everest's insureds in the state court action. On this basis, Everest retained Brenner Ford.

On September 18, 2006, in a letter from RCA to "Aiden Allen LLC t/a Eli's Bar, Randall Neely, LLC" (hereafter, "the insureds"), RCA indicated that it was "in receipt of a summons and

complaint" in the state court action and had retained the firm to defend the insureds in the matter. This letter contained explicit instructions to the insureds to cooperate fully in the defense and investigation of the claim, instructions repeated in another letter the next day.

No appearance was entered by any attorney from Brenner Ford in the state court matter, and on October 4, 2006, an order of default was entered against Eli's Pub. A hearing on McGrath's damages was set for November 29, 2006. In the interim, Kolodziej corresponded with McGrath's counsel, Donald Wruck, on several occasions. In a letter dated October 13, 2006, Kolodziej informed Wruck that Eli's Pub, the defendant named in the complaint, was "merely a name, and not a legal entity amenable to suit." (Pltf. Mot. Ex. 11) Kolodziej suggested the misnomer, but he kept the insureds' identity undisclosed and ignored return communications asking for accurate information to amend the complaint. This notion of an error in identity was repeated in a November 16, 2006 letter from Kolodziej to Godshalk, wherein Kolodziej explained that his research confirmed that because the named defendant was not an existing legal entity, the lawsuit was a nullity under Indiana law. (Pltf. Mot. Ex. 10) Kolodziej described his strategy to Godshalk:

> We are therefore taking no action with respect to that lawsuit, and will not file an appearance or any other pleading with the court until and unless plaintiff amends her complaint to name a real person or corporation amenable to suit, [sic] and properly serves that defendant with summons. Hope-

> fully, plaintiff will fail to do this prior
> to the expiration of the statute of limita-
> tions in February, 2007.

(Pltf. Mot. Ex. 10)

Wruck, alerted by Kolodziej's evasive correspondence and failure to provide subsequent answers, searched state records in an effort to identify the proper legal entity to be sued. The records of the Indiana Alcohol and Tobacco Commission revealed the defendant's full name designation as "Aidan Alan, LLC d/b/a Eli's Pub." With this information in hand, Wruck obtained an order from the state court correcting the misnomer of the defendant. The same day that the order correcting the defendant's name was entered, Kolodziej sent Wruck another letter, this time advising of his firm's representation of Aiden Allen, LLC[1] and its intention to enter an appearance and file a motion to vacate the order of default entered against Eli's Pub.

On November 27, 2006, Brenner Ford attempted to enter the appearance of Kolodziej and K. Amy Lemon on behalf of the insureds and filed an emergency motion to vacate the default order. At that time, however, Lemon was suspended from the practice of law in Indiana for nonpayment of dues. Kolodziej had petitioned the court to appear *pro hac vice*, relying on Lemon as local co-counsel. Both applications for appearance were denied - Lemon's due to her suspension and Kolodziej's as defective. Lemon was

---

[1]The various spellings of "Aidan" are intentional: the court is providing accurate representations of the record. The spelling on the policy is "Aiden." (Pltf. Ex. 1) Eli's Pub is also referred to as "Eli's Bar" in the policy and in correspondence from RCA.

able to reinstate her Indiana license on the morning of the hearing, and she alone appeared before Judge Robert Pete for the damages hearing. Lemon presented Kolodziej's *pro hac vice* motion once again, which Judge Pete again denied as defective.[2] The court also heard argument on the motion to vacate the entry of default, denied the motion twice on the record, then proceeded to conduct the scheduled hearing on McGrath's damages.

Lemon, sole counsel appearing for the insureds, was unprepared to participate in the damages hearing. Although Kolodziej's application to appear listed good cause for admittance "due to the attorney-client relationship that has remained for an extended period of time[,]" Lemon stammered a stream of reasons why the hearing on damages should not proceed, including the fact that "[her] office has not even had a chance to meet with the client yet." (Pltf. Ex. 15, Transcript of Hearing on Damages, Nov. 29, 2006, p. 8) McGrath called witnesses concerning damages, but Lemon failed to conduct any cross-examination, each time professing her lack of preparation. At the close of this hearing, the court foreclosed any further discussion on the entry of judgment on liability, but allowed another setting for the defendants to provide evidence on damages.

---

[2]McGrath includes as an exhibit the Indiana Rules for Admission to the Bar detailing the requirements for limited admission on petition. Although Kolodziej's application lacked the required elements, such a rehashing of Judge Pete's decision to deny the application is unnecessary: the state court decision on this issue was made on the merits and will not be questioned here.

After this initial hearing, Kolodziej reported the case's "unbelievable turn of events" in a letter to Buthmann at RCA.[3] Among other things, this letter distorted the nature of the strategy that Kolodziej had chosen to pursue by identifying Godshalk, the representative of the insureds, as an Indiana attorney and using the plural pronoun "we" in describing the choice neither to enter an appearance nor to answer the complaint.

The hearing on damages proceeded on December 11, 2006, but counsel for the insureds failed to present any evidence on the issue of damages. At the close of the hearing, the court permitted damage briefs rather than argument, and McGrath submitted her Brief on Damages requesting an award of economic and non-economic damages in a maximum sum of $15,825,024, plus any punitive damages the court deemed appropriate. Counsel for the insureds never filed a brief on damages nor contested McGrath's calculations.

Just days after the close of the damages hearing, counsel for the insureds filed a Motion to Reconsider in an effort to be relieved of the default, but no hearing ever was held to address it. Unfortunately, in March 2007, Judge Pete unexpectedly died, and the issue of damages was unresolved. The judge temporarily

---

[3]Comparison of the content of letters sent by Kolodziej throughout his representation of the insureds is rich with irony and prevarication. Kolodziej's apocryphal surprise at the default entry is overshadowed only by his litany of misleading accusations of unethical conduct by McGrath's counsel and Judge Pete.

assigned to Judge Pete's court entered an order on April 11, 2007, denying McGrath's Motion for Determination of the Damages On Submission Without Further Hearing, stating that without such a stipulation of the parties, a hearing should be held on the matter.

McGrath initiated this federal cause of action in February 2007, originally asserting claims against Godshalk, Randall Neely, LLC, and Everest. McGrath's federal complaint alleged that Aidan Alan, LLC was insured under a policy with Everest separately from Randall Neely, LLC. She alleged a count in negligence against Godshalk directly, another count in negligence against "Eli's Pub" as a sole proprietorship of Godshalk, and a count in negligence against Randall Neely, LLC. McGrath further sought two counts seeking declaratory judgment: the first, alleging that Godshalk was the alter ego of both LLCs, and the second, seeking declaration that independent acts of negligence committed by the defendants Godshalk and Randall Neely, LLC were separate "occurrences" according to the terms of the Everest policy.

