UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| ROSELAND MCGRATH, | ) | |
|     Plaintiff | ) | |
| | ) | |
| -vs- | ) | Case No: 2:07-cv-34 |
| | ) | |
| | ) | Honorable Andrew P. Rodovich |
| EVEREST NATIONAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
|     Defendant. | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| EVEREST NATIONAL | ) |
| INSURANCE COMPANY, | ) |
| | ) |
|     Third-Party Plaintiff | ) |
| | ) |
| -vs- | ) |
| | ) |
| BRENNER, FORD, MONROE, & | ) |
| SCOTT, LTD., STEPHEN A. | ) |
| KOLODZIEJ, and K. AMY LEMON, | ) |
| | ) |
|     Third-Party Defendants. | ) |

**BRIEF IN SUPPORT OF MOTION BY PLAINTIFF ROSELAND TO SEVER FIRST PARTY AND THIRD-PARTY ACTIONS**

**I.  INTRODUCTION**

The Court is familiar with the underlying facts of this case, although not likely aware of the full lengths to which Defendant Everest National Insurance Company ("Everest") and their Third-Party Defendants, Brenner, Ford, Monroe, & Scott, Ltd. ("Brenner Ford") have resisted discovery mechanisms and have attempted to prevent this matter from proceeding to imminent

trial.[1]  The Court has notified the Parties such trial will occur shortly following the Settlement Conference on October 27, 2009, and at the very latest on or before January 25, 2010. Unfortunately, a lack of discovery cooperation has rendered Plaintiff's counsel without critical facts, and Defendant and Third-Party Defendants have deliberately sought to derail the Court's Order.  Relevant facts, verified by counsel, are provided below.

## II.  VERIFIED STATEMENT OF FACTS

### A.  Causes by Plaintiff Against Defendant Everest and Everest's Third-Party Complaint Against Brenner, Ford, Monroe, & Scott and its Attorneys

As the Court addressed in its comprehensive 46 page Order and Opinion entered on September 23, 2009 (DE 202), Stephen Kolodziej and Brenner Ford - while fully aware of a pending lawsuit against Eli's Pub – accepted retention respecting the Indiana state litigation despite not a single lawyer in the firm being authorized to practice in Indiana.  (*Id.* at 202). During this time period, the Brenner Ford attorneys, while engaged in the unauthorized practice of law in violation of Indiana criminal statutes and ethical rules, devised an unfounded plan to try to avoid answering the lawsuit on the basis that the defendant had been sued under a misnomer - its legally assumed alias name Eli's Pub, rather than by its full legal name, "Aidan Alan, LLC d/b/a Eli's Pub."  It did this as part of a misguided stratagem hoping the statute of limitations would expire.   The Lake County Superior Court properly entered an interlocutory default judgment, and subsequently an Order correcting misnomer on November 21, 2006, to reflect the full name "Aidan Alan, LLC d/b/a Eli's Pub."

---

[1]   Those issues will be addressed in separate, forthcoming motions for sanctions arising from the absolute and complete failure of deposition and written discovery in this matter despite innumerable warnings by the Court, two prior sanction awards, and persistent efforts by Plaintiff to prepare this matter for trial.

The Brenner Firm – again while no lawyer in its firm was legally permitted to practice law in Indiana – purported to appear of record in the Indiana state court proceedings and moved to vacate the default on the grounds that "Eli's Pub" was a "non-existent entity."  This argument was briefed, fully argued in open court (after Brenner Ford attorney K. Amy Lemon for the first time in the litigation became legally authorized to practice in Indiana),[2] and denied multiple times on the record by the presiding judge.  (DE 202 at 4-5).

As the Court detailed at length in its September 23, 2009 Opinion, Everest breached its contractual duty to defend the insureds in numerous ways, from misrepresenting the amount of aggregate policy limits under the policy, to failing to appoint counsel free of conflicts of interest, to wrongfully denying that a separate entity named on the Policy and being separately sued – Randall Neely, LLC – was an insured subject to indemnity coverage.[3]  Applying clearly established contract law and universally recognized authority, the Court held that Everest National was liable for the breach of contract and that damages were liquidated in the amount of the default judgment.

In this same Order and Opinion, the Court specifically held that negligence claims exist in favor of the insureds against Everest, both arising out of the conduct of the Brenner Ford attorneys for whose conduct Everest is vicariously liable as a matter of law, and separately for the conduct of Everest's non-legal agents and employees.  (DE 202 at 34-37).  As to the former, however, the Court held that these claims are not assignable and therefore are not presently

---

[2]  Plaintiff has learned that that K. Amy Lemon has a record of appearing illegally in Indiana lawsuits while suspended from the practice of law in order to sponsor Stephen Kolodziej *pro hac vice*.

