UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

ROSELAND McGRATH,            )
                             )
          Plaintiff          )
                             )
     v.                      )    Case No. 2:07 cv 34
                             )
EVEREST NATIONAL INSURANCE   )
COMPANY,                     )
                             )
          Defendant          )

OPINION AND ORDER

This matter is before the court on the Motion by Aidan Alan,
LLC d/b/a Eli's Pub and Randall Neely, LLC to Intervene as Party
Plaintiffs [DE 208] filed on October 5, 2009.  For the following
reasons, this motion is **DENIED**.

Background

On February 11, 2005, the plaintiff, Roseland McGrath, fell
as she was using the front door of Eli's Pub in Hammond, Indiana.
Eli's Pub was a named insured on a CGL Policy maintained with
Everest National Insurance Company.  Counsel for McGrath advised
Randy Godshalk, the principal member of the company operating
Eli's Pub, Aidan Alan, LLC d/b/a Eli's Pub, of her claim against
the pub, and Godshalk, in turn, reported her claim to Everest.

On September 5, 2006, McGrath filed a complaint against
Eli's Pub in the Lake County Superior Court, served the complaint
on Godshalk, and sent a copy of the complaint to the insurer's
claim investigator.  On September 8, 2006, an Everest manager
contacted Stephen Kolodziej of the law firm Brenner, Ford,

Monroe, & Scott ("Brenner Ford") and retained Brenner Ford to defend the interests of Everest's insureds in the state court action. Eli's Pub was informed by Everest's representative that Everest had retained a law firm to represent it in the state action and demanded full cooperation with the defense by Eli's Pub. Everest defended Eli's Pub in the action under a strict reservation of rights and claimed that the aggregate limits under the policy totaled $1,000,000.00, rather than $2,000,000.00.

Despite the retention of counsel, no appearance was entered and no responsive pleading filed by any attorney from Brenner Ford. On October, 4, 2006, an order of default was entered against Eli's Pub, and the court set a hearing on McGrath's damages. In the interim, McGrath's counsel and Koloziej corresponded, though Kolodziej refused to reveal the accurate legal identity of the pub. Counsel for McGrath researched state records, discovered that the pub's accurate name was "Aidan Alan, LLC d/b/a Eli's Pub," and corrected the misnomer on the court docket. Kolodziej then advised McGrath of Brenner Ford's representation of Aidan Alan, LLC and the intent to enter an appearance and file a motion to vacate the order of default entered against Eli's Pub.

On November 27, 2006, Kolodziej and K. Amy Lemon attempted to enter their appearances on behalf of Eli's Pub and filed an emergency motion to vacate the default order. At the time, however, Lemon was suspended from the practice of law in Indiana for nonpayment of dues. Kolodziej had petitioned the court to

2

appear *pro hac vice*, relying on Lemon as local co-counsel. Both applications for appearance were denied – Lemon's due to her suspension and Kolodziej's as defective. Lemon succeeded in reinstating her Indiana license on the morning of the damages hearing, and she alone appeared before Judge Robert Pete for the hearing. Lemon again filed Kolodziej's *pro hac vice* motion, and Judge Pete denied the motion on the merits for a second time. Judge Pete also heard arguments on the motion to vacate the entry of default and denied the motion twice on the record. Judge Pete then conducted the scheduled hearing on McGrath's damages.

Lemon, sole counsel appearing for Eli's Pub, was unprepared to participate in the hearing. Despite an asserted extended attorney-client relationship according to the *pro hac vice* application, Lemon stammered a stream of reasons that the hearing on damages should not proceed, including the fact that Brenner Ford had not had the opportunity to meet with the insureds yet. As the hearing progressed, McGrath called witnesses as to her damages, but Lemon failed to conduct any cross-examination, each time professing her lack of preparation. At the close of the hearing, the court again foreclosed any further discussion on the entry of judgment on liability, but continued the hearing so the insureds could present evidence on damages.

After this initial setting of the damages hearing, Kolodziej reported the case's "unbelievable turn of events" in a letter to the claims investigator. Among other things, this letter distorted the nature of the strategy that Kolodziej had chosen to

pursue by identifying Godshalk, an Indiana attorney and the representative of the insureds, as a collaborator in the strategy to neither enter an appearance nor answer the complaint.

