UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ROSELAND McGRATH, )<br><br>Plaintiff )<br><br>v. )<br><br>EVEREST NATIONAL INSURANCE )<br>COMPANY, )<br><br>Defendant )<br>*****************************)<br>EVEREST NATIONAL INSURANCE )<br>COMPANY, )<br><br>Third-Party Plaintiff )<br><br>v. )<br><br>BRENNER FORD MONROE & SCOTT, )<br>LTD., a Law Firm, STEPHEN A. )<br>KOLODZIEJ and K. AMY LEMON, )<br>Individuals, )<br><br>Third-Party Defendants ) | Case No. 2:07 cv 34 |

## OPINION AND ORDER

This matter is before the court on the Motion to Vacate
Referral to the Magistrate Judge [DE 211] filed by the third-
party defendants, Brenner Ford Monroe & Scott, Ltd., Stephen A
Kolodziej, and K. Amy Lemon, on October 13, 2009, and the Joinder
in Motion to Vacate Referral to the Magistrate Judge [DE 228]
filed by Everest National Insurance Company on October 20, 2009.
For the reasons set forth below, the Motion to Vacate Referral is
**DENIED.**

The underlying facts of this matter have been thoroughly detailed in the recent Opinions and Orders of September 23 and 24, 2009. [DE 202, 203]  Roseland McGrath fell as she exited Eli's Pub, suffering serious injuries.  McGrath filed a complaint in the Lake County Superior Court naming Eli's Pub as the sole defendant.  Service was made upon Randy Godshalk, the principal or managing member of Randall Neely, LLC, which owned the pre-mises and leased that property to Eli's Pub, as well as the principal member of Aidan Alan, LLC d/b/a Eli's Pub, the entity operating the pub.  "Eli's Pub" was just a name.  Although Godshalk knew of the suit, reported the claim to his insurance carrier, the insurer retained legal representation, and that counsel had communicated with McGrath's counsel, the decision was made not to answer or respond to the state court complaint.  This dubious legal strategy was based on the hopes that the statute of limitations would run before the underlying legal entity could be uncovered and properly named as defendant.  This plan failed. Counsel for McGrath searched state liquor license records and uncovered the LLCs' identities.  Immediately upon this discovery, McGrath obtained an order from the state court correcting the misnomer of the defendant.  Upon motion, the Lake County Superior Court entered a default and set the matter for a hearing on damages.

The insurer, Everest, had retained Brenner Ford to defend the insureds.  Before the damages hearing, Brenner Ford attempted

to enter the appearances of two attorneys on behalf of the insureds. The first, Lemon, had her Indiana license to practice suspended for nonpayment of dues, and the second, Kolodziej, was denied the privilege to appear *pro hac vice* based on deficiencies in his application. On the day of the hearing, Lemon was reinstated and was able to represent the insureds, but she repeatedly expressed her lack of preparation and did not cross examine any witnesses. Although the hearing on damages continued at a later date, at no time did any attorney from Brenner Ford dispute any evidence presented by McGrath on damages, nor was a brief on damages submitted to the court. Prior to the entry of a final judgment, the insureds believed they were not being effectively defended and retained independent counsel. An agreement was reached, and the insureds assigned all claims against Everest to McGrath in exchange for McGrath's agreement to refrain from collecting on any judgment entered in state court. That assignment set the judgment at over $12 million, which was entered by the court.

McGrath filed a declaratory action in federal court and, after the assignment of claims by the insureds, McGrath amended her complaint to include the insureds' contract and tort claims against Everest. Everest filed a third-party complaint pleading Brenner Ford as third-party defendants, and Brenner Ford responded with a Motion to Dismiss. While awaiting a ruling on the motion to dismiss, the Clerk of Court sent forms to the third-party defendants about consenting to the Magistrate Judge's

jurisdiction pursuant to 28 U.S.C. §636(c), and Brenner Ford consented. (*See* DE 193, Notice of Full Consent to Magistrate Judge)  Because the original parties previously had consented, the case remained assigned to this judicial officer.

On September 23, 2009, this court granted in part McGrath's Motion for Partial Summary Judgment, finding that Everest breached its contractual duty to defend the insureds at the moment that the default was entered in state court.  This court found that although the duty of care to the insureds was breached by Everest as the principal in the agency relationship with Brenner Ford, such claims which sound in legal malpractice could not be assigned under Indiana Law.  The next day, September 24, 2009, Brenner Ford's motion to dismiss the third-party complaint was denied.