In response to the federal lawsuit, Everest informed Godshalk that "it was [its] position that there may not be coverage for this matter under the Everest policy[,]" even though Randall Neely, LLC appeared on the Named Insured Amendment of the policy and Everest's claims adjuster indicated that "[a] review of our policy indicates that Randall Neely, LLC is an additional insured under our policy." (Pltf Ex. M) Everest agreed to defend the

insureds subject to a reservation of rights that there may not be coverage under the policy.[4]  The insureds again were reminded that "[p]olicy conditions require that you cooperate fully." (Pltf. Ex. L)  In its answers, Everest denied that Randall Neely, LLC was a named insured on the policy.  With this denial, Everest also denied that the policy's $2,000,000 General Aggregate benefits were applicable to McGrath's claims.[5]

The insureds now were left with a state court entry of default in a lawsuit seeking $15 million in damages and a federal court proceeding where Everest, in full control of the defense, repeatedly denied that the policy provided coverage.  Although Wruck informed Everest of the conflicts of interest involved, the insureds were not provided with independent representation.  In July 2007, Godshalk personally retained Terrence Rubino of Rubino, Ruman, Crosmer, Smith, Sersic & Polen ("Rubino Ruman"), to represent his interests.  In spite of repeated efforts to discuss conflicts of interest, settlement, and mediation from July 2007 to January 2008, Everest rebuffed any collaboration or

---

[4]Daniel Leininger of the law firm Miner Lemon & Walston, LLP, was retained to defend the insureds at this time.  The named partner, Lemon, is a relative of K. Amy Lemon of Brenner Ford.

[5]This court's Opinion and Order of June 19, 2008 [DE 118], held that the $2,000,000 General Aggregate indemnity benefits were applicable to McGrath's claims.

cooperation with Godshalk's counsel.[6]  In fact, on many occasions Everest's counsel simply failed to respond.

Likewise, McGrath attempted to settle both the state and federal claims with Everest together for the aggregate amount of $2,000,000, but efforts to meet for settlement or mediation were spurned by Everest.  As a result of failed settlement attempts, McGrath filed a Renewed Motion for Determination of Damages in the state court, and the court scheduled the motion for final entry of damages on February 13, 2008.  Repeatedly, McGrath communicated the possibility of settlement within the indemnity limits and further arranged a mediation on January 16, 2008.

---

[6]The tone of Everest's letters in response to the repeated efforts to work together for a solution is disinterested at best, rude at worst.  With upwards of $15 million claimed in state court, Everest's communications showed no attempts at cooperation:

> Please be advised that there is nothing wrong with our fax system system . . . .  I do appreciate you sending your latest correspondence in three (3) manners.
>
> (Pltf. Ex. W, letter dated January 10, 2008)
>
> I am in receipt of your fax of January 17, 2008 [referring to a lack of response to a January 3, 2008 correspondence], and thank you for the same. . . . Please be advised that I did receive a fax from your office on January 3, 2008, which simply forwarded a communication . . . from July of last year [to which Everest never responded].  That communication did not ask me to do anything.  Accordingly, I apologize if you intended for me to provide you with a response.  I did not understand the communication to be requesting anything from me.
>
> (Pltf. Ex. 25, letter dated January 18, 2008 from Everest counsel to Rubino Ruman)

Everest was invited to attend the mediation, but counsel for Everest refused. Leininger attended on behalf of Everest's insureds, as did Rubino Ruman.

Before reaching a compromise with McGrath on any issue, Rubino Ruman attempted to confer with Everest and faxed a letter the next day inquiring as to previous settlement demands and Everest's intentions to provide protection for the insureds in the event of an excess judgment in state court. Everest responded the following day by denying McGrath's previous demands within the policy limits and relying on the belief that the applicable limit of $1,000,000 per occurrence capped the policy limit at $1,000,000 rather than $2,000,000. Everest also expressed the belief that the state court default would be set aside and was reluctant to address the contingency of an excess judgment. (Pltf. Ex. 25)

On January 25, 2008, with less than a month before the scheduled hearing on damages in state court, the insureds and McGrath entered into an Assignment and Non-Execution Agreement ("Assignment"). McGrath promised to reduce the amount of her damages request by over $3,000,000, from $15,825,024 to $12,383,643, to withdraw her request for punitive damages, and to dismiss her federal claims against the insureds with prejudice. In exchange, the insureds agreed to withdraw the motions to reconsider and vacate before the state court and to assign to McGrath all causes of action held against Everest and its agents, whether arising in contract or tort, including all claims for

10

compensatory and punitive damages.  (Pltf. Ex. Y)  The Assignment
was submitted to the court, and the state court entered its Order
and Final Judgment in accordance with the stipulations of the
parties on January 28, 2008.

On June 23, 2008, McGrath filed her Second Amended Complaint
here, which asserts claims for declaratory judgment that the
state court judgment is binding on Everest, breach of contract,
bad faith and breach of fiduciary duty, negligence, and fraud,
all of which arose from Everest's failure to defend its insureds
in the underlying state court claims for McGrath's personal
injuries.  McGrath requests either partial judgment on the
pleadings or partial summary judgment with respect to the actions
for breach of contract (Count II) and Negligence (Count IV).
Specifically, she seeks judgment that Everest breached its
contractual and tort duties to defend its insureds in the state
action and is liable to McGrath as assignee on the state court
final judgment plus interest as consequential damages.

## Discussion

Although McGrath filed a Motion for Judgment on the Plead-
ings, or Alternatively, Partial Summary Judgment, substantial
evidence was entered in support of the arguments. "If, on a
motion under . . . Rule 12(c), matters outside the pleadings are
presented to and not excluded by the court, the motion must be
treated as one for summary judgment under Rule 56."  Federal Rule
of Civil Procedure 12(d).  Thus, the court will consider

McGrath's motion in the alternative as a Motion for Partial Summary Judgment.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Williams v. Excel Foundry & Machine, Inc.*, 489 F.3d 309, 310 (7th Cir. 2007); *Treadwell v. Office of the Illinois Secretary of State*, 455 F.3d 778, 781 (7th Cir. 2006); *Branham v. Snow*, 392 F.3d 896, 901 (7th Cir. 2004). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Ballance v. City of Springfield, Illinois Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004); *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Spiegula v. Hull*, 371 F.3d 928, 935

(7th Cir. 2004); ***Hines v. British Steel Corporation***, 907 F.2d 726, 728 (7th Cir. 1990). Finally, summary judgment "will not be defeated simply because motive or intent are involved." ***Roger v. Yellow Freight Systems, Inc.***, 21 F.3d 146, 148 (7th Cir. 1994). *See also* ***Miller v. Borden, Inc.***, 168 F.3d 308, 312 (7th Cir. 1999); ***Plair v E.J. Brach & Sons, Inc.***, 105 F.3d 343, 346 (7th Cir. 1997); ***United Association of Black Landscapers v. City of Milwaukee***, 916 F.2d 1261, 1268 (7th Cir. 1990)(stating same).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> ***Anderson***, 477 U.S. at 250, 106 S.Ct. at 2511

*See also* ***Scott v. Harris***, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007)("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a

motion for summary judgment."); *Celotex Corp.*, 477 U.S. at 322-23, 106 S.Ct. at 1553; *Branham*, 392 F.3d at 901; *Lawrence*, 391 F.3d at 841; *Hottenroth*, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).

Initially, the court addresses Everest's Motion to Strike Portions of Plaintiff's Statement of Material Facts. Local Rule 56.1 requires a "'Statement of Material Facts,' supported by appropriate citations to discovery responses, depositions, affidavits, and other admissible evidence, as to which the moving party contends there is no genuine issue." Further, the court will assume that these facts are accurate, "except to the extent that such facts are controverted in the 'Statement of Genuine Issues' filed in opposition, as supported by depositions, discovery responses, affidavits and other admissible evidence on file." Thus, it is a function of the court "to review carefully both statements of material facts and statements of genuine issues . . . to eliminate from consideration any argument, conclusions, and assertions unsupported by the documented evidence of record offered in support of the statement." *Mayes v. City of Hammond, IN*, 442 F.Supp.2d, 587, 596 (N.D. Ind. 2006).