[3]  Everest had internally, in fact, acknowledged that Randall Neely, LLC was an insured under the policy and entitled to coverage.

before the Court under the insureds' assignment to Plaintiff.[4]  The Court has ruled that Plaintiff's "surviving negligence claims against Everest must be based solely on the acts of Everest in its handling of the matter for its insureds." (*Id.* at 39).  Specifically, the Court ruled "[b]ecause the insurer, Everest, is charged with a failure to provide counsel free of conflict and failure to cooperate in any settlement negotiations," summary judgment as to these aspects of the tort claims remain premature and are jury issues.  (*Id.* at 40).

Thus, the status of the primary lawsuit is as follows:  (1) Plaintiff's breach of contract claims against Everest have been resolved; (2) its negligence claims have been narrowed to Everest's functions as an insurer, including retention of proper counsel and proper oversight, and cannot involve legal malpractice *respondeat superior* claims; and (3) issues of Everest's bad faith, negligent supervision, and fraudulent and negligent misrepresentation remain at issue for an imminent jury trial.

The only legal malpractice claims presently before the Court are those Third-Party Action claims asserted by Everest against Brenner Ford for their alleged breach of contract and legal malpractice arising from duties owed to Everest as Everest's attorneys.  These claims are not original to this action, but were instead added by way of a Third-Party Complaint filed under Federal Rule of Civil Procedure 14 impleading Brenner Ford, Lemon, and Kolodziej as Third-Party Defendants.  (DE 137).

---

[4] The insureds have moved to intervene in the action to assert their vicarious liability claims against Everest to the extent not deemed assigned as a matter of law.  (DE 208). However, the Court has specifically held that Plaintiff's present claims against Everest does not involve such claims and has specifically declined to address any such claims involving negligence for legal malpractice in its September 23, 2009 Order and Opinion.  (DE 202 at 39).

### B.   Defendant Everest and Third-Party Defendant Brenner Ford's Attempt to Delay this Matter

Unfortunately, both Defendant Everest and its Third-Party Defendants have gone to great lengths to disrupt Plaintiff's efforts to prepare for trial and to delay this matter. These efforts include (1) asserting patently frivolous discovery positions (*see* DE 118, 194), refusing to cooperate with coordination of depositions, and ultimately refusing to appear at depositions when noticed. It further includes failing to make required disclosures pursuant to Federal Rule of Civil Procedure 26(a) so relevant witnesses can be deposed, as well as failing to comply with unequivocal and direct orders of the Court. This appears to be a continuation of the bad faith - and in the case of Brenner Ford - sometimes illegal conduct which was its strategy in the lower court action. The conduct has ground trial preparations to a complete halt over the past 15 months, despite unrelenting efforts by Plaintiff's counsel to move matters forward both through motion practice and by informal means.[5]

The Court, after already continuing the trial of Plaintiff's claims against Everest previously set for July 13, 2009, and having now ruled on dispositive motions, provided notice to all parties on September 24, 2009 that trial will occur imminently following the Settlement Conference and in no event after January 25, 2010. (DE 204). This is 19 months after the Plaintiff's Second Amended Complaint against Everest was filed. (DE 120).

On the same date that the Court entered its Order setting this matter for settlement conference and indicating the upcoming trial setting, undersigned counsel received a telephone call from counsel for Brenner Ford. Upon returning that call, Brenner Ford's counsel demanded

---

[5]   These points are partially addressed in Plaintiff's contemporaneous Emergency Verified Motion to Shorten Briefing Schedule on Plaintiff's Motion to Severe First Party Action and Affirm Prior Orders and will be more fully addressed in a forthcoming motion for sanctions.

that Plaintiff's counsel adjourn the depositions of Brenner Ford's Rule 30(b)(6) representative; Stephen Kolodziej; and K. Amy Lemon, which were set by Notice to occur on October 22, October 23, and October 26, respectively. These depositions were set by Notice only after multiple prior attempts to coordinate dates for the depositions went unresponded to. Brenner Ford's counsel requested the adjournment not because of any time conflict, as he admitted that he had not checked the witnesses' availability, but instead because he expressed that he did not want these witnesses deposed prior to the Settlement Conference.[6]

Plaintiff's counsel indicated a need to move these depositions forward, indicated that the testimony of these witnesses would be significant in evaluating settlement positions, and further noted that with the impending trial deadline, adjourning these depositions was not an option. However, Plaintiff's counsel sent Brenner Ford correspondence the same day offering to hold the depositions over a wide range of alternative times in October and even offered to move the depositions to weekend or evening dates. Plaintiff received no response to this offer made on September 24, 2009.