The hearing on damages reconvened on December 11, 2006, but counsel for the insureds failed to present any evidence on the issue of damages. At the close of the hearing, the court permitted briefs rather than argument, and McGrath submitted her Brief on Damages requesting an award of economic and non-economic damages in a maximum sum of $15,825,024, plus any punitive damages the court deemed appropriate. Counsel for the insureds never filed a brief on damages nor contested McGrath's damages calculations in any way.

Just days after the close of the December 2006 damages hearing, counsel for the insureds filed a Motion to Reconsider in an effort to be relieved of the default, but no hearing ever was held to address it. Unfortunately, in March 2007, Judge Pete unexpectedly died, and the issue of damages was left unresolved. The judge temporarily assigned to Judge Pete's court entered an order on April 11, 2007, denying McGrath's Motion for Determination of the Damages On Submission Without Further Hearing, stating that without a stipulation of the parties, a hearing should be held on the matter.

McGrath initiated this federal cause of action in February 2007, originally asserting claims against Godshalk, Randall Neely, LLC, and Everest. McGrath's federal complaint alleged that Aidan Alan, LLC was insured under a policy with Everest

separately from Randall Neely, LLC.  She alleged a count in negligence against Godshalk directly, another count in negligence against Eli's Pub as a sole proprietorship of Godshalk, and a count in negligence against Randall Neely, LLC.  McGrath further sought two counts seeking declaratory judgment:  the first alleging that Godshalk was the alter ego of both LLCs, and the second seeking a declaration that independent acts of negligence committed by the defendants Godshalk and Randall Neely, LLC were separate "occurrences" according to the terms of the Everest policy.  Everest responded by reserving its right to deny coverage, despite the fact that Randall Neely, LLC was a named insured on the policy.  Despite this denial as a named insured, Everest insisted on controlling the defense of the action, retaining Daniel Leininger of the law firm Miner Lemon & Walston, LLP.[1]  Everest also denied that the policy's $2,000,000.00 General Aggregate benefits were applicable to McGrath's claims.[2]

The insureds now were left with a state court entry of default in a lawsuit seeking $15 million in damages and a federal court proceeding where Everest, in full control of the defense, repeatedly denied that the policy provided coverage.  Although counsel for McGrath informed Everest of the conflicts of interest

---

[1]The named partner, Lemon, is a relative of K. Amy Lemon of Brenner Ford, either revealing an incredibly small world or a possible conflict of interest.

[2]This court's Opinion and Order of June 19, 2008, [DE 118] held that the $2,000,000 General Aggregate indemnity benefits were applicable to McGrath's claims.

involved in the representation of the insureds, the insureds were not provided with independent representation. In July 2007, Godshalk personally retained Terrence Rubino of Rubino, Ruman, Crosmer, Smith, Sersic & Polen ("Rubino Ruman") to represent his interests. In spite of repeated efforts to discuss conflicts of interest, settlement, and mediation from July 2007 to January 2008, Everest refused to cooperate with Godshalk's counsel. In fact, on many occasions Everest's counsel simply failed to respond.

Likewise, McGrath attempted to settle both the state and federal claims with Everest together for the aggregate amount of $2,000,000, but efforts to meet for settlement or mediation were spurned by Everest. As a result of failed settlement attempts, McGrath filed a Renewed Motion for Determination of Damages in the state court matter, and the court scheduled the motion for final entry of damages on February 13, 2008. Repeatedly, McGrath communicated the possibility of settlement within the indemnity limits and further arranged a mediation on January 16, 2008. Everest was invited to attend, but counsel for Everest refused. Both Rubino Ruman and Leininger attended on behalf of the insureds.