On October 13, 2009, Brenner Ford filed this motion to vacate referral, followed immediately that same day by the Third-Party Defendants' Motion to Reconsider the Court's September 23, 2009 Order.  The root of the motion to vacate referral is that McGrath's counsel, the law firm of Wruck Paupore LLC, includes Jason J. Paupore, an attorney who served as a law clerk to this court from August 1999 to August 2001.  Brenner Ford avers that only in late September did they discover "for the first time" that Paupore had served a clerkship here.  Brenner Ford contends that this clerkship is a "material fact" and that the non-disclosure of this fact made the consent involuntary.  Brenner Ford asks to be permitted to withdraw their earlier written consent,

and one week later, Everest joined in this effort to vacate referral.

Discussion

Federal Rule of Civil Procedure 73 dictates trial by a magistrate judge when all parties have consented:

> **(a) Trial by Consent.** When authorized under 28 U.S.C. §636(c), a magistrate judge may, if all parties consent, conduct a civil action or proceeding, including a jury or nonjury trial. A record must be made in accordance with 28 U.S.C. §636(c)(5).
>
> **(b) Consent Procedure.**
>
> **(1) *In General.*** When a magistrate judge has been designated to conduct civil actions or proceedings, the clerk must give the parties written notice of their opportunity to consent under 28 U.S.C. §636(c). To signify their consent, the parties must jointly or separately file a statement consenting to the referral. A district judge or magistrate judge may be informed of a party's response to the clerk's notice only if all parties have consented to the referral.
>
> **(2) *Reminding the Parties About Consenting.*** A district judge, magistrate judge, or other court official may remind the parties of the magistrate judge's availability, but must also advise them that they are free to withhold consent without adverse substantive consequences.
>
> **(3) *Vacating a Referral.*** On its own for good cause – or when a party shows extraordinary circumstances – the district judge may vacate a referral to a magistrate judge under this rule.
>
> **(c) Appealing a Judgment.** In accordance with 28 U.S.C. §636(c)(3), an appeal from a judgment entered at a magistrate judge's

5

direction may be taken to the court of appeals as would any other appeal from a district-court judgment.

The jurisdiction, powers, and temporary assignments of magistrate judges are further delineated by 28 U.S.C. §636:

> **(c)** Notwithstanding any provision of law to the contrary – –
>
>> **(1)** Upon the consent of the parties, a full-time United States magistrate judge or a part-time United States magistrate judge who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves. . . .
>
>> **(2)** If a magistrate judge is designated to exercise civil jurisdiction under paragraph (1) of this subsection, the clerk of court shall, at the time the action is filed, notify the parties of the availability of a magistrate judge to exercise such jurisdiction. The decision of the parties shall be communicated to the clerk of court. Thereafter, either the district court judge or the magistrate judge may again advise the parties of the availability of the magistrate judge, but in so doing, shall also advise the parties that they are free to withhold consent without adverse substantive consequences. Rules of court for the reference of civil matters to magistrate judges shall include procedures to protect the voluntariness of the parties' consent.
>
>> **(3)** Upon entry of judgment in any case referred under paragraph (1) of this subsection, an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate judge in the same manner as an appeal from any other judgment of the district court. The consent

6

of the parties allows a magistrate judge
designated to exercise civil jurisdic-
tion under paragraph (1) of this subsec-
tion to direct the entry of a judgment
of the district court in accordance with
the Federal Rules of Civil Procedure.
Nothing in this paragraph shall be con-
strued as a limitation of any party's
right to seek review by the Supreme
Court of the United States.

**(4)** The court may, for good cause shown
on its own motion, or under extraordi-
nary circumstances shown by any party,
vacate a reference of a civil matter to
a magistrate judge under this subsec-
tion.

"Unlike nonconsensual referrals of pretrial but case-dispositive
matters under §636(b)(1), which leave the district court free to
do as it sees fit with the magistrate judge's recommendations, a
§636(c)(1) referral gives the magistrate judge full authority
over dispositive motions, conduct of trial, and entry of final
judgment, all without district court review." *Roell v. Withrow*,
538 U.S. 580, 585, 123 S.Ct. 1696, 1700-01, 155 L.Ed.2d 775
(2003) (holding that consent to proceedings before a magistrate
judge can be inferred from a party's conduct during litigation).
*See also* *Gonzalez v. United States*, ___ U.S. ___, 128 S.Ct. 1765,
1767-1771, 170 L.Ed.2d 616 (2008) (discussing consent to magis-
trate judge's jurisdiction for voir dire in a criminal trial and
holding that consent by counsel suffices).