Everest generally contends that the majority of the last 50 paragraphs of McGrath's Statement of Material Facts are conclusory and unsupported by the evidence. First, Everest contests the statement that it has denied that Randall Neeley, LLC was a

14

named insured on the policy. Everest engages in semantics regarding its differentiation of its denial of Randall Neely, LLC as a *separately named insured* from a denial of a *named insured*. Of course, Randall Neely, LLC was a named insured: "To be clear, Everest never denied that Randall Neeley [sic], LLC was a named insured under the subject policy. Rather, Everest denies that Randall Neeley [sic], LLC is a 'separately named insured' as that term has no meaning to anyone other than Plaintiff." (Deft. Mem. in Supp. of Mot. to Strike, p. 3)

The court disagrees, mainly because the word "separately" has a simple common meaning directly applicable here. In response to ¶ 155 of McGrath's Second Amended Complaint which states, "Defendant Randall Neely, LLC was and is a separate named insured under [the] Policy of Insurance[,]" Everest stated, "Defendant, Everest National Insurance Company, Denies that Randall Neely, LLC is a 'separately named insured' under the policy." The court takes Everest's denial at face value and finds that McGrath's statement of facts on this issue is supported by the denial from Everest's pleading. *See* Federal Rule of Civil Procedure 8(b)(4) ("A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest.").

Next, Everest contends that McGrath mischaracterized this court's holding that the position taken by Everest, denying that the $2,000,000 General Aggregate benefits were available to McGrath's claims, was unsupported. The court's holding of June

19, 2008, clearly stated that "[u]nder the causative definition of 'occurrence,' it still may be possible that one insured entity engaged in multiple separate acts that caused an injury." (Opinion and Order, DE 118, p. 17)  Everest misconstrues the court's order by implying that the default entered on liability forced the court to accept a conclusion on aggregate limits that was precluded under Indiana law.  What the court order actually discussed was McGrath's theory on how the two separate insured entities each played a role in causing her injury – a theory that was irrelevant because of the default entry against both entities.  The order clearly stated that $2,000,000 was the maximum payable under the policy, a possibility that Everest denied, but for which the law provides.  Nothing stated by McGrath is unsupported by the evidence or by this court's previous order.

Everest moves to strike paragraphs 15, 64-69, 70-82, and 83-114 because they are irrelevant to the counts that the motion for summary judgment addresses.  Because the Federal Rules of Evidence must be considered at the summary judgment stage, some evidence may be excluded as irrelevant.  *See **Keri v. Board of Trustees of Purdue University***, 458 F.3d 620, 630 (7th Cir. 2006). Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Paragraph 15 states that Everest denied the available policy limit at the time of the state law claim by falsely maintaining

the maximum amount available under the policy as $1,000,000 rather than the actual $2,000,000 aggregate police limits. Everest's stance during settlement efforts and its defense of the claim against Eli's Pub was a part of the defense provided to the insureds, so a misstatement of the policy limits is relevant to the assigned claims. McGrath is correct that this mistaken or false statement is highly relevant to the strict reservation of rights and demand of cooperation forced upon the insureds.

The other contested sections of the statement of facts are titled "McGrath's Federal Cause of Action, Everest's Reservation of Rights, and Denial of Indemnity Obligations," (¶¶ 64-69), "Failure to Relinquish Control of Randall Neely, LLC's Defense and Provide Independent Counsel Free of Conflicts," (¶¶ 70-82), "Post-Default Judgment Settlement Efforts and the State Trial Court's Award of Damages," (¶¶ 83-110), and "Plaintiff's Present Action as Assignee of Everest's Insured." (¶¶ 111-14) All four of these sections chronologically detail events occurring after the entry of default in state court. Although these facts are relevant to the other surviving claims in this cause of action, they are not integral to the court's decision on the counts being addressed in the partial summary judgment here. But facts need not be integral to be relevant. Here, Everest's repeated denials of coverage, denials of the indemnity limits, demands to cooperate with the defense, and refusals to cooperate in settlement negotiations and mediation are all relevant in painting a portrait of Everest's handling of the claim and the insureds'

defense. Therefore, these facts are all relevant to the decision here, and the Motion to Strike is **DENIED.**

In response to the Motion to Strike, McGrath expresses frustration with Everest's arguments and briefs. McGrath contends that not only has Everest repeatedly presented arguments on points thoroughly discussed and decided by this court in the past, but it has put forth erroneous and unsupported arguments that bog down the progress of the case. For example, Everest's Motion to Strike contains a section arguing against two paragraphs of McGrath's fact statement that purportedly are unsupported or irrelevant, though only "Ed" knows why:

> Similarly, paragraph 92 is unsupported by the record. There, Plaintiff incorrectly claims **(ED I NEED YOUR HELP ON THIS ONE)**
>
> Paragraph 100 **(ED PLEASE ADDRESS THIS)** Furthermore, Paragraph 100 should be stricken as it raises irrelevant issues subsequent to the alleged breach of the duty to defend. . . .
>
> (Deft. Mem. in Support of Mtn. to Strike, p. 5)

The irony of such work product presented to this court in defense of claims of breaches of a duty to defend is apparent, and McGrath requests that the court sanction Everest for putting forth unsupported arguments and bad faith delay.

"A court may impose Rule 11 sanctions for arguments that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose." *Independent Lift Truck Builders Union v. NACCO Materials Handling Group*, 202 F.3d 965,

968-69 (7th Cir. 2000). A frivolous argument "is one that is baseless or made without a reasonable and competent inquiry." *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998).

Although Everest previously has been sanctioned in this litigation, those sanctions and this court's prior warning involved discovery conflicts. (*See* Opinion and Order, DE 118, p. 28) The court warned Everest that unnecessarily revisiting the limits of relevency in this matter would result in further sanctions. Despite the fact that Everest's Motion to Strike predominantly attacked the relevency of large portions of the Statement of Facts, the argument that those facts which occurred subsequent to the alleged moment of breach are irrelevant is not baseless or unreasonable. If the court in its discretion had accepted that argument, the overall outcome here, establishing breach at the point where Everest failed to answer for its insureds in state court, would remain the same, but this does not dictate a dilatory motive at play. Because the arguments in Everest's motion to strike were not frivolous and because shoddy work is embarrassing, though not necessarily sanctionable, the court will not impose sanctions at this time.

A second side issue to be addressed is McGrath's Motion to Strike Everest's "Reply" Brief or, Alternatively, to File Response. It addresses the filing of Everest National Insurance Company's Reply Brief in Support of its Request for Partial Summary Judgment [DE 176] filed on November 17, 2008, following McGrath's Motion for Partial Summary Judgment [DE 146], Everest's

19

Response in Opposition to Plaintiff's Motion for Partial Summary Judgment *and Request for Partial Judgment as a Matter of Law in Favor of Everest* [DE 164] (emphasis added), and McGrath's Reply [DE 169].