On October 13, 2009, Brenner Ford's counsel sent a facsimile unilaterally declaring that he would not comply with the deposition notices and that if any depositions were eventually to occur, they would only be permitted to occur in the Chicago offices of Brenner Ford's counsel. (*See* October 13, 2009 letter by O'Neill to Paupore, **Group Exhibit A**)[7]. Brenner Ford's counsel further suggested setting a Rule 26(f) conference to discuss a discovery schedule, despite

---

[6] Brenner Ford has improvidently refused to participate in discovery, insisting it was entitled to a ruling on its Motion to Dismiss prior to having to participate in this action. In fact, it has objected to Plaintiff taking the depositions of Everest's employees on these same grounds.

[7] This Exhibit A demonstrates Plaintiff's efforts to coordinate depositions and the resulting stonewalling from Third-Party Defendant.

6

the fact that (1) this matter has been pending since 2007, (2) a Rule 26(f) conference was previously held, (3) the claims under the Second Amended Complaint have been pending since June 2008, (4) Brenner Ford has been a party for some 13 months, and (5) the trial is now upon us.  After refusing to acknowledge deposition notices, alleging that they do not have the effect of a court order requiring appearance, Brenner Ford has suggested that it may agree to make itself available for depositions at some time in November or December – potentially after this Court has indicated the matter may proceed to trial.

In response to Plaintiff's indication that Plaintiff needed these depositions to prepare this case for an imminent trial, Brenner Ford's counsel stated that there was no way that the Court's stated intention of trial closely following the Settlement Conference and no later than 90 days afterwards, would occur.  Brenner Ford's counsel then proceeded to inform Plaintiff's counsel that he would name them as non-parties in the action and would seek to disqualify them as counsel by making them witnesses.  In doing so, Brenner Ford's counsel indicated that this would prevent trial from proceeding under the Court's schedule.

### C.     Brenner Ford's Further Attempts to Delay Matters

As promised, Brenner Ford has named as "non-parties at fault" Plaintiff's attorneys, Wruck and Paupore, in its answer to the Third-Party legal malpractice action by Everest against Brenner Ford.  The legal basis of these claims is not at all clear.  Undersigned counsel was not even an attorney in the underlying state court litigation and has been engaged only as counsel for Plaintiff in the First Party Action presently pending before this Court against Defendant Everest.

While the legal basis of Brenner Ford naming Plaintiff's counsel as non-parties at fault is not immediately obvious, its purpose for doing so is.  As Brenner Ford's counsel suggested, it desires to disqualify Plaintiff's counsel from representing Plaintiff in claims against Everest.

7

Moreover, without any legal support whatsoever, Brenner Ford seeks to rescind its voluntary consent to the presiding judge in this matter on the basis that one of Plaintiff's attorneys served as a law clerk for the presiding judge – a clerkship ending 8 years prior to the Court's September 23, 2009 adverse order which clearly prompted Brenner Ford's motion.   In essence, Brenner Ford wants to engage in judge shopping, seeking to have the presiding judge  - who is intimately familiar with Brenner Ford's record of misconduct through the course of over 214 docket entries and over 170 pages of Orders and Opinions - disqualified on the grounds of a non-existent conflict-of-interest.

Brenner Ford goes so far as to suggest that undersigned counsel, and by extension the Court, somehow concealed the fact that Paupore was a former law clerk, thus their consent to have their case heard before the presiding judge was "involuntary."  How such a relationship was "concealed" is a mystery, as undersigned counsel had posted the information on the Internet.  In all events, allegations of a conflict are completely spurious as a matter of law and the universal authority establishes that Brenner Ford's filing is without basis.  *See, e.g.*, *MMG Financial Corporation*, 2009 WL 3245288, *2 (E.D. Wis. 2009) ("The mere fact that a party is represented by a former law clerk to the Court does not constitute grounds for recusal …While some judges adopt a policy of recusing themselves from cases handled by former law clerks for a period of time after the clerkship ends, there is no requirement that they do so"); *Holbrook v. Nationwide Mutual Insurance Company*, 1999 WL 737956, *2 (S.D. Fla. 1999)(courts "have consistently held that a district judge is not required to recuse himself from a case where his former law clerk represents one of the parties"); *Cheeves v. Southern Clays, Inc.*, 726 F. Supp. 1579 (M.D.Ga. 1990) (finding that although defense counsel had previously worked as the district judge's law clerk while a case was pending before the district judge during the law clerk's clerkship, it was