Rubino Ruman attempted to confer with Everest, but the efforts were futile. Everest held fast to its belief that the applicable limit of $1,000,000 per occurrence capped the policy limit at $1,000,000 rather than $2,000,000. Everest also expressed the belief that the state court default would be set

aside and was reluctant to address the contingency of an excess judgment. On January 25, 2008, with less than a month before the scheduled hearing on damages in state court, the insureds and McGrath entered into an Assignment and Non-Execution Agreement ("Assignment"). McGrath promised to reduce the amount of her damages request by over $3,000,000, from $15,825,024 to $12,383,643, to withdraw her request for punitive damages, and to dismiss her federal claims against the insureds with prejudice. In exchange, the insureds agreed to withdraw the motions to reconsider and vacate before the state court and to assign to McGrath all causes of action held against Everest and its agents, whether arising in contract or tort, including all claims for compensatory and punitive damages. The Assignment was submitted to the court, and the state court entered its Order and Final Judgment in accordance with the stipulations of the parties on January 28, 2008.

The Assignment contains in part the following:

> 1. <u>Summary Assignment of Claims and Rights</u>: Eli's Pub hereby summarily assigns, conveys, and transfers to McGrath all of its rights and interests in any claims described below, whether arising in contract, common law, or statute:
>
>> 1.1 Any and all claims and right to recovery against Everest National Insurance Company ("Everest National") for indemnity under a Commercial General Liability Policy, number 5700005285-041 ("Policy"), issued by Everest National to Godshalk, Eli's Pub, and Randall Neely, LLC.
>>
>> 1.2 Any and all claims against Everest

National relating to its handling of McGrath's claims in the Lake County Superior Court against Eli's Pub, Case No. 45D05-0609-CT-00168 ("Lake County Lawsuit") or against Mr. Godshalk and Randall Neely, LLC in the Northern District of Indiana, Cause No. 2:07-cv-34 ("Federal Lawsuit"), before or after such suits were filed. This shall include, but not be limited to, claims sounding in contract, negligence, and bad faith. For purposes of this section, "Everest National" shall include Everest National's attorneys, adjusters, claims examiners, employees, agents, officers, directors, and/or other appointed representatives, individually or collectively.

\* \* \*

1.4  The Assignment of the foregoing claims shall expressly include rights to recover all damages accruing, whether compensatory, punitive, or otherwise.

2.  <u>Resolution of Damages on Default Judgment</u> Eli's Pub hereby agrees to fully and finally resolve the amount of the damage award currently pending determination by the Court in the Lake County Lawsuit through the following procedure:

2.1  <u>Withdrawal of Motions Attacking the Default Judgment</u>.  The Parties expressly recognize that all pending motions in the Lake County Lawsuit seeking to vacate, set aside, or otherwise attack the October 4, 2006 default judgment are unlikely to prevail on the merits, and Eli's Pub hereby agrees to withdraw the same so that a final award may be entered on the October 4, 2006 default judgment. . . .

\* \* \*

2.5  <u>Entry of Judgment</u>  The Parties recognize that the amount of any final judgment on the October 4, 2006 default must be reviewed and ultimately approved

by the Court and that approval by the Court of a Final Judgment is an integral part of this Agreement. The Parties further recognize that the release of Mr. Godshalk and the covenant not to execute against the assets of Mr. Godshalk, Eli's Pub and Randall Neely, LLC, other than the liability insurance of Eli's Pub and/or Randall Neely, LLC, is an integral part of this Agreement.

3. <u>Covenant Not to Execute or Sue</u>  As a material term of this Agreement, McGrath, her heirs, transferees, assignees, and successors in interest hereby now and forever promise, covenant, and agree as set forth here below.

3.1  McGrath, her heirs, transferees, assignees, and successors in interest shall not now or at any time hereafter attempt to levy, execute, or in any other manner seek to enforce the Final Judgment or any other judgment arising from McGrath's February 11, 2005, incident against Eli's Pub, Godshalk, Randall Neely, LLC, and/or their members, shareholders, officers, directors, heirs, transferees, assignees, and/or successors in interest, if any.