"Once a party has consented to proceed before the magistrate
judge pursuant to section 636(c), both the magistrate judge and
the other parties may rely on that consent in making their prepa-
rations for trial. Ordinarily a party who has so consented may

7

not later withdraw the consent."  12 Charles Alan Wright, Arthur

R. Miller, & Richard L. Marcus, *Federal Practice and Procedure*

§3071.3 (2d ed. 1997).  Although §636(c)(4) provides that a court

may, if good cause is shown or under extraordinary circumstances

shown by any party, vacate a reference, the congressional intent

of the Senate Judiciary Committee in adding the provision for

vacation of the reference by a district judge was limited.  The

Committee explained that this section of the bill

> authorized a district judge to vacate a ref-
> erence of a civil case.  This statement makes
> clear the court's inherent power to control
> its docket.  This language is intended to
> permit in extraordinary circumstances the
> trial before a district judge of a matter
> otherwise before a magistrate.  This removal
> power is to be exercised only when it is
> appropriate to have the trial before an arti-
> cle III judicial officer ***because of the ex-
> traordinary questions of law at issue and
> judicial decision making is likely to have
> wide precedential importance.*** (emphasis add-
> ed)
>
> 12 Wright, Miller, & Marcus, *Federal Practice
> and Procedure* §3071.3 n.3 (*citing* S.Report
> No. 74, 96th Cong., 1st Sess. 14 (1979))

*See also **Carter v. Sea Land Services, Inc.***, 816 F.2d 1018, 1020-

21 (5th Cir. 1987)(holding that there is no right to withdraw

consent)("Any such rule would allow the party to hold the power

of consent over the magistrate like a sword of Damocles, ready to

strike the reference should the magistrate issue a ruling not

quite to the party's liking.  We will not countenance such fast

and loose toying with the judicial system.").

Brenner Ford asserts that the residual authority of the district court requires that a motion to vacate referral to a magistrate judge's jurisdiction be decided by the district court, citing *Dowell v. Blackburn*, 932 F.2d 963 (4th Cir. 1991), in support of this practice.[1]  This unpublished, five-paragraph opinion from another circuit concerned a pro se plaintiff who attempted to withdraw his consent in a motion filed shortly before the scheduled trial date.  *Id.* at *1.  Admitting that "authority on this subject is sparse," the per curium opinion held that only a district court holds the power to cancel a reference, and remanded the case.  *Id.*  On remand, the district court held that adverse decisions by the magistrate judge, absent clear prejudicial abuse, did not constitute "good cause" or "extraordinary circumstances" warranting vacation of the reference.  *Dowell v. Blackburn*, 776 F.Supp. 283, 284 (W.D. Va. 1991).

However, this unpublished disposition from the Fourth Circuit case is the sole support cited for restricting a magistrate judge from having jurisdiction to deny a motion to vacate consent.  The Second Circuit disagrees, stating that "[w]ith complete propriety, [the magistrate judge] could have declined to vacate the 636(c) consent and adjudicated the merits defini-

---

[1]The opinion is clearly labeled as unpublished and is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.  The opinion's header refers to the Fourth Circuit's Rule 32.1, which states, "Citation of this Court's unpublished dispositions issued prior to January 1, 2007, in briefs and oral arguments in this Court and in the district courts within this Circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case."  None of these exception are applicable here, giving this case no precedential authority.

tively." ***McCarthy v. Bronson***, 906 F.2d 835, 839 (2nd Cir. 1990). Most importantly, the Seventh Circuit does not restrict the authority of a magistrate judge to rule on this issue. In ***Lorenz v. Valley Forge Ins. Co.***, 815 F.2d 1095 (7th Cir. 1987), a defendant in this court contended that the reference to the magistrate judge should have been vacated once the plaintiffs were allowed to amend their complaint to request $10 million in punitive damages when the original complaint sought $150,000 in punitive damages. Then Chief Judge William Bauer succinctly stated: "We agree with the magistrate that this is not the type of extraordinary circumstance which should allow a party to withdraw its consent to have the case tried by a magistrate." *Id*. at 1097.