The Local Rules pertaining to motion practice provide:

> [A]n adverse party shall have fifteen (15) days after service of a motion in which to serve and file a response, and the moving party shall have seven (7) days after service of a response in which to serve and file a reply. . . .
>
> Each motion shall be separate; alternative motions filed together shall each be named in the caption on the face.
>
> Local Rule 7.1(a)-(b)

Clearly, motion practice calls for a motion, a response, and a reply. *See Goltz v. University of Notre Dame du Lac*, 177 F.R.D. 638, 639-642 (N.D. Ind. 1997)(discussing the application of local rules to summary judgment briefing and the discretion of the court in striking a response to a reply or a sur-reply). "[I]t is within the district court's discretion to strike an unautho-rized filing [of a response to a reply brief]." *Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994).

Everest appears to believe that by adorning the title of its response brief with the "Request for Partial Judgment as a Matter of Law in Favor of Everest," it in essence has filed its own dispositive motion. It has not. If Everest had wanted to file its own dispositive motion, Local Rule 7.1(b) requires that the

motion be filed separately.[7]  Furthermore, the "request" amounts
to nothing more than a plea to deny the pending motion for part-
ial summary judgment, a simple mirror to McGrath's motion.[8]
Thus, Everest's response brief it just that – a response brief –
and not a separate motion for summary judgment.  Because there is
only one set of briefing here on McGrath's motion for partial
summary judgment, the extraneous "reply" brief filed by Everest
is outside of the briefing provisions of this court's local rules
and will be disregarded.  The Motion to Strike submitted by
McGrath is **GRANTED.**

Turning to the issues of the partial summary judgment,
McGrath alleges that Everest breached its contractual duty to
defend the insureds as required by the Policy and that it is
bound by the final judgment entered in state court, plus all
accrued interest, as consequential damages.  McGrath also avers
that Everest breached its duty to conduct the insureds' defense
with proper diligence and that the breach is negligence per se.
A federal court sitting in diversity applies federal procedural
law and the substantive law of the state in which it sits.
***Charter Oak Fire Insurance Company v. Hedeen & Companies***, 280

---

[7]Alas, Everest has a history of difficulty with the definition of the
word "separately."  Here, as in the analysis *supra*, the court relies on the
common meaning of the word.

[8]This strategy of mirroring the legal issues raised defensively into an
offensive attack is a rerun of Everest's strategy of asserting counterclaims
against McGrath, which this court dismissed for their redundancy.  (*See*
Opinion and Order, DE 201 (granting McGrath's Motion to Dismiss Counter-
claims)).

F.3d 730, 735 (7th Cir. 2002). Here, the court must apply Indiana substantive law to the contract and tort disputes.

## I. Breach of Contract

"Insurance contracts are governed by the same rules of construction as other contracts, and the proper interpretation of an insurance policy, even if it is ambiguous, is generally a question of law appropriate for summary judgment." *Newnam Mfg., Inc. v. Transcontinental Ins. Co.*, 871 N.E.2d 396, 401 (Ind. App. 2007). *See also Mahan v. American Std. Ins. Co.*, 862 N.E.2d 669, 676 (Ind. App. 2007)("The interpretation of an insurance policy is primarily a question of law, and therefore, is a question particularly suited for summary judgment."). The policy language should be given its plain and ordinary meaning if that language is clear and unambiguous. *Eli Lilly Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985). Indiana law provides that an insurance policy is ambiguous if reasonable persons may honestly differ as to the meaning of the policy language. *Newnam Mfg.*, 871 N.E.2d at 401. Where terms are ambiguous, it is "the responsibility of the trier-of-fact to ascertain the facts necessary to construe the contract." *Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 687 (Ind. App. 2006). If ambiguity exists, insurance policies are construed strictly against the insurer. *Am. States Ins. v. Kiger*, 662 N.E.2d 945, 947 (Ind. 1996).

The Insuring Agreement in the Coverages section of the policy states, "We will have the right and duty to defend the insured against any 'suit' seeking those damages." (Ex. 1, p. 6)

Everest has admitted that the policy contractually obligated a defense of the insureds and clearly stated in its Answer, "Everest admits that, in response to the suit filed in the Lake Superior Court, Everest asserted its right and *undertook its obligation to defend the interests of its insureds* with respect to said suit and Everest's right to control the defense of that suit as alleged in [ ] Plaintiff's Complaint." (Deft. Answer to Second Amended Complaint, ¶ 29)(emphasis added). Therefore, no ambiguity exists on the question of whether Everest had a contractual duty to defend the insureds.

Indiana courts repeatedly have instructed insurers that this duty may be disavowed, with a warning: an insurer may refuse to defend a claim it believes outside the risks covered by the policy, however it does so at its own peril. *Kelly v. Hamilton*, 816 N.E.2d 1188, 1191 (Ind. App. 2004); *Foreman v. Johgkind Brothers, Inc.*, 625 N.E.2d 463, 468 (Ind. App. 1993); *Progressive Casualty Insurance v. Morris*, 603 N.E.2d 1380, 1383 (Ind. App. 1992); *Liberty Mutual Insurance Co. v. Metzler*, 586 N.E.2d 897, 901 (Ind. App. 1992). These four cases each deal with an insurance company's decision denying a defense to its insured either while declining to protect its interest by hiring independent counsel under a reservation of rights or by filing a declaratory judgment action prior to the entry of judgment in the underlying suit. All discuss whether the insurer is collaterally estopped from challenging the judgment involving the insured after the fact. The Indiana Supreme Court has added a caveat which summa-

23

rizes the differentiation between the cases: although an insurer may refuse to defend at its own peril, "the insurer will be bound at least to the matters necessarily determined in the lawsuit." *State Farm Fire & Cas. Co. v. T.B. ex rel. Bruce*, 762 N.E.2d 1227, 1231 (Ind. 2002). *Compare Kelly*, 816 N.E.2d at 1193 (finding that the judgment did not address the issue of the insurer's coverage and thus the insurer was not collaterally estopped from that defense at the proceedings supplemental stage of the case) *and Foreman*, 625 N.E.2d at 469 (holding that the trial court's articulation of negligence in the default judgment entry supported the notion that the claim was outside the policy coverage and the issue of coverage had not been addressed) *with Progressive*, 603 N.E.2d at 1383-84 (holding that the insurer was collaterally estopped from asserting that the motorcyclist acted intentionally and thus was excluded from coverage when the underlying verdict determined negligence) *and Liberty Mutual*, 586 N.E.2d at 902 (holding that insurer was collaterally estopped from litigating at the proceedings supplemental stage whether the driver intentionally caused the injury after a complaint alleging negligence was not answered and a default judgment of liability for negligence was entered).

Although *Progressive* and *Liberty Mutual* are applicable here, Everest's behavior is distinguishable in one key regard: Everest did not refuse to defend its insureds. This court must look at the case law which holds that an insurance company's deliberate decision not to defend an insured collaterally estops it from

24

subsequently attacking a default judgment and compare it to
Everest's statement to its insureds that it was defending them in
the state court action.  Yet, the state complaint never was
answered, the attorneys retained were unable to practice in the
state of Indiana, and no defense to the amount of damages ever
was presented during two hearings on damages.  Everest's promise
of a defense, retention of Brenner Ford, and subsequent failure
to put forth any defense in state court must be perceived as
equally perilous for the insureds than an outright denial of a
defense from the outset.  Instead of being placed on notice that
they had to retain their own attorney, the insureds were misled
into believing that their interests were being protected.  In
essence, Indiana law instructs that the entry of default judgment
in state court collaterally estops an insurer from relitigating
the issue of liability and coverage here.