8

not a sufficient basis to require the court to recuse itself when the law clerk did not work on the case during her clerkship); *United States v. Corces*, 1992 WL 175506, *1 (M.D. Fla. 1992) *citing United States v. Greenough,* 782 F.2d 1556 (11th Cir. 1986)(denying the motion for recusal based on the fact that the prosecutor in the case was a law clerk in the judge's office nine years prior where recusal would be based on no more than "unsupported, irrational or highly tenuous speculation"); *Patzner v. Burkett*, 779 F.2d 1363, 1372 (8th Cir. 1985) (holding the trial judge properly declined to disqualify himself where over one year had passed after clerkship before his former law clerk's name was listed as counsel on any document before the court); *United States v. Hollister,* 746 F.2d 420, 426 (8th Cir. 1984) (holding that the district judge properly refused to disqualify himself on the grounds that the prosecutor finished a clerkship with the judge just three months before becoming involved in defendant's prosecution, although noting a one year recusal period might be proper); *Smith v. Pepisco, Inc.,* 434 F.Supp. 524, 525 (S.D. Fla. 1977) (the fact that plaintiff's attorney had formerly acted as a law clerk for court was an insufficient basis on which to question court's impartiality or require court to recuse itself in the absence of evidence that the court had obtained extrajudicial information as a result of any communication with attorney or that court had violated any section of Code of Judicial Conduct).

  Additionally, Brenner Ford seeks to interpose delay by asking the Court to reconsider the partial summary judgment ruling on the breach of contract claim - which did not involve claims by Everest against Brenner Ford, and instead involved wholly separate claims by Plaintiff against Everest. On its face, the Order and Opinion did not touch on legal malpractice claims.

  As a final tactic, Brenner Ford's filings make clear its intention of trying to call as witnesses Attorney Wruck and undersigned counsel, even though undersigned counsel was not an attorney in the underlying case. (DE 212 at 5). Specifically, Brenner Ford states "Mr. Wruck

9

and Mr. Paupore are material witnesses who will be called to testify in the trial of this matter. Should this case be tried before the Magistrate Judge, this will no doubt create a difficult situation given the prior employment relationship between the Magistrate Judge hearing the case before a jury and the Plaintiff's lead counsel testifying as a witness." (*Id.* at p. 6, ¶ 16).[8] At no time does Brenner Ford elaborate upon how either Wruck or Paupore are "material witnesses" to anything. While one could imagine an argument that Wruck might testify as to matters that occurred in the underlying litigation as attorney of record in the state action as part of a legal malpractice case (although no such argument is directly made and it is unclear if it would be supported), it is impossible to guess at an argument regarding how Paupore could be a "material witness." Brenner Ford does not elaborate on its theories, despite suggesting impropriety on the part both of Paupore and the Court, and instead relies on unadorned allegations.

### III.  ARGUMENT

For reasons both obvious and explained further in other papers, the positions of Brenner Ford are without basis and its conduct throughout is deliberately intended to vex, harass, and - above all else - delay.

Issues regarding Brenner Ford's "consent" can and should be resolved in due course, as should the issue of whether Plaintiff's attorneys in the First Party Action are proper "non-parties at fault" in Everest's Third-Party malpractice action against Brenner Ford and/or are proper witnesses in that Third-Party Action. Such considerations need not, and should not, delay imminent trial of the First-Party Action against Everest. As noted in the Court's Order, these

---

[8] Had Brenner Ford intended to call Plaintiff's counsel - or any other witnesses – during the trial of this matter, it was required to disclose these witnesses in Rule 26(a)(1) disclosures within 30 days of being joined to this action. Fed. R. Civ. Pro. 26(a)(1)(D). Thus, if Brenner Ford had any intention of calling Plaintiff's attorneys as witnesses, it had a duty to disclose this nearly a year ago, not on the eve of trial as part of a delay tactic and frivolous gamesmanship.

10

claims do not, as a matter of law, involve legal malpractice and are more narrowly restricted to Everest's conduct as an insurer.   In light of the summary judgment ruling already in place, as between Plaintiff and Everest, this will not involve attempting to "retry" the underlying action, as the undisputed facts between Plaintiff and Everest have been established through Everest's pleading admissions and through vigorously contested summary judgment proceedings.