* * *

3.3  McGrath, her heirs, transferees, assignees, and successors in interest shall not now or at any time hereafter institute any lawsuit, administrative proceeding, or any other legal action against Eli's Pub, Godshalk, Randall Neely, LLC, and/or their members, shareholders, officers, directors, heirs, transferees, assignees, and/or successors in interest, if any, arising from injuries she incurred on or about February 11, 2005 at 6729 Kennedy Avenue.  In the event that Final Judgment is not approved and entered in the Lake County Action or is subsequently set aside, Section 3.3 shall be void.  However, the Covenant Not to Execute set forth in Section 3.1 shall remain in full effect unless Eli's Pub Exercises bad faith

and/or attempts to circumvent the terms
of this Agreement.

* * *

4. <u>Acknowledgment</u> The Parties acknowledge,
represent and agree that this Agreement has
been entered into by all Parties as a free
and voluntary act following good faith media-
tion, free of duress and coercion and after
consultation with counsel, *and that the Par-
ties are aware of the alternative rights and
remedies available to them. The Parties
further acknowledge, represent and agree that
the assumptions and perceived circumstances
upon which this Agreement is executed may be
mistaken or otherwise in error. The Parties
accordingly expressly accept and assume the
risk of facts being other than or different
from its or their assumptions or perceptions
as of any date prior to and including the
date hereof, and agree that this Agreement
shall be in all respects effect*, and shall
not be subject to termination, rescission, or
modification *by reason of any mistake or
erroneous assumption of perceived circum-
stances*. (emphasis added)

Summary Assignment and Non-Execution Agree-
ment [DE 135-2]

On June 23, 2008, McGrath filed her Second Amended Complaint
which asserts claims for declaratory judgment that the state
court judgment is binding on Everest, breach of contract, bad
faith and breach of fiduciary duty, negligence, and fraud, all of
which arose from Everest's failure to defend its insured in the
underlying state court claims for McGrath's personal injuries.
Because of the Assignment, the insureds no longer are defendants
in this matter. In its Answer, Everest asserted a counterclaim
for declaratory judgment against McGrath, Godshalk, Aidan Alan
LLC, and Randall Neely, LLC.

10

Everest's counterclaim, however, was the subject of two motions to dismiss and/or strike - one tendered by McGrath, the second by the insureds. McGrath argued that Everest's counterclaim was simply a redundant claim mirroring the plaintiff's claims and that the insureds were not proper counter-defendants because they were non-parties to the matter. The insureds' motion to dismiss relied on McGrath's arguments, declaring that the insureds "hereby adopt and incorporate by reference the Brief in Support of Motion to Dismiss and/or Strike Defendant's 'Counterclaims' for Declaratory Relief filed by Plaintiff Roseland McGrath[.]" (DE 140-1, p. 2) Because the counterclaim for declaratory judgment asserted by Everest merely mirrored the same issues put forth in McGrath's complaint, this court granted the motions to dismiss the counterclaim and released the insureds from the cause of action based on the argument that they no longer were proper parties because of their full assignment of claims. (*See* DE 201)

McGrath then moved for partial summary judgment with respect to the claims for breach of contract and negligence as to Everest's behavior to its insureds. Specifically, McGrath sought judgment that Everest breached its contractual and tort duties to defend its insureds in the state action and was liable to McGrath as the assignee of the claims. This court granted summary judgment as to the breach of contract claims, but denied summary judgment on the tort claims on two grounds: first, any tort claims sounding in legal malpractice were denied because the

State of Indiana prohibits the assignment of legal malpractice claims; and second, the remaining negligence claims were denied because the fact-sensitive nature of the claims had to be resolved by a jury. (*See* DE 202)

Now the insureds want back in this case. Their motion states that they want to intervene "for the sole purpose of asserting all tort claims against Defendant Everest National Insurance Company which the Court deems are still held by the Insureds and were not part of the Insureds' assignment of claims to Plaintiff Roseland McGrath[.]" (DE 208, p. 1) The insureds claim that "it was recognized for the first time on September 23, 2009 [sic] that the Insureds hold a residual interest in those claims [sounding in legal malpractice]." (DE 209, p. 6) The insureds repeat this proclamation that they "learned of their remaining interest in a portion of the tort claims against Everest for the first time on September 24, 2009[,]" the day the court's Opinion and Order was docketed. (DE 209, p. 6) The insureds attached a proposed complaint as intervenors alleging all of the tort claims included in McGrath's complaint limited by the words "only to the extent such claims are deemed not to have been assigned by the Insureds to McGrath as a matter of law." (DE 209, p. 6) The insureds ask to intervene to assert any residual claims of which assignment was invalid.