Therefore, as a preliminary matter, the court finds that the unreported opinion from the Fourth Circuit shall not guide the court in this decision. The Seventh Circuit does not require this matter to be decided by the district court, as supported by the Second Circuit. In conjunction with the remainder of the findings to follow in this order, this vacation of referral is merely a request to withdraw consent, which the parties have no absolute right to expect. The legislative intent of the provision allowing vacating a consent to a magistrate judge is not applicable to this matter. In fact, as discussed below, the facts here in support of vacating the consent are unconvincing.

A second preliminary issue is a clarification of the relief requested by Brenner Ford and Everest - "reassigning the case to a United States District Judge[.]" Such relief reveals a fallacy

in the motion with regard to a perceived entitlement to a trial by a district judge after the parties have consented to the jurisdiction of a magistrate judge.  As explained in a similar case:

> This assumption is erroneous.  Even if [the party seeking to vacate consent] were correct in his assertion that [the magistrate judge] ought to disqualify himself under section 455, [the party] has not shown that his remedy would be a vacation of the consent to trial before a magistrate.  At most, [he] would be entitled to the disqualification of [the currently assigned magistrate].  As long as other magistrates were available in this District, the consent agreement – which provides for "trial before . . . *a* United States Magistrate" (emphasis added) – would remain in effect and this case would be referred to another magistrate for trial.
>
> ***MacNeil v. Americold Corporation***, 735 F.Supp. 32, 39 (D. Mass. 1990)

The same applies here.

Courts do not look favorably upon the use of motions to vacate consent to a magistrate judge which are actually thinly veiled attacks on a judge's impartiality.  *See **Huertas v. City of Camden***, 2009 WL 3151312, *4 (D.N.J. 2009)("A magistrate judge cannot be removed by another judge using a recusal standard.  The proper procedure would be to bring a motion to recuse before the magistrate judge."); ***Doe v. Nat'l Bd. Of Medical Examiners***, 2001 WL 1003206, *2 (E.D. Pa. 2001)(sternly treating motion to vacate consent as motion for recusal)("[I]n a case like this one, where the §636(c)(6) motion carries an underlying allegation of bias, the proper procedure would be to bring a motion to recuse before

the magistrate judge." . . . "This smacks of a motion for recusal, and this Court will not allow it."); ***Clay v. Brown, Hopkins & Stambaugh***, 892 F.Supp. 11, 13 (D.D.C. 1995)("This Court will not sanction the use of 28 U.S.C. §636(c)(6) as a back-door method of raising the functional equivalent of a 28 U.S.C. §455 motion.  It is fundamentally unfair for a review court to consider a claim of bias before the judge whose impartiality is under attack has been presented with the opportunity to rule on the question."); ***MacNeil***, 735 F.Supp. at 36 (admonishing a party seeking to litigate the issue of a magistrate judge's impartiality under "the guise of a motion to vacate reference" directed to the district court).

Although propounding cases and quotes discussing recusal, Brenner Ford and Everest deny that recusal is sought.  In its Reply, Brenner Ford states, "This is not and never was a motion to disqualify the Magistrate under 28 U.S.C. §455."  Yet, the brief in support of the motion to vacate cited and quoted cases involving disqualification under §455 and the discussion of disclosure of the judge-clerk relationship.  Regardless of the half-hearted denials that this court's impartiality has been called into question, the specter has been raised, and the issue of recusal shall be addressed.

Section 455(a) of the Judicial Code provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. §455(a).  "The goal of section

455(a) is to avoid even the appearance of partiality." ***Liljeberg v. Health Serv. Acquisition Corp.***, 486 U.S. 847, 860, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988).  The Seventh Circuit requires recusal "whenever there is 'a reasonable basis' for finding of an 'appearance of partiality under the facts and circumstances' of the case." ***Pepsico, Inc. v. McMillen***, 764 F.2d 458, 460 (7th Cir. 1985)(*quoting **SCA Servs., Inc. v. Morgan***, 557 F.2d 100, 116 (7th Cir. 1977)).  "Recusal is required when a 'reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits.'" ***In re United States***, 572 F.3d 301, 308 (7th Cir. 2009)(*quoting **In re Mason***, 916 F.2d 384, 385 (7th Cir. 1990)).