Which leads to the predominant issue at hand:  who breached
first, Everest or the insureds?  The essential elements of a
breach of contract action are the existence of a contract, the
breach thereof, and damages.  *Nieto v. Kezy*, 846 N.E.2d 327, 333
(Ind. App. 2006).  "A party first guilty of a material breach of
contract may not maintain an action against the other party or
seek to enforce the contract against the other party should that
party subsequently breach the contract."  *Licocci v. Cardinal
Assoc., Inc.*, 492 N.E.2d 48, 52 (Ind. App. 1986).

Doubtless, the insurance policy is a contract.  McGrath
believes that the failure to put forth any defense in the state

25

court constituted a breach of the contractual duty to defend and gave rise to the consequential damages caused by that breach. Everest claims that it was the insureds' failure to cooperate by settling the claims with McGrath that breached any obligation it had to defend. Many details occurred between the two events: the complete failure to present a defense at the damages hearings, the ignored attempts to settle within the policy limits, the conflict of interest at play with the provision of counsel, and the time that  passed after the default on liability and before the mediation which led to settlement, all without any notable act in furtherance of a defense of its insured.

The rules of trial procedure "are intended to standardize the practice within the court, facilitate the effective flow of information, and enable the court to rule on the merits of the case." *S.T. v. State*, 764 N.E.2d 632, 635 (Ind. 2002). "As a general proposition, all litigants, as well as the court, are bound by the rules." *Rueth Development Co. v. Muenich*, 816 N.E.2d 880, 884 (Ind. App. 2004)(*citing* and *quoting S.T.*, 764 N.E.2d at 635). Indiana Trial Rule 55(A) authorizes the entry of a default judgment when a defendant fails to respond to the complaint. A trial court is permitted to conduct a hearing "to establish the truth of any averment by evidence or to make an investigation of any other matter." *Progressive Ins. Co. v. Harger*, 777 N.E.2d 91, 96 (Ind. App. 2002) (*quoting* Indiana Trial Rule 55(B)). Although the Trial Rules also provide instances for such a judgment to be set aside, "courts must balance the need

for efficient administration of justice with a preference for deciding cases on their merits and giving a party its day in court." *Flying J., Inc. v. Jeter*, 720 N.E.2d 1247, 1249 (Ind. App. 1999).

Here, Everest assumed its duty to defend the insureds and demanded their cooperation. Yet, Brenner Ford's failure to appear and failure to answer left the insureds without an advocate. Furthermore, the state court provided the insureds with a hearing, but Brenner Ford was unable to arrange for the appearance of an attorney who was prepared to handle the defense. Regardless of any misguided strategy at play, the conduct of Brenner Ford, retained by Everest, constituted a breach of Everest's contractual duty to defend.

Everest charges that the insureds' failure to cooperate in violation of the Policy relieved it of any contractual duty to defend, pointing to the insureds' cooperation and settlement with McGrath as the point of breach. However, the insureds settled with McGrath and assigned its claims against Everest long after Everest had breached its duty to defend. *See Steve Silveus Ins., Inc. v. Goshert*, 873 N.E.2d 165, 176 (Ind. App. 2007)(confirming the legal conclusion that the first party to materially breach a contract cannot subsequently enforce that contract). Thus, Everest's arguments concerning the insureds' later breach are without merit.

Everest also believes that it has complied with its duty to defend with the sole act of retaining an attorney. However,

Everest has failed to cite a single case from Indiana which supports this argument, and Indiana law creates a contractual and fiduciary duty of an insurer to its insureds. *See **Stumpf v. Hagerman Construction Corp.***, 863 N.E.2d 876 (Ind. App. 2007) (discussing the exceptions to general rule of no liability for acts of independent contractor). *See also, e.g., **Erie***, 622 N.E.2d at 519 ("[I]t is in society's interest that there be fair play between insurer and insured."). Likewise, Everest cites the rules of *pro hac vice* admission to practice and argues that it did not breach its duty by retaining Brenner Ford although that firm lacked attorneys licensed in Indiana. However, breach did not occur with the hiring of Brenner Ford but rather when the law firm failed to answer McGrath's state court complaint, resulting in the entry of a default.

Everest further argues that a Rule 60(b) motion was pending at the time that the insureds stipulated to the judgment in state court and that this precludes the entry of default from being the point of breach because no final judgment had been entered. The insureds breached, the argument continues, when they caused the entry of the final judgment by stipulation. Everest is correct that the default as to liability did not constitute an appealable final judgment. *See **Allstate Ins. Co. v. Fields***, 842 N.E.2d 804, 808 (Ind. 2006) (holding that a denial of a motion for relief from an interlocutory order granting default judgment on less than all issues is not ripe for appeal). As previously stated, Judge Pete repeatedly denied the motion to vacate the entry of

default filed by Brenner Ford.  To determine whether the motion
which was withdrawn as part of the settlement had any merit, this
court must consider the appellate standard of review.

Under Indiana Trial Rule 60(B)(1), a default judgment
entered as a result of mistake, surprise, or excusable neglect
may be set aside.  *Walker v. Kelley*, 819 N.E.2d 832, 836 (Ind.
App. 2004); *Professional Laminate & Millwork, Inc. v. B & R
Enterprises*, 651 N.E.2d 1153, 1157 (Ind. App. 1995). The decision
whether to set aside a default is given substantial deference and
is reviewed under an abuse of discretion standard.  *Shane v. Home
Depot USA, Inc.*, 869 N.E.2d 1232, 1234 (Ind. App. 2007).  "There
are no fixed standards to determine the parameters of mistake,
surprise or excusable neglect."  *Professional Laminate*, 651
N.E.2d at 1157.  Indiana courts have found excusable neglect in
situations where the defaulting party has established a breakdown
in communication that resulted in the party's failure to appear.
*Bunch v. Himm*, 879 N.E.2d 632, 635 (Ind. App. 2008).  *See also
Shane*, 869 N.E.2d at 1236 (finding that store owner's failure to
file an answer was due to the insurance company's internal
breakdown in communication, not due to "drag[ging] its feet");
*Walker*, 819 N.E.2d at 837 (finding no dilatory motive in a
party's mistaken notation of hearing date).  *Cf. Professional
Laminate*, 651 N.E.2d at 1158 (finding out-of-state counsel's
failure to seek permission to practice in Indiana properly was
not the result of excusable neglect and affirming lower court's
denial of motion to vacate default judgment)("[T]he burden is on

the non-resident attorney to ensure that he has obtained the necessary authorization in accordance with the rules promulgated by our supreme court.").

*Bunch* is instructive.  When an ex-husband filed a motion to modify child support, the ex-wife's failure to attend the hearing resulted in the court entering a default order of modification. The ex-wife, who was on active military duty, denied receipt of notice.  Her re-routed mail containing the notice of the motion and hearing ended up in South Carolina.  Because the ex-wife was aware through email correspondence that her ex-husband may have filed a motion, she contacted her attorney and asked him to look into the matter.  Unfortunately, by the time she learned of the motion, the hearing date had passed, and the default was entered. The trial court, as well as the Court of Appeals, found that she had made diligent efforts to receive and respond to her mail and had attempted to remain aware of any court activity during her absence.  The court noted that she "did not accept the risk of adverse consequences."  *Bunch*, 879 N.E.2d at 635-36.