Brenner Ford's position is that it intends to take some positions contrary to those matters already admitted in Everest's pleadings or already judicially decided through summary judgment proceedings which occurred while Brenner Ford was a party to this action.  First-Party Plaintiff offers no opinion as to the merits of such a position, but notes that any attempt by the jury to take as true facts judicially established in Plaintiff's action against Everest, while at the same time trying to resolve those facts as between Everest and Brenner Ford in the Third-Party Action, would result in unmanageable jury confusion and a nearly impossible trial environment.

All of these issues can be resolved, and the Court's indicated trial schedule maintained, through an Order severing into separate actions the First-Party Action by Plaintiff against Everest from the Third-Party Action by Everest against Brenner Ford for legal malpractice.[9] Severance of Third-Party claims is specifically contemplated under Federal Rule of Civil Procedure 14(a)(4), which provides "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately."  Moreover, Rule 21 provides broad discretion to a district court to sever individual claims involving the same party.[10]  *See Willyard v. Wal-Mart Stores, Inc.*,

---

[9]     This would also presumably include the insured's *respondeat superior* claims against Everest to the extent they are permitted to intervene under their present motion (DE 208).

[10]    Severance under Rule 21 creates two or more separate and distinct causes of action, allowing separate and distinct causes of action to proceed.  *See Dada v. Wayne Township*

2009 WL 1650046, * 1 (S.D. Ill. June 11, 2009) (severing indemnification claim in Third-Party Complaint to avoid jury confusion and in the interest of judicial economy) (*citing Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000) ("It is within the district court's broad discretion whether to sever a claim under Rule 21."); *Quirin v. Wingfoot Commercial Tire Systems, LLC*, 2006 WL 104396, * 7 (C.D. Ill. 2006) (severing claims for trial purposes only under Rule 42(b));  *See also Simpson v. Stand 21, S.A.*, 1994 WL 735936, at * 1 (S.D. Ind. Sept. 1, 1994) (ordering separate trial of counterclaims and third-party claims, finding this would foster convenience and judicial economy by avoiding presentation of evidence where the claims, issues, and evidence might be distinct).[11]  Moreover, as "Rule 14(a) specifically provides for severance," the reason for permitting Third-Party Actions – maximization of efficiency -  is "not eliminated by a severance of issues intended to prevent prejudice."  *LaSalle Nat. Trust, N.A. v. Schaffner*, 818 F. Supp. 1161, 1165 (N.D. Ill. 1993).

     Specific factors which should be considered when a trial court exercises its broad discretion to order severance include whether severance would facilitate judicial interests, whether prejudice would be avoided by granting severance, and whether different witnesses and proof are required for the separate claims." *Dada*, 2008 WL 2323485 at * 2.

---

*Trustee's Office*, 2008 WL 2323485, * 1 (N.D. Ind. May 30, 2008).  A review of *Dada* provides a through overview of the law pertaining to severance.

[11]    Rule 42(b) allows separate trials, but maintains but one single action, providing:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

All of those factors militate in favor of granting severance here:

    (1)    Severance would ensure that Brenner Ford's intentional delay tactics do not derail imminent trial of this matter;

    (2)    Severance would eliminate any concerns regarding the Plaintiff's lawyers in the First-Party Action being called as witnesses in the Third-Party Action, as these would be two totally separate cases;

    (3)    Severance would moot Brenner Ford's efforts at judge shopping and attempting to disqualify the judge who has presided over this matter for approaching 3 years, issuing over 170 pages of Orders and Opinions. Clearly, there is no merit to such a motion or any conflict of interest. However, the issue becomes moot in any event through severance, as Plaintiff's undersigned counsel would not even be an attorney of record in the Third-Party Action;

    (4)    Severance would ensure that Plaintiff in the First-Party Action would be able to proceed imminently to trial with her chosen counsel of record, who are intimately familiar with this matter over the course of years of representations, thousands of pages of submissions, and some 215 docket entries;

    (5)    Severance would avoid any jury confusion over inconsistent positions presented at trial, to the extent this is suggested, and would streamline trials in both matters;

    (6)    Severance would also potentially allow resolution first of the First-Party Action, which might permit a streamlining, or elimination, of issues

>necessary to be resolved in any subsequent trial of the Third-Party Action. It also seems likely that if the case does not resolve by settlement on October 27, 2009, settlement of the Third-Party Action is much more likely after full and final resolution of the First-Party Action. Trial of the Third-Party Action could be set to immediately follow the First-Party Action;

(7) Severance would in some respects mitigate the benefit Third-Party Defendant hopes to reap by its bad conduct in the form of delay and would allow the Court to address Third-Party Defendants' motions on the merits -in as full or as cursory a fashion as the Court deems appropriate - without delaying the First-Party Action; and

(8) Providing complete severance under Rule 21 would permit final and executable judgment to enter in the First-Party Action without further delaying Plaintiff's availability of full relief while Everest litigates its Third-Party malpractice claims.