## Discussion

Federal Rule of Civil Procedure 24(a) provides that

> [o]n timely motion, the court must permit
> anyone to intervene who: . . . (2) claims an
> interest relating to the property or transac-
> tion that is the subject of the action, and
> is so situated that disposing of the action
> may as a practical matter impair or impede
> the movant's ability to protect its interest,
> unless existing parties adequately represent
> that interest.[3]

The Rule has four distinct requirements: timeliness, sufficiency of interest in the action, impairment or impediment of the interest, and adequacy of representation. All four are necessary for intervention as of right. The court's analysis of intervention cases is "highly fact specific and tend[s] to resist comparison to prior cases." *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995)(*citing* *Shea v. Angulo*, 19 F.3d 343, 349 (7th Cir. 1994)).

A party seeking to intervene first must show that its motion is timely. The test for timeliness is essentially one of reasonableness: "potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly." *Nissei Sanzyo America, Ltd. v. United States*, 31 F.3d 435, 438 (7th Cir. 1994) (*citing* *United States v. South Bend Community School Corp.*, 710 F.2d 394, 394 (7th Cir. 1983). The court also considers "the prejudice to the original parties if intervention is permitted and the prejudice to the intervenor if his motion is denied." *Shea*, 19 F.3d at 349. The court is to "determine timeliness from

---

[3]The version of Rule 24 that the Insureds quote in the motion to intervene is not current.

the time the potential intervenors learn that their interest might be impaired." **Reich**, 64 F.3d at 321 (internal citations omitted).

Two actions by the insureds weigh heavily against mandatory intervention in the timeliness analysis: first, the insureds' previous request to be dismissed from this cause of action based on the Assignment; and second, the reasonable diligence of the insured in learning that Indiana law prohibits the assignment of legal malpractice claims.

The argument, made by McGrath and adopted by the insureds, to dismiss the insureds from the suit and to dismiss Everest's counterclaim repeatedly denied the necessity of the insureds being a party to the action. They stated "[M]atters can be fully resolved without the insureds[,]"and, "[P]resence of the insureds is not helpful in any way to the disposition of this matter." This court agreed, especially after a review of the Assignment.

"When interpreting a contract, our paramount goal is to ascertain and effectuate the intent of the parties." **Stewart v. TT Commercial One, LLC**, 911 N.E.2d 51, 56 (Ind. App. 2009)(*citing Village Commons, LLC v. Marion County Prosecutor's Office*, 882 N.E.2d 210, 215 (Ind. App. 2008)). The intent of the assignment and the unambiguous argument of McGrath and the insureds in their motions to dismiss was that the insureds, in exchange for a covenant not to execute, wanted no part of either the federal or state lawsuit. Paragraph 1.4 of the Assignment of the claims "expressly include[s] rights to recover all damages accruing,

14

whether compensatory, punitive, or otherwise."  Paragraph 3.3
states that the McGrath's Covenant Not to Execute against the
insureds "shall remain in full effect unless Eli's Pub exercises
bad faith and/or attempts to circumvent the terms of this Agree-
ment."  Finally, the Acknowledgment states that the parties "are
aware of the alternative rights and remedies available to
them[,]" "further acknowledge, represent and agree that the
assumptions and perceived circumstances upon which this Agreement
is executed may be mistaken or otherwise in error[,]" "accord-
ingly expressly accept and assume the risk of facts being other
than or different from its or their assumptions or percep-
tions[,]" and "agree that this Agreement shall be in all respects
effective, and shall not be subject to termination, rescission,
or modification by reason of any mistake or erroneous assumption
of perceived circumstances."