To be clear, neither Brenner Ford, Everest, nor this court has located a case in which the appearance of a former law clerk as counsel before the court requires recusal or even disclosure of the former clerkship.  To the contrary, a large number of cases, many recited in McGrath's response brief, state the opposite. *See, e.g.,* ***MMG Financial Corp. v. Midwest Amusement Park LLC***, 2009 WL 3245288, *2 (E.D. Wis. 2009) ("[L]ike most judges, I have no more difficulty disagreeing with former law clerks than I do with the law clerks who work for me now."); ***Olmstead v. CCA of Tennessee, LLC***, 2008 WL 5216018, *1 (S.D. Ind. 2008) ("My practice has been to apply a one-year cooling off period to cases involving former law clerks.  A lifetime disqual-ification, as plaintiffs seem to demand, would be unwarranted."); ***Smith v. Pepsico, Inc.***, 434 F.Supp. 524, 526 (S.D. Fla. 1977)("If

13

a court were to accept the contention that recusal was necessary whenever any counsel had been a prior law clerk to a judge, this would be an unfair penalty placed upon former law clerks of Federal Judges.  In addition, United States judges themselves would suffer an obvious limitation on their recruiting of talented law clerks in the future.").

In furthering the efficient administration of justice, a judge with neither a conflict nor an appearance of impartiality has a duty *not* to recuse.  *See **In re United States***, 572 F.3d at 308 ("Of course, needless recusals exact a significant toll; judges therefore should exercise care in determining whether recusal is necessary, especially when proceedings already are underway."); ***Sexson v. Servaas***, 830 F.Supp. 475, 482 (S.D. Ind. 1993) ("[A] judge's duty not to recuse when confronted with a motion that has little basis in reality, both factual and legal, is as strong as the duty to recuse when his or her impartiality might reasonably be questioned."); ***Handler v. Union Bank and Trust Co. of Greensburg***, 765 F.Supp. 976, 978 (S.D. Ind. 1991) ("[A] judge once having drawn a case should not recuse himself on an unsupported, irrational, or highly tenuous speculation.").

The fact that Paupore served as a law clerk for this court from August 1999 to August 2001 does not require disqualification of this judge.  *See **New York City Housing Development Corp. v. Hart***, 796 F.2d 976, 980 (7th Cir. 1986)("A judge may decide close calls in favor of recusal.  But there must first be a close

call."). Any motion for recusal is DENIED. The sole issue
remaining is the parties' consent.

"[C]onsent is the linchpin of the constitutionality of 28
U.S.C. §636(c)." *Adams v. Heckler*, 794 F.2d 303, 307 (7th Cir.
1986) (*citing* *Geaney v. Carlson*, 776 F.2d 140, 142 (7th Cir.
1985); *Geras v. Lafayette Display Fixtures, Inc.*, 742 F.2d 1037,
1040-41 (7th Cir. 1984)). *Geras*, which involves a constitutional
challenge of the Federal Magistrate Act, explains:

> The fact that magistrates can exercise their
> authority only with the litigants' consent is
> a significant distinction from the nature of
> the authority exercised by the district
> judges. The statute attempts to ensure the
> voluntary character of this consent and spe-
> cifically provides that the district court is
> authorized only to inform the parties of the
> alternative of a reference to a magistrate
> and is then forbidden to persuade or induce
> the parties to accept the reference. In
> addition, litigants retain the option of
> asking the district court, albeit only under
> extraordinary circumstances, to withdraw the
> reference.

742 F.2d at 1040-41

Brenner Ford states as the basis for its motion to vacate
the referral the "lack of voluntariness of the consent to the
magistrate where Brenner Ford was not aware of the prior employ-
ment relationship between the magistrate judge and Plaintiff's
counsel herein." (Reply Brief, p. 4) Brenner Ford fails to cite
any case law to support that the consent was not voluntary.
"Voluntarily" is defined as "[i]ntentionally; without coercion."
*Black's Law Dictionary* 1710 (9th ed. 2009). When counsel "clear-
ly and unequivocally" consents to proceed before the magistrate

15

judge, that consent is binding on the party represented. *See Jurado v. Klein Tools, Inc.*, 755 F.Supp. 368, 370-71 (D. Kan. 1991)("A court in conducting its business must be able to rely consistently on the premise that an attorney's representation to the court is made on behalf of his or her clients."); *Ouimette v. Moran*, 730 F.Supp. 473, 481 (D.R.I. 1990) (denying state Attorney General's motion to vacate reference due to unfamiliarity with straightforward nature of the consent form). *Cf. Wimmer v. Cook*, 774 F.2d 68, 76 (4th Cir. 1985) (refusing to allow implied consent as to pro se plaintiff).