Here, the behavior of Brenner Ford is in stark contrast to the facts in *Bunch*.  Brenner Ford and Everest did not have a breakdown in communication.  Everest and the insureds had notice of McGrath's complaint.  Brenner Ford was retained for the specific purpose of defending the insureds in the state court, yet the attorneys intentionally dragged their feet.  Brenner Ford's failure to answer, which resulted in the default, was not the result of mistake, surprise, or excusable neglect:  it was

the result of a misguided strategy. Kolodziej sent a letter
specifically informing the insureds of this strategy to take no
action in respect to the lawsuit and not to file an appearance in
the hope that the use of the common name of the pub as the named
defendant would hide the true owners. Further, after McGrath
uncovered the names of the LLCs and corrected the name of the
defendant, Kolodziej and Lemon failed to follow the rules for
admission to practice in Indiana, resulting in repeated denials
of their motions to vacate the entry of default. Like the defer-
ence given the trial court's refusal to vacate the default in
**Professional Laminate** based upon the lack of excusable neglect
for a non-practicing attorney's failure to gain proper permis-
sion, it was highly unlikely that Judge Pete's decision would be
considered an abuse of discretion by an Indiana appellate court.
The highly discretionary nature of the standard of review and the
complete lack of mistake, surprise, and excusable neglect fore-
close any argument that the pending motion had merit.

Any reference to the eventual settlement and assignment of
claims as a breach by the insureds also ignores the insureds'
duty to mitigate damages. *See **Callander v. Sheridan***, 546 N.E.2d
850, 854 (Ind. App. 1989)(discussing this duty in a breach of
contract case)("It is true that a non-breaching party must
mitigate damages."). The insureds were in a position requiring
them to use reasonable diligence to diminish the potential
damages in state court when counsel retained by Everest failed to
introduce evidence or file a brief on the issue of damages. *See*

*Pierce v. Drees*, 607 N.E.2d 726, 729 (Ind. App. 1993)("While it is true that the non-breaching party must mitigate damages, the breaching party has the burden of proving the non-breaching party has not used reasonable diligence to do so."). *See also **Buhring v. Tavoletti***, 905 N.E.2d 1059, 1064 (Ind. App. 2009)(discussing duty to mitigate in tort action)("[F]ailure to mitigate is an affirmative defense that may reduce the amount of damages a plaintiff is entitled to recover after liability has been found."). The Assignment executed by the insureds markedly re-duced the amount of McGrath's damages request by over $3,000,000 and removed punitive damages from consideration in state court. In doing so after the bungled defense and Brenner Ford's futile attempts to vacate the default order, the insureds could not further breach the contract, and instead, reasonably mitigated the amount of damages entered in the state court's final judg-ment. Therefore, the motion for summary judgment as to the breach of contract claim is **GRANTED.**

## II. Negligence

McGrath also seeks a finding of negligence as a matter of law for the failure of the duty to defend. "A duty of care, the breach of which will support a negligence action, may arise con-tractually." ***Town of Orland v. National Fire & Cas. Co.***, 726 N.E.2d 364, 370 (Ind. App. 2000). The existence of a duty is a pure question of law for the court to determine. ***Stumpf***, 863 N.E.2d at 876 (*citing **Bldg. Materials v. T & B Structural Sys., Inc.***, 804 N.E.2d 277, 282 (Ind. App. 2004)). Well established

Indiana common law provides that an employer has no duty to supervise the work of an independent contractor and consequently is not liable for the negligence of the independent contractor. *Stumpf*, 863 N.E.2d at 876. This rule is based on the lack of control the employing party exercises over the independent contractor. However, Indiana recognizes five exceptions to this general rule:

> (1) where the contract requires the performance of intrinsically dangerous work; (2) *where one party is by law or contract charged with performing the specific duty*; (3) where the performance of the contracted act will create a nuisance; (4) where the act to be performed will probably cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal. (emphasis added)

> *Stumpf*, 863 N.E.2d at 876

See also *Illinois Bulk Carrier, Inc. v. Jackson*, 908 N.E.2d 248, 259-60 (Ind. App. 2009)(stating same).

*Stumpf* also involved the existence of a duty based upon a contract. The court looked at the contract as a whole in determining if a party was charged with a duty of care based upon the contract. 863 N.E.2d at 876. "If a contract affirmatively evinces intent to assume a duty of care, actionable negligence may be predicated upon the contractual duty." *Stumpf* stated unequivocally that this contractually-based duty was non-delegable, and "a principal will be liable for the negligence of the contractor because the responsibilities are deemed 'so important to the community' that the principal should not be permitted to

transfer these duties to another." *Stumpf,* 863 N.E.2d at 876-77
(*citing* ***Ryobi Die Casting v. Montgomery***, 705 N.E.2d 227, 229
(Ind. App. 1999)).

Because there is no question as to Everest's contractual
duty to defend based upon the policy, it appears that actionable
negligence may be predicated upon it here. Summary judgment
rarely is appropriate in negligence cases. ***Florio v. Tilley***, 875
N.E.2d 253, 255 (Ind. App. 2007). The particularly fact sensi-
tive nature of a negligence action is governed by the objective
reasonable person and is best applied by a jury. ***Schoop's***
***Restaurant v. Hardy***, 863 N.E.2d 451, 454 (Ind. App. 2007). To
prevail on any negligence action or malpractice action, the
plaintiff must prove three elements: "(1) a duty on the part of
the defendant in relation to the plaintiff; (2) failure to
conform his conduct to the requisite standard of care required by
the relationship; and (3) an injury to the plaintiff resulting
from that failure." ***Blaker v. Young***, ___ N.E.2d ___, 2009 WL
2513483, *2 (Ind. App. August 18, 2009)(*citing* and *quoting*
***Oelling v. Rao***, 593 N.E.2d 189, 190 (Ind. 1992)). Because of the
uncontested fact that the Policy contractually created a con-
tractual duty to defend, Everest is vicariously liable for the
defective performance of Brenner Ford as to the insureds. Thus,
the actions of Brenner Ford are imputed to Everest.

Everest suggests that the act of hiring Brenner Ford to
defend the insureds fulfilled its duty to defend because the duty
is delegable. Everest refers the court to ***Cincinnati Insurance***

34

*Company v. Wills*,[9] 717 N.E.2d 151 (Ind. 1999), to support the
contention that "an insurance company[] is not licensed to
practice law and cannot file pleadings or practice law."[10]
(Deft. Response p. 1)  But this simple notion is not an accurate
representation of the case law presented:  *Wills* concerns whether
use of in-house counsel by an insurance company resulted in the
company's unauthorized practice of law.  Everest fails to use a
pinpoint cite to direct the court to the exact page supporting
its stance here, but the idea that an insurance company is not a
licensed attorney is not in question.  The court agrees with the
only other cite to *Wills* stating that an insurance carrier is not
permitted to enter an appearance or file pleadings on behalf of
its policyholder in a tort action.  Yet, *Wills* made no reference
to the duty being delegable.