With respect to this last point, regarding First-Party Plaintiff being permitted to quickly proceed to a final judgment which is collectable, one might question whether the Third-Party Claims should even proceed at this juncture while the underlying claims remain in dispute. As the Court has found, the Third-Party Plaintiff's claims against the Third-Party Defendant are claims sounding in indemnity (*See* DE 203 at 9) and it is not readily apparent that these claims are fully ripe for disposition until Everest's liability to Plaintiff, and the reasons for that liability, are fully and finally established in the underlying litigation. *See, e.g.*, *Simpson*, 1994 WL 735936 at * 1 (staying counterclaims and third-party action where their resolution would

14

substantially delay resolution of the underlying issues and would more appropriately be resolved after resolution of the primary case); *Cohen v. E.F. Hutton & Co., Inc.*, 1990 WL 36878 at *3-4 (N.D. Ill. 1990) (staying entire third-party action); *Henri's Food Products Co., Inc. v. Home Ins. Co.*, 474 F. Supp. 889, 894 (D.C. Wis. 1979) (severing and staying third-party claims in insurance context).

Indeed, while part of Everest's liability has been determined based on Everest's established breach of contract, further liability - including that for its own negligence and substantial claims of punitive damages - remain.  The full and final results of the First-Party Action against Everest will inevitably define the contours of Everest's Third-Party Complaint against the Brenner Ford defendants and the defense of those defendants.  This may not be entirely known until the First-Party Action result is final.  This suggests that the Third-Party Action is not only appropriately severed, but it might also be appropriately stayed in its entirety until claims against Everest are resolved.  Plaintiff does not offer an opinion regarding the stay of such a matter and does not request such a stay.  It is further unnecessary to resolve that issue at this time, but the willingness of courts not only to sever claims in these instances but to stay them completely reinforces the appropriateness of a severance remedy.

The host of reasons supporting severance is further reinforced by the history of this case. During the September 5, 2008 Status Hearing conducted while Everest's motion to implead the Brenner Ford defendants was pending, the Court inquired whether Plaintiff had any objections. (*See* DE 138).  Plaintiff's attorneys indicated that their sole concern was about the consent issue and making certain that joinder of a third-party action did not somehow impact the presiding judge's ongoing jurisdiction, since it had become extremely familiar with the nuances of the matter through numerous rulings and ongoing oversight.  At that time, the Court suggested that if

any jurisdictional issues arose in presiding over the Third-Party Action which impacted the First-Party Action, such issues might appropriately be addressed through severing the Third-Party Action.  Although many of Third-Party Defendant's tactics in this case are improper and the jurisdictional issues they raise are meritless, the ease by which such issues could be immediately resolved through severance also militates in favor of such an Order – especially given that there may be separate and inconsistent issues being litigated at trial which would require severance in any case.

## IV.  CONCLUSION

For the foregoing reasons, First-Party Plaintiff respectfully requests that the Court sever her action against Defendant Everest from the Third-Party Action and any other action which might become a part of this matter, including any intervention of the insureds to assert *respondeat superior* claims against Everest, pursuant to Rule 14(a)(4) and Rule 21.  In the alternative only, Plaintiff would request that separate trials be ordered pursuant to Rule 14(a)(4) and Rule 42(b).

        Respectfully submitted,

        **WRUCK PAUPORE LLC**

        By:    */s/ Jason J. Paupore*

        Jason J. Paupore

        Galleria Building II, Suite 250
        275 U.S. Highway 30
        Dyer, Indiana 46311
        Tel: (219) 322-1166
        Fax: (866) 891-1166
        E-mail: jpaupore@wp-law.com

I certify, under penalty of perjury, that the factual representations made hereabove are true and correct to the best of my information, knowledge, and belief.

**/s/ Jason J. Paupore**
Jason J. Paupore

## CERTIFICATE OF SERVICE

     I hereby certify that on October 15, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.