Although such acknowledgment of the possibility of mistake
and the release of alternate rights and remedies appears to
preclude intervention now, the insureds are correct that their
right to any legal malpractice claim survives.  "If the assign-
ment or conveyance is champertous, it does not destroy the
assignor's right; the assignor may still prosecute the claim in
his own name."  7 *Willison on Contracts* §15:5 (4th ed.).  *See
also* **Refac International, Ltd. v. Lotus Development Corp.**, 131
F.R.D. 56, 58 (S.D. N.Y. 1990)(assignment of 5% interest in
patent in exchange for assignee's agreement to sue at least two
alleged infringers within one month of assignment held champer-

tous under New York Law as "nothing but a hunting license," and hence void; the court dismissing the suit with the right of assignor, however, to be substituted as real party in interest within ten days from dismissal).  However, the fact that as assignor the insureds still retain the claims does not resolve the timeliness inquiry, and the insureds must show that they were reasonably diligent in learning that this suit somehow affects their rights.

In the Opinion and Order of September 23, 2009, this court explained Indiana's prohibition on the assignment of legal malpractice claims, *citing* **Querrey & Harrow, LTD. v. Transcontinental Ins. Co.**, 885 N.E.2d 1235 (Ind. 2008).  Because this prohibition was raised by this court *sua sponte*, the counsel arguing the case to the Supreme Court of Indiana was noteworthy.  Edward Hearn, lead counsel for Everest throughout this litigation, and Andrew Crosmer, of Rubino Ruman, represented the two parties to **Querrey & Harrow**.  The Court of Appeals proceedings were briefed in 2006 and decided in 2007, and at that time, Rubino represented the appellee.[4]  *See* **Querrey & Harrow, LTD. v. Transcontinental Ins. Co.**, 861 N.E.2d 719, 720 (Ind. App. 2007)(listing counsel to the parties).  As explained in the Opinion and Order, the Supreme Court of Indiana reaffirmed its strict prohibition against

---

[4]To further highlight the small world theme of this matter, **Querrey & Harrow** involved an excess insurer bringing a legal malpractice action against a law firm and the attorneys representing a client which ultimately ended in a settlement for $6,300,000, and the summary judgment on the malpractice claim was denied by Judge Robert A. Pete, Jr., of the Lake Superior Court. 861 N.E.2d at 720-21.

assignment of legal malpractice claims, even in instances where the excess insurer attempts to pursue them, a practice which many states allow. *Querrey & Harrow*, 885 N.E.2d at 1238.

It is clear that counsel for the insureds knew that legal malpractice claims are unassignable in the State of Indiana. In fact, Rubino argued just that in briefs to the Indiana Court of Appeals in 2006, asserting that the case was one of equitable subrogation rather than one analogous to an assignment of mal-practice claims. "This case does not arise from an 'assignment' of a legal malpractice action; CNA has a subrogated, pre-tort contractual right to stand in the client's shoes to collect. . . ." (Brief of Appellee-Plaintiff, *Querrey & Harrow, LTD.*, 2006 WL 2610546 at *4). Rubino continued, "Therefore, the trial court's ruling is correct and does not conflict with *Indiana's prohibition of the assignment of legal malpractice cases*." *Id.* (emphasis added). Without a doubt, the partners at Rubino Ruman understood the law on assignment in 2006, when the briefs on appeal were written, in 2007, when the appellate case was de-cided, in 2008, when the Assignment at issue was executed, and in 2009, when the Motion to Intervene and its protestations of surprise were filed. Obviously, counsel for the insureds did not "recognize for the first time" that such claims were not assigned to McGrath. This is another example of the unprofessional conduct that has run rampant throughout this case. The court finds that the insureds were aware of their rights, making the request to intervene at this point untimely.

17

Because mandatory intervention requires all four elements to be satisfied, the analysis can end here. However, the court will address the second element. To intervene by right pursuant to Rule 24(a)(2), the potential intervenor must demonstrate that it "claims an interest relating to the property or transaction that is the subject of the action[.]" The interest shown by an applicant "must be a 'direct, significant, legally protectable' one." *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir. 1995)(*quoting* **American National Bank v. City of Chicago**, 865 F.3d 144, 146 (7th Cir. 1989)). It is a fact specific inquiry to determine whether a sufficient interest exists, which must be something more than a "betting" interest. *Security Ins. Co. of Hartford*, 69 F.3d at 1381.