The proper process to obtain the consent of an added party is clearly defined. *See Brook, Weiner, Sered, Kreger & Weinberg v. Coreq, Inc. v. Rankin*, 53 F.3d 851, 852 (7th Cir. 1995) (distinguishing between added parties and successors) ("Parties added to the case after the original litigants have consented have an equal right to the protections of Article III, so unless their consent is procured the case must be returned to a district judge."); *Mark I, Inc. v. Gruber*, 38 F.3d 369, 370 (7th Cir. 1994) (stressing the importance and reliance of courts on the local rules pertaining to consent of added parties)("Unless the latecomer, too, consents, the whole proceeding before the magistrate judge may be set at naught.").

The Seventh Circuit discussed the possibility that coercion is created by the cost and delay of litigation before a district judge, but dismissed the idea that such pressure calls into question the voluntariness of the consent. *Geras*, 742 F.2d at

16

1042. Similarly, the Seventh Circuit addressed consent which was argued "intrinsically coercive" because a magistrate judge scheduled a hearing and, on the day of the hearing, expected the parties to decide whether to consent. *Adams*, 794 F.2d at 307. The plaintiff's argument that his consent was not voluntary failed because he "conceded at oral argument that his consent was not coerced[.]" *Id.* at 306.

Nothing expressed by Brenner Ford demonstrates that the consent to a magistrate judge's jurisdiction was involuntary. No coercion to the consent was mentioned. Although Brenner Ford was added as a third-party defendant long after the original parties consented, the clerk followed the rules, and Brenner Ford filed its informed, voluntary consent. No case law has been presented, nor discovered by the court, to support the contention that a lack of disclosure of a fact which is deemed inconsequential to a judge's impartiality equates with a parties' consent being deemed involuntary.

Brenner Ford asserts that the consent is "tainted by virtue of there being no prior disclosure of the relationship" between the magistrate judge and Paupore, then cites a Seventh Circuit case, *SCA Services, Inc.*, 557 F.2d at 117, involving a judge's mandatory obligation to disqualify himself when *his brother's firm* was practicing before him. Inexplicably, Brenner Ford follows the completely unrelated cite with the conclusion that "[t]hese same fairness and impartiality standards must apply when parties are asked to voluntarily consent to a Magistrate." They

do.  If any of the non-waivable conditions of 28 U.S.C. §455(b) were present, this magistrate judge would have disqualified himself.  Notwithstanding the impressive block quote implying that this court ignored mandatory provisions of law and is eroding the "confidence in the impartiality of federal judges[,]" neither the case nor the statute discussed is applicable to this motion.  The court finds the question of disclosure discussed in *Olmstead*, 2008 WL 5216018 (denying motion to recuse judge from case in which one of the defendant's attorneys served as the court's law clerk), on point:

> If there were anything unusual to disclose in this case, as there was in [the case cited by the plaintiff], where the judge and prosecutor were planning to take a vacation together with their families just after the sentencing, the disclosure and waiver process plaintiffs suggest would have been appropriate, but there is nothing unusual about the circumstances of this case.

> *Olmstead*, 2008 WL 5216018 at *3

Similarly, here there is no duty to disclose a past clerkship which courts have unanimously ruled do not create an appearance of impartiality worthy of recusal.

Brenner Ford and Everest also argue that Paupore's former clerkship, or the lack of knowledge of it, constitutes "extraordinary circumstances" for which the consent should be vacated.  "The parameters of the extraordinary circumstances condition for vacating the reference of a civil matter to a magistrate have yet to be defined."  *Murret v. City of Kenner*, 894 F.2d 693, 695 (5th Cir. 1990).  Although no precise definition for extraordinary