Rather, *Wills* discussed the agency relationship:

> It is of course true that a legal entity
> [such as the insurance company] can be re-
> sponsible for the professional actions of its
> partners, employees and agents under standard
> doctrines of respondeat superior, and in that
> sense *is viewed as engaged in the activity*.
> But that does not mean the entity unlawfully
> practices law any more than Federal Express
> unlawfully pilots airplanes.  Rather the
> practice of law, the piloting of airplanes
> and many other activities are required to be
> performed by licensed professionals.  And, as
> a general proposition, where the law requires

---

[9]Although Everest's brief repeatedly refers to this case as "Willis,"
the cite plainly refers to *Cincinnati Insurance Company v. Wills*, as cited by
the court here.

[10]Everest also cites cases on this point of law from Illinois and
Massachusetts, neither of which are authoritative here.

> a license, *agency doctrine permits an*
> *unlicensed legal entity to employ licensed*
> *agents to perform those acts requiring a*
> *license.* (emphasis added)

> 717 N.E.2d at 159-60

Similarly, and even more on point, ***United Farm Bureau Mutual***

***Insurance Company v. Groen***, 486 N.E.2d 571 (Ind. App. 1985)

unmistakenly recognized the agency relationship between an

insurer and the attorney that it hired.   ***Groen*** instructs:

> The attorney is the agent of the party em-
> ploying him, and in court stands in his
> stead.  The attorney has by virtue of the
> retainer or employment alone, the general
> implied authority to do on behalf of the
> client all acts in or out of court necessary
> or incidental to the prosecution or manage-
> ment of the suit or defense or the accom-
> plishment of the purpose for which he was
> retained.  Indiana courts have held that in
> the absence of fraud by his attorney the
> client is bound by the action of his attorney
> even though the attorney is guilty of gross
> negligence.  *The negligence of an attorney is*
> *the negligence of his client*. (internal cita-
> tions omitted)

> 486 N.E.2d at 573

Everest, under contractual obligation, was responsible for

the defense of the insureds.  Everest retained Brenner Ford.

Everest repeatedly warned the insureds to cooperate with the

defense provided or risk losing the support of the insurer.

Everest cannot insist upon full control of the defense at the

time of the state court case, then refute its control and vicari-

ous liability after the failure to defend.

Everest attempts in its Response to distinguish cases where

an insurer abandoned its insured by refusing to defend, but it is

difficult to imagine which is worse: an insurer communicating its unwillingness to defend an insured from a claim it believes outside the scope of the policy or commandeering a purported defense which fails to materialize, leaving the insureds in a much worse position because of reliance on that defense.[11] Such a concept is at odds with the notion of fair play between insurer and insured that the Indiana Supreme Court embraced in *Erie*.

Indiana law may support such a respondeat superior claim by the insureds against Everest for the failure of Brenner Ford to assert any defense in the state court case, but it does not support such a claim being assigned. Although Everest did not make this argument, the court *sua sponte* acknowledges that a negligence claim involving legal malpractice is unassignable under Indiana law. *See Rosby Corp. v. Townsend, Yosha, Cline & Price*, 800 N.E.2d 661, 665 (Ind. App. 2003)(discussing the bright-line rule drawn by the Indiana Supreme Court holding that no legal malpractice claims may be assigned, regardless whether they are assigned to an adversary)(*citing Picadilly, Inc. v.*

---

[11]Everest quotes *Cromer v. Sefton*, 471 N.E.2d 700, 706 (Ind. App. 1984), supporting the argument that when an insurer has abandoned its insureds prompting the insureds to enter into a consent judgment, the insurer cannot hide behind the policy language concerning the insured's being "legally obligated to pay." Again, Everest mistakenly uses an example of what a court held to argue that this would be the sole instance which would require an insurer to be held so accountable. Just as Everest stated that *Erie* foreclosed any other tort claims by insureds against insurers, yet the case never declared such a proposition, the cases here fail to extend as broadly as Everest maintains. In any event, though Everest did not "abandon" its insureds in the same manner as the insurer in *Cromer*, it did, in fact, "abandon" them in a far more egregious way.

*Raikos*, 582 N.E.2d 338 (Ind. 1991)). The Court in *Picadilly* found:

> The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty, and who have never had any prior connection with the assignor or his rights. The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession. The almost certain end result of merchandising such causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers. The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client.

> 582 N.E.2d at 342.

Some states permit an insurance company providing excess coverage to sue the law firm hired by the primary insurer even though the excess carrier was not in privity with the attorney. Indiana, however, has disallowed such a claim based upon its prohibition of assignment of legal malpractice claims. *See Querrey & Harrow, LTD. v. Transcontinental Ins. Co.*, 885 N.E.2d 1235 (Ind. 2008)(holding that excess insurer that was not repre-

sented by client's attorneys in the prior action was not entitled to bring alegal malpractice suit); ***Municipal Tax Liens, Inc. v. Alexander***, 893 N.E.2d 733 (Ind. App. 2008). This hard-line stance against the assertion of a legal malpractice claim by a party not in privity clearly indicates where Indiana draws the boundary on assignability of such claims. McGrath lacks the necessary privity to assert a legal malpractice claim against Brenner Ford, and therefore also against Everest for vicarious liability for its agents' acts. Any negligence claims which are in essence claims of legal malpractice are **DENIED** as a matter of law. Thus, the surviving negligence claims against Everest must be based solely on the acts of Everest in its handling of the matter for its insureds.

Although the acts of Brenner Ford cannot be imputed to Everest, Brenner Ford's malpractice was not the sole proximate cause of the state court final judgment. Everest implies that the retention of Brenner Ford marked the end of its involvement in this matter. However, this only acknowledges Everest's actions constituting the breach of contract, up to and including the failure to assert a damages defense, but the undisputed facts before the court include all of the correspondence to and from Everest concerning attempts at settlement. In the time between the two damages hearings in state court and the agreement to assign and stipulate to a final judgment, Everest repeatedly refused to partake in the many settlement opportunities offered by McGrath. Although Leininger wrote to Everest with concerns

about conflicts of interest, Everest failed to provide conflict-free counsel to its insureds. Following Godshalk's personal retention of Rubino Ruman, Everest rebuffed all efforts to discuss possible settlement or mediation. Likewise, after filing the federal complaint, McGrath attempted to settle both the state and federal claims with Everest for $2 million, but Everest declined the repeated opportunities. With the prospect of a $15 million judgment in state court, Everest's outright refusal to discuss settlement offers within the policy limits are omissions which a reasonable person could predict would lead to the insureds' reaching an agreement with McGrath before the state court entered final judgment.

However, Everest's involvement outside of its hiring of Brenner Ford is precisely the type of fact sensitive situation which is reserved for a jury. Because the insurer, Everest, is charged with a failure to provide counsel free of conflict and failure to cooperate in any settlement negotiations, summary judgment as to these aspects of McGrath's negligence claim are **DENIED** and shall remain fact disputes to be resolved by a jury.

Because Indiana's prohibition on assignment of legal malpractice claims precludes McGrath from pursuing a legal negligence claim against Everest, and because the fact sensitive nature of the remaining negligence claims against Everest properly belong to a jury, McGrath's Motion for Summary Judgment on the claim of negligence is **DENIED.**

## III. Damages

Where an insurer breaches an insurance policy, recoverable damages are not defined by or restricted to the indemnity limits of the policy. *Indiana Insurance Co. v. Plummer Power Mower & Tool Rental, Inc.*, 590 N.E.2d 1085, 1090 (Ind. App. 1992). The law in Indiana is that "the policy limits restrict the amount the insurer may have to pay in the performance of the contract, not the damages that are recoverable for its breach.". *See also Schroeder v. Barth, Inc.*, 969 F.2d 421, 425 (7th Cir. 1992)(*citing Plummer Power* as Indiana's law on contractual damages.).