The insureds claim that their interest is in the subject matter of the litigation, i.e., the underlying transactions between the insureds and Everest which are the basis for the Assignment. However, as noted repeatedly, McGrath cannot pursue any of the insureds' claims sounding in legal malpractice based upon the assignment, and so those claims no longer remain in federal court. The insureds make a very brief argument asserting that because the malpractice claims arise out of the same legal duty owed and the same series of transactions, they have an unrepresented interest in this case. The fact that the insureds hold a claim against Everest does not alone meet the requirement of a sufficient interest required by Rule 24(a). The insureds do not explain how any judgment in this case between the current

parties could affect them.  *See **Gould v. Alleco, Inc.***, 883 F.2d

281 (4th Cir. 1989)(finding that a general interest in a party's

assets based on speculative recovery in an unrelated civil action

did not satisfy Rule 24's interest requirement).

The insureds in their reply brief assert that their interest

includes punitive damages from Everest.  The notion that the in-

sureds may pursue punitive damages from Everest directly contro-

verts the spirit of the Assignment to McGrath.  Paragraph 1.4 of

the Assignment states that "[t]he Assignment of the foregoing

claims shall expressly include rights to recover all damages

accruing, whether compensatory, punitive, or otherwise."  Indeed,

in their plea to be dismissed from this matter, the insureds

adopted the argument that "[d]ue to their assignment of all

causes of action *and proceeds* to Plaintiff, Everest's Insureds

have no interests directly at issue and it would be highly unfair

to require these parties to obtain counsel, at their expense, and

be subject to further litigation cost."  (Brief in Support of

Pltf. Mot. to Dismiss and/or Strike Deft. "Counterclaims" for

Decl. Relief, p. 12)

In addition, the plain, clear intent of the Assignment was

for the insureds to give up all claims to McGrath in exchange for

McGrath refraining from executing or seeking to enforce the state

court judgment against the insureds.  The Assignment states that

McGrath's "Covenant Not to Execute set forth in Section 3.1 shall

remain in full effect unless Eli's Pub exercises bad faith and/or

*attempt to circumvent the terms of this Agreement*."  Those terms

also include an express assumption of any mistake or error, which would include such an error of law as forgetting that legal malpractice claims are unassignable. The insureds have no direct interest in this matter. They are free to pursue the matter elsewhere at the risk of jeopardizing the provisions of the Assignment, and those legal decisions concerning the interpretation of the terms of the Assignment and the insureds' malpractice claims, including any statute of limitations defense or continuous and ongoing breach arguments, can be addressed separately from the issues still pending here.

As to the third factor, whether the potential intervenor's interest will be impaired or impeded, the fact that the court finds no direct interest here disposes of this factor as well. No tort claims sounding in legal malpractice will be decided in this matter, and the insureds can proceed on their own with those claims, albeit not in this cause of action. Similarly, the question of adequate representation of interests is moot because the court finds that the insureds have no direct interests here.

The contentions put forth in the request for dismissal make the Motion to Intervene untimely, and the intent of the Assignment and the lack of more than a betting direct interest in this matter show the lack of a sufficient interest in this action. Because the insureds' Motion to Intervene fails to fulfill the requisite elements under Rule 24(a), the request for mandatory intervention is **DENIED.**

As to permissive intervention, Rule 24(b) provides: "On timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact." "[I]ntervention under Rule 24(b)(2) is entirely discretionary." ***United States v. Sidley Austin Brown & Wood LLP***, 2004 WL 816448, *8 (N.D. Ill. 2004) (*quoting* and *citing* ***Keith v. Daley***, 764 F.2d 1265, 1272 (7th Cir. 1985)). Because the court already has found the insureds' request to intervene after arguing to be dismissed and knowingly retaining any malpractice claims to be untimely, the request for permissive intervention also is **DENIED.**

———————————

For the foregoing reasons, the Motion by Aidan Alan, LLC d/b/a Eli's Pub and Randall Neely, LLC to Intervene as Party Plaintiffs [DE 208] filed on October 5, 2009, is **DENIED.**

ENTERED this 25th day of November, 2009

s/ ANDREW P. RODOVICH
United States Magistrate Judge

21