18

circumstances exists, courts have shed light on what circum-
stances fall short. *See **Rivera v. Rivera***, 216 F.R.D. 655, 660
(D. Kan. 2003) (declining to find extraordinary circumstances in
completion of first trial followed by grant of new trial) ("[T]he
court has no difficulty concluding that the consideration articu-
lated by defendant does not constitute extraordinary circum-
stances sufficient to justify vacating the order of consent.
Otherwise, parties would be free to withdraw their consent any-
time it became convenient to do so."); ***Dowell***, 776 F.Supp. at 284
(holding that previous adverse decisions by the magistrate judge
and desire of pro se plaintiff to find counsel were not extraor-
dinary circumstances); ***Lorenz***, 815 F.2d at 1097 (no extraordinary
circumstances in punitive damages claim amended from $150,000 to
$10 million). Most notably, in ***Clay***, the court held that allega-
tions of a magistrate judge's bias are not a proper vehicle for
the "extraordinary circumstances" language of §636(c)(6). 892
F.Supp. at 15. Although "extraordinary circumstances" remain
somewhat undefined, courts are clear that unfounded accusations
of bias and empty charges of impartiality cannot fall within the
definition. *See **Manion v. American Airlines, Inc.***, 251 F.Supp.2d
171, 173 (D.D.C. 2003) (rejecting argument to vacate referral on
basis of alleged bias) ("[D]efendant has relied solely on serious
allegations impugning [the magistrate judge's] impartiality in
support of its motion to vacate the referral. As the case law
. . . makes clear, such allegations neither meet the standard
under [§636 for extraordinary circumstances] for obtaining the

relief sought, nor are they properly before [the district court],
but rather, must be made, if at all, before the judge whose
impartiality is being questioned."); *Frank v. County of Hudson*,
962 F.Supp. 41, 44 (D.N.J. 1997) (insubstantial allegations of
bias based on pretrial decisions by a magistrate judge cannot
demonstrate good cause or the higher standard of extraordinary
circumstances necessary to permit withdraw of consent)("[T]o
vacate a reference on this ground would unfairly permit a party
to shop for an accommodating judge."). *See also O'Neal Brothers
Construction Co., Inc. v. Circle, Inc.*, 1994 WL 658468, *2 (E.D.
La. 1994) (declining to find extraordinary circumstances to
vacate referral based upon dissatisfaction with magistrate
judge's decisions)("The fact that the defendants are not pleased
with the manner in which the Magistrate Judge deems proper to
proceed does not constitute good cause, or extraordinary circum-
stances.").

The appearance of a former law clerk as counsel before the
judge for whom he clerked is not at all extraordinary, and
Brenner Ford's argument to the contrary fails to cite case law to
that effect.  The case cited by the third-party defendants, *Hall
v. Small Business Ass'n*, 695 F.2d 175, 177 (5th Cir. 1983), is
not factually on point.  *Hall* involved a clerk who was *currently
serving her clerkship* and actively handling a class action before
the court in which *she was a member of the plaintiff class* and
had already *accepted a post-clerkship employment offer from the
firm representing the plaintiffs*.  *Id.*  The Fifth Circuit's

discussion about the input of law clerks that Brenner Ford quotes refers to the conflict of interest that a current clerk may have due to future employment. *Id*. at 179. This discussion of disclosure from *Hall* is the sole support for the notion that this court was obligated to disclose the former clerkship, but the facts are not on point. *Hall* in no way supports recusal of a judge when a former law clerk appears before the court long after the clerkship ended and in a case that was not pending during the clerkship. *Hall* cannot support Brenner Ford's argument that the appearance of a former law clerk before this court constitutes extraordinary circumstances.

In its request to join in the Motion to Vacate, Everest argues, "Voluntary consent to a magistrate should be likened to consent to an arbitrator, thereby requiring full disclosure of prior or existing relationships that might create the impression of possible bias prior to voluntary submission to the tribunal." However, arbitration is governed by the United States Arbitration Act, and the jurisdiction and authority of a United States Magistrate is governed by §636(c)(1). All legal arguments and case law asserted in reference to the United States Arbitration Act are inapplicable. A veritable plethora of case law exists construing §636 and consent to a magistrate judge, making the attempts to analogize to the Arbitration Act unnecessary as well as off point.