Accordingly, the measure of damages in an action against an insurer for breach of its duty to defend is defined by those damages "suffered as a result of the breach which are reasonably assumed to have been within the contemplation of the parties at the time the contract was formed." *Erie*, 622 N.E.2d at 519. "Consequential damages may be awarded on a breach of contract claim when the non-breaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made," a concept generally conceived of as "reasonably foreseeable economic losses." *Johnson v. Scandia Assocs., Inc.*, 717 N.E.2d 24, 31 (Ind. 1999). *See also Hasse Construction Company, Inc. v. Gary Sanitary District Board of Comm.*, 2008 WL 2169000, * 7 (N.D. Ind. May 23, 2008)(stating that a party may recover in a contract action those losses suffered as a result of the breach which are reasonably assumed to have been contemplated by the parties at the time they formed the con-

tract). The foreseeability test for measuring damages is an objective one and is appropriate for determination by the court as a matter of law. *Indiana & Michigan Electric Co. v. Terre Haute Indus., Inc.*, 507 N.E.2d 588, 601 (Ind. App. 1987). The foreseeability for the insurer in a case such as this is straightforward and uniformly supported by courts nationwide: "if an insurer, either through inaction or affirmative representations, leads an insured to believe that it will provide a defense, but fails to do so, the insurer may be liable for any default judgment that is entered against the insured, even if it is in excess of the policy limits." Windt, *1 Insurance Claims and Disputes* 4th §4:36. *See Pershing Park Villas Homeowners Ass'n v. United Pacific Insurance Co.*, 219 F.3d 895, 902-03 (9th Cir. 2000)(holding that an insurer that breaches its duty to defend resulting in a default judgment is liable to the insured for the full amount of default judgment); *Liberty Mutual Fire Insurance Co. v. Canal Insurance Co.*, 177 F.3d 326, 337 (5th Cir. 1999)(explaining the few limited exceptions where an insurer has been held liable for consequential damages in excess of the stated policy limit where those damages resulted directly from the insurer's wrongful conduct)("[I]f the insurer leads the insured to believe he will provide a defense, but does not, the insurer may be liable for a default judgment entered in excess of the policy limits"); *Fidelity & Casualty Co. of N. Y. v. Gault*, 196 F.2d 329, 330 (5th Cir. 1952)(concluding that an insurer that undertakes the defense or investigation of a claim but breaches

its duty is liable for all damages resulting). *See also **Yeomans & Associates Agency, Inc. v. Bowen Tree Surgeons, Inc.***, 618 S.E.2d 673, 683 (Ga. App. 2005)(party breaching a duty resulting in a default judgment was liable for the full amount of the default judgment, plus interest and costs); ***Johnson v. Westhoff Sand Co., Inc.***, 62 P.3d 685 (Kan. App. 2003)(wrongful failure of insurer to provide defense, resulting in default judgment, obligated insurer for the full amount of the judgment in excess of the indemnity limits); ***Tradewinds Escrow, Inc. v. Truck Ins. Exchange***, 97 Cal.App.4th 704, 713, 118 Cal.Rptr.2d 561, 567 (Cal. App. 2002) (observing that "default judgments are recoverable without a showing of indemnity. . . . [A] default judgment is considered a consequential damage of the breach of the duty [to defend]."); ***Naddeo v. Allstate Insurance Co.***, 533 S.E.2d 501, 506 (N.C. App. 2000)(breach of duty to defend obligated the insurer to pay the full amount of the default judgment entered by the court against its insured in the underlying action); ***Reshamwalla v. State Farm Fire and Casualty Co.***, 112 F.Supp.2d 1010, 1020 (E.D. Cal. 2000) (stating that where an insurer breaches its duty to defend and the insured suffers a default judgment, "the insurer is liable on the judgment, even if it is in excess of policy limits.").

Everest argues that the insureds have suffered no damages because the underlying judgment in excess of $12 million has not been executed.  This argument is wholly unsupported by relevant case law.  *See **Midwestern Indemnity Co. v. Laikin***, 119 F.Supp.2d 831, 842 (S.D. Ind. 2000)(holding the insurer obligated to pay

43

the amount of the consent judgment); *Cromer*, 471 N.E.2d at 706 (holding that the insurer cannot rely on "legally obligated to pay" language to relieve it of its obligation to satisfy a judgment subsequent to parties' covenant not to execute); *American Family Mutual Insurance Co. v. Kivela*, 408 N.E.2d 805, 813 (Ind. App. 1980)(holding that a consent judgment between the insured and the injured plaintiff and a further "hold harmless" agreement which provided that the judgment would be satisfied only out of the policy, did not, as a matter of law, insulate the insurer).

Everest asserts that Indiana law does not require an insurer to pay in excess of the policy limits in the absence of bad faith, *citing* *Erie Insurance Co. v. Hickman,* 622 N.E.2d 515 (Ind. 1993). Everest is correct that *Erie* imposes a duty on insurance companies to deal in good faith with its insureds, but *Erie* does not foreclose the two legal theories put forth by McGrath here. An insured "may have available two distinct legal theories, one in contract and one in tort, each with separate, although often overlapping, elements, defenses and recoveries." *Erie*, 622 N.E.2d at 520. *See generally* *Mahan v. American Standard Insurance Company*, 862 N.E.2d 669 (Ind. App. 2007) (discussing and differentiating the duty to defend and the duty of good faith and fair dealings implied in all insurance contracts). Nothing in *Erie* holds that a claim of bad faith is the exclusive tort remedy available. Rather, this court reads *Erie* as simply a detailed explanation of a bad faith claim against an insurer. No Indiana

court has held that a tortious breach of the duty to defend cannot be claimed by an insured.

Pleading alternative theories of recovery in the same case is permitted, and judgments on different claims may include the same element of damages. *Simon Property Group, L.P. v. Brandt Const., Inc.*, 830 N.E.2d 981, 992 (Ind. App. 2005). The contractual duty and the consequence of its breach and the duty arising from the contractual fiduciary relationship between Everest and its insureds and any possible negligent breach of that duty both resulted in the damages here: the final judgment entered in state court. *See Erie*, 622 N.E.2d at 519 ("[I]n most instances, tort damages for the breach of the duty to exercise good faith will likely be coterminous with those recoverable in a breach of contract action.").

Therefore, the consequential damages for the breach of contract claim, which the insureds mitigated by entering into the Assignment with McGrath, equal the final judgment entered in the state court claim.

————————————

For the aforementioned reasons, the Motion to Strike Portions of Plaintiff's Statement of Material Facts [DE 162] filed on October 20, 2008, is **DENIED**; the Motion to Strike Everest's "Reply" Brief [DE 179] filed on November 24, 2008, is **GRANTED**; and the Plaintiff's Motion for Partial Summary Judgment [DE 145] filed on September 15, 2008, is **GRANTED IN PART** and **DENIED IN PART**.

ENTERED this 23rd day of September, 2009


                            s/ ANDREW P. RODOVICH
                               United States Magistrate Judge