Everest also cites three cases involving motions for recusal due to the involvement of former law clerks, asserting that

"[t]he mere fact that parties in these cases filed motions for recusal indicates that many litigants consider the fact that an opposing party's attorney is a former clerk of the judge hearing the case to be significant."  (Deft. Joinder in Mtn. To Vacate, p. 3)  *See United States v. Hollister*, 746 F.2d 420, 425 (8th Cir. 1984) (holding that judge's refusal to disqualify himself by reason that prosecutor finished her clerkship with the judge just three months before becoming involved in defendant's prosecution was not reversible error, although one-year recusal period was recommended); *Cheeves v. Southern Clays, Inc.*, 726 F.Supp. 1579, 1580 (M.D. Ga. 1990) (holding that the fact that an associate with counsel for defendant was at one time the court's former law clerk did not require recusal); *Smith v. Pepsico, Inc.*, 434 F.Supp. at 26 (holding that fact that plaintiff's attorney had formerly acted as a law clerk for the court was insufficient basis on which to question court's impartiality and require court to recuse itself in absence of evidence that court had obtained extrajudicial information as a result of any communication with attorney or that court had violated any section of Code of Judicial Conduct).  Everest's use of the word "mere" is the most accurate part of this argument:  one case per decade over a three decade period questioning recusal due to prior clerkships is mere at best.  The fact that all three cases cited on this point by Everest held that the prior law clerk's involvement was not a problem makes the argument completely insubstantial.

Everest claims that it was "entitled to full disclosure" of the fact that plaintiff's counsel had a prior relationship with this court, yet does not, and presumably, considering the court's own research efforts, *cannot* find a case to support this claimed entitlement. Likewise, and contrary to Everest's declarations, the underlying default judgment of over $12 million dollars plus accrued interest does not qualify as special circumstances which require the court to "heighten" its awareness for the appearance of impropriety. *See Lorenz*, 815 F.2d at 1097 (holding that amending punitive damages request in complaint from $150,000 to $10 million is not the type of extraordinary circumstance which would oblige the court to vacate consent to the magistrate judge). Everest's Reply is replete with comments about the ongoing bickering among the parties' counsel. However, Everest has failed to cite a case which holds that unprofessional conduct by counsel requires recusal by the presiding judge.

As for the "difficult situation" which may arise if Paupore is called as a material witness, neither Brenner Ford nor Everest mentioned this as a conflict in their opening briefs, a defect which standing alone is a fatal flaw. The issue arises with a single reference to supporting case law in Everest's Reply. The belated argument relies solely on *United States v. Ferguson*, 550 F.Supp. 1256, 1260 (D.C. N.Y. 1982), to offer a "similar situation" in which "a federal district court disqualified itself in order to avoid even the appearance of impartiality." (Deft. Reply, p. 6) However, *Ferguson* involved a former law clerk's

impending testimony at a suppression hearing before the judge for
which the clerk had served.  550 F.Supp. at 1257.  **Ferguson** is
not analogous, and a quick reference check on the case reveals
that others similarly have attempted to use the case to support
recusal and failed.  In **United States v. Weidner, II**, 2003 WL
21183177 (D. Kan. May 16, 2003), the court faced a recusal motion
leveled at all the judges of a district court based on the
comments that one judge had made in the press.  The defendant
asserted that the judge, Judge Rogers, might therefore be a
witness.  *Id.* at *2.  The court reasoned:

> Defendant['s] reliance on *United States v.*
> *Ferguson* is also misplaced.  There recusal
> was warranted when it became evident that the
> judge's former law clerk might be a witness
> at a suppression hearing.  The public might
> reasonably conclude that the fairness and
> impartiality of the suppression hearing would
> be compromised, because the judge, who is the
> trier of fact at such a hearing, would have
> to evaluate the credibility of a former law
> clerk.  But here, even if Defendant could
> show that Judge Rogers was a likely witness
> at trial, the Court is not sitting as the
> trier of fact at trial, and does not weigh
> the credibility of the witnesses.  That is
> the province of the jury.  In any event,
> there is no showing that Judge Rogers is a
> likely witness; that is rank speculation.

> *Id.* at *5

Here, as in **Weidner, II**, the belief that merely listing
Paupore as a witness will result in his testimony at trial is
shaky.  Add to that uncertainty the reality that the fact-finders
weighing the credibility of Paupore will be jurors, not the
undersigned magistrate judge, and, similar to **Weidner, II**, the

recusal situation of *Ferguson* is not analogous and carries no weight.

To know that counsel for Brenner Ford has "the utmost respect for the magistrate judge hearing this case" is reassuring because both Brenner Ford and Everest will remain in this court.

_____

For the foregoing reasons, the Motion to Vacate Referral to the Magistrate Judge [DE 211] filed by the third-party defendants on October 13, 2009, and adopted by Everest [DE 228] on October 20, 2009, is **DENIED**.

ENTERED this 10th day of December, 2009

                    s/ ANDREW P. RODOVICH
                       United States Magistrate Judge