UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

ROSELAND McGRATH,                )
                                 )
            Plaintiff            )
                                 )
      v.                         )    Case No. 2:07 cv 34
                                 )
EVEREST NATIONAL INSURANCE       )
COMPANY,                         )
                                 )
            Defendant            )

OPINION AND ORDER

This matter is before the court on the Third-Party Defen-
dants' Motion to Reconsider the Court's September 23, 2009 (Doc.
202) Order [DE 213] filed on October 13, 2009, and Defendant
Everest National Insurance Company's Motion to Reconsider the
Court's September 23, 2009 Order (DE 202) and The Court's June
19, 2008 Order (DE 118) or, Alternatively, for Certification of
Appeal and/or Stay Pending State Court Appeal [DE 236] filed on
October 23, 2009.  For the following reasons, both motions to
reconsider are **DENIED**, and the alternative motion for certifica-
tion of appeal and/or stay pending the state court appeal is
**DENIED**.

Background

Because these motions both ask for reconsideration of the
court's prior orders, the backgrounds from DE 118 and DE 202 are
adopted here.

Discussion

Although they are frequently filed, the Court of Appeals has described a motion for reconsideration as "a motion that, strictly speaking, does not exist under the Federal Rules of Civil Procedure." *Hope v. United States*, 43 F.3d 1140, 1142 n.2 (7th Cir. 1994). *See also* *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760 n.1 (7th Cir. 2001). This type of motion "is a request that the [Court] reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004) (internal quotation omitted). *See also* *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008)("A district court may reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it.").

In *Frietsch v. Refco, Inc.*, 56 F.3d 825 (7th Cir. 1995), the Court of Appeals did not question the availability of a motion to reconsider but stated:

> It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless.
>
> 56 F.3d at 828

*See also* ***Oto v. Metropolitan Life Insurance Company,*** 224 F.3d 601, 606 (7th Cir. 2000)("A party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier."); ***Divane v. Krull Electric Company***, 194 F.3d 845, 850 (7th Cir. 1999); ***LB Credit Corporation v. Resolution Trust Corporation***, 49 F.3d 1263, 1267 (7th Cir. 1995). Ultimately, a motion for reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." ***Global View Ltd. Venture Capital v. Great Central Basin Exploration***, 288 F.Supp.2d 482, 483 (S.D.N.Y. 2003)(internal quotation omitted).

Brenner Ford requests this reconsideration based upon the "manifest errors of law and fact" in the prior opinion and order. Although a party may believe that the court has erred, it is not an acceptable legal basis for a court to take a second look at an issue already decided. The arguments raised in the original briefs already have been given careful consideration.

Similarly, Brenner Ford's objection to the court's ruling "before the pleadings were even closed" is irrelevant. Everest filed its Third-Party Complaint on September 8, 2008. [DE 137] On September 25, 2008, appearances were entered for Brenner Ford, and a motion to extend time to answer was filed. [DE 153-156] Brenner Ford responded with a motion to dismiss on October 27, 2008. [DE 166] In the interim between the complaint and the motion to dismiss, McGrath filed her motion for partial summary judgment on September 15, 2008. [DE 145] Federal Rule of Civil

Procedure 56(a) dictates when a party may file a motion for
summary judgment:

> A party claiming relief may move, with or
> without supporting affidavits, for summary
> judgment on all or part of the claim.   The
> motion may be filed at any time after:
>
> (1)   20 days have passed from commencement of
>       the action; or
>
> (2)   the opposing party serves a motion for
>       summary judgment.

Nothing about the timing of the motion for summary judgment or
the court's ruling on it after it was fully briefed was amiss.
Brenner Ford had ample time to address the merits of the motion
for partial summary judgment before it was ruled on in September
2009, but chose not to brief issues that were central to all
aspects of this case.   Considering only the most basic notions of
judicial economy, Brenner Ford's lack of input on the merits of
the motion precludes its input now, as any arguments it may have
considered meritorious should have been raised in a more timely
fashion.

   Brenner Ford mistakenly asserts that the underlying state
court default order is void as a matter of law because McGrath
never served Godshalk with a notice of intent to file a motion
for default.   Indiana Trial Rule 55(B) states:

> In all cases the party entitled to a judgment
> by default shall apply to the court therefore
> . . . .   *If the party against whom judgment
> by default is sought has appeared in the
> action*, he (or, if appearing by a representa-
> tive, his representative) shall be served
> with written notice of the application for
> judgment at least three [3] days prior to the

hearing on such application. . . . (emphasis
                    added).

Godshalk was not the attorney of record, and the fact that he is
an attorney by profession is inconsequential.  Eli's Pub was
served with the Complaint and had notice of the lawsuit pending
against it, yet did not answer, respond, or enter an appearance.
There was no attorney of record, neither Godshalk nor Kolodziej,
to serve with written notice of the application for entry of
default.  The argument is meritless.

        Furthermore, the select quotes chosen by Brenner Ford in its
brief are misleading and inapplicable.  The Indiana Supreme Court
"warning" quoted by Brenner Ford from **Smith v. Johnston**, 711
N.E.2d 1259, 1263 (Ind. 1999), specifically refers to giving
notice of a motion for default to *attorneys of record*.  "A de-
fault judgment is appropriate only where a party has not appeared
in person or by counsel and, if there is a lawyer known to repre-
sent the opposing party in the matter, counsel had made reason-
able effort to contact that lawyer."  **Smith**, 711 N.E.2d at 1264.
Kolodziej purposefully did not disclose his client to McGrath in
the hopes that the statute of limitations would run before the
proper legal entity was named,[1] and Brenner Ford cannot demand
notice of the motion for default when it intentionally failed to
enter an appearance.  *See, e.g.,* **Shane v. Home Depot, Inc.**, 869
N.E.2d 1232, 1236 (Ind. App. 2007)(finding that the defendant did

_____

        [1]*Citing* **Outback Steakhouse v. Markley**, 856 N.E.2d 65, 77 (Ind. 2006),
Brenner Ford now accuses Wruck with a "gaming view" of litigation.  Query:
what was Kolodziej's strategy?

                                    5

not "drag its feet" in responding to the lawsuit); *Delphi Corp. v. Orlik*, 831 N.E.2d 265, 269 (Ind. App. 2005) (upholding trial court's refusal to set aside default judgment where plaintiff "had no way of knowing that [the defendant] had retained [an attorney] to represent it in this matter"); *City of Vincennes v. Pethtel*, 773 N.E.2d 829, 832 (Ind. App. 2002) (distinguishing *Smith* because it involved a medical malpractice case that had gone to a medical review panel, and, therefore, the plaintiff knew from the panel level the representation of the party); *Thayer v. Gohil*, 740 N.E.2d 1266, 1270 (Ind. App. 2001) (distinguishing *Smith* and affirming denial of a motion to set aside a summary judgment order based on counsel's neglect); *Integrated Home Technologies, Inc. v. Draper*, 724 N.E.2d 641, 642 (Ind. App. 2000)(reversing trial court's grant of motion to set aside default judgment and distinguishing *Smith* because the defendant admitted that the plaintiff had no knowledge of its representation by counsel); *Flying J, Inc. v. Jeter*, 720 N.E.2d 1247, 1250 (Ind. App. 1999)(finding the failure to file an answer a misunderstanding between the insured and the insurance adjuster rather than the result of "foot dragging"). In stark contrast, Brenner Ford engaged in purposeful foot dragging before entry of default by refusal to appear and answer, and after, by refusal to answer correspondence from McGrath inquiring about which party Brenner

Ford was representing, all in the hopes of running the statute of imitations.[2]

Proceeding to the next argument, Brenner Ford insists that the correction of the misnamed defendant after the default was entered makes the default void as a matter of law.  Indiana Trial Rule 21(A) instructs, "Incorrect names and misnomers may be corrected by amendment under Rule 15 at any time."  Indiana Trial Rule 15(C), concerning the relation back of amendments, states:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.  An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within one hundred and twenty (120) days of commencement of the action, the party to be brought in by amendment:
>
> (1) Has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and
>
> (2) Knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him.

---

[2]Brenner Ford's Reply further rebukes the lack of notice and opportunity to be heard, all the while failing to understand that by receiving notice of the complaint and refusing to enter an appearance for strategic purposes, it cannot complain about lack of notice when the plaintiff moved for entry of default.  The court rejects the argument that McGrath should have divined the identity of counsel for the insureds when that counsel purposefully refused to disclose his representation.

These rules are simple and clear, and nothing was improper about McGrath's counsel investigating, then correcting, the defendant's name less than two months after the suit was commenced.

Considering Brenner Ford's repeated accusations of improper conduct by McGrath, there is a basic notion concerning the nunc pro tunc entry correcting the misnomer that bears noting. Indiana law requires businesses operating under a pseudonym or alias to register that name with the state and county:

> (a) Except as otherwise provided in section 2 [IC 23-15-1-2] [which is inapplicable here] of this chapter:
>
> * * *
>
> > (6) A limited liability company conducting business in Indiana under a name, designation, or title other than the name of the limited liability company as shown by its articles or organization;
>
> > * * *
>
> shall file for record, in the office of the recorder of each county in which a place of business or an office of the . . . limited liability company . . . is situated, a certificate stating the assumed name to be used, and, . . . in the case of a limited liability company, . . . the full name and the address of the . . . limited liability company's . . . Principal office in Indiana.
>
> (b) The recorder shall keep a record of the certificates filed under this section and shall keep an index of the certificates showing, in alphabetical order, the names of the . . . limited liability companies . . . and the assumed names which they intend to use in carrying on their businesses as shown by the certificates.
>
> * * *

(e) A corporation, limited liability company,
            or limited partnership subject to this chap-
            ter shall, in addition to filing the certifi-
            cate provided for in subsection (a), file
            with the secretary of state a copy of each
            certificate.

                              * * *

     The purpose of IC 23-15-1-1 is to protect the public against
fraud by preventing business entities from concealing their
identities. *See **Rerick v. Ireland***, 131 N.E. 527, 528 (Ind. App.
1921) (referring to IC 23-15-1-1's precursor) ("The statute
clearly contemplates the inhibition of conducting a business
under an assumed name, and is manifestly intended to protect the
public against imposition and fraud, by preventing responsible
partners from concealing their identity.").

     Brenner Ford complains about how McGrath's counsel amended
the complaint after discovering the correct legal entity respon-
sible for the premises where the injury occurred, yet it appears
that the insureds' identities were a mystery because of noncom-
pliance with the law of the state.  It is fundamentally unfair
and also an unlawful business practice to hide behind a pseudonym
so that an injured party will not be able to name the legally
responsible entity until after the statute of limitations has
passed.  Though it is not the place of this court to review the
nunc pro tunc naming of the insureds as the proper party, the
state court's reasoning for the name change dating back to the
original complaint appears reasonable considering the facts.

Brenner Ford's portrayal of this straightforward correction of a misnomer based on the name on the sign hanging over the pub's door, by citing and quoting ***Outback Steakhouse***, 856 N.E.2d at 77, is questionable. ***Outback Steakhouse*** criticized the "gaming view" of an attorney who committed discovery violations by failing to disclose a witness' status, thus committing "fraud on the court." Labeling McGrath's discovery of the proper name of the defendant as "a gaming view of the litigation process" and "a trap" is misplaced when the facts reveal a plan to hide behind a pseudonym in the hopes that the statute of limitations would run out. McGrath neither set "a trap" nor perpetrated any form of fraud, but rather directly asked Kolodziej to identify his connection to the case. *Cf.* ***McGee v. Reynolds***, 618 N.E.2d 40, 41 (Ind. App. 1993)(affirming grant of motion to set aside default based on plaintiff's counsel intentionally ignoring inquiry from defendant's insurer where insurer was unaware of the filing of the lawsuit and the plaintiff intentionally concealed such infor-mation from the insurer before moving for default). To the contrary, Brenner Ford's strategy – the oft quoted "misguided strategy" per this court's previous Order – was the cause of the subsequent problems.[3]

---

[3]Based on the basic rules of civil practice expounded above, including the public policy underlying the need for business entities to register with the state and county, it is impossible to describe the legal strategy implemented by Brenner Ford in the underlying case in a positive way. Hiding the name of the underlying legally responsible entity was contrary to law. Refusing to answer a complaint resulted in a default. Failing to enter an appearance or disclose representation to the plaintiff after inquiry gave the plaintiff no one to inform of the motion for default. "Misguided" was the kindest word applicable.

The court has discussed the merits of the preceding arguments in an effort to clarify the law applicable to the state court matter, but McGrath asserts that it is not for a federal court to address the state court rulings based on the ***Rooker-Feldman*** doctrine. *See **District of Columbia Court of Appeals v. Feldman***, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); ***Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers***, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); ***Rooker v. Fidelity Trust Co.***, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)(evolving the doctrine). Under the ***Rooker-Feldman*** doctrine, no federal court may hear a collateral attack on a state court judgment, save for the U.S. Supreme Court granting review from the highest appellate court in a state when it has decided an issue of federal law. As McGrath argues, the Seventh Circuit has held:

> [The ***Rooker-Feldman*** doctrine] "precludes lower federal court jurisdiction over claims seeking review of state court judgments . . . no matter how erroneous or unconstitutional the state court judgment may be." ***Brokaw v. Weaver***, 305 F.3d 660, 664 (7th Cir. 2002) (*citing **Remer v. Burlington Area Sch. Dist.***, 205 F.3d 990, 996 (7th Cir. 2000)). The doctrine applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with state court determinations. ***Feldman***, 460 U.S. at 482 n.16.
>
> ***Kelley v. Med-1 Solutions, LLC***, 548 F.3d 600, 603 (7th Cir. 2008)

But McGrath ends this quote too soon – both the following sentence and paragraph of the ***Kelley*** opinion reveal that ***Rooker-***

*Feldman* is narrowly applied and its scope does not include the case at hand:

> A state litigant seeking review of a state court judgment must follow the appellate process through the state court system and then directly to the United States Supreme Court.
>
> The Supreme Court recently revisited the doctrine in *Exxon Mobil Corp. v. Saudi Basic Industries*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). The doctrine previously had been applied expansively. In *Exxon Mobil*, the Court explicitly limited the doctrine. The *Rooker-Feldman* doctrine now is a narrow doctrine, confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. The doctrine will not prevent a losing litigant from presenting an independent claim to a district court. (internal quotations and their citations omitted).
>
> *Kelley*, 548 F.3d at 603

The Supreme Court cases since *Feldman* have tended to emphasize the narrowness of the *Rooker-Feldman* rule. *Lance v. Dennis*, 546 U.S. 459, 464, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006). *See also Johnson v. De Grandy*, 512 U.S. 997, 1005-06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994)(*Rooker-Feldman* does not bar actions by a nonparty to the earlier state suit).

Although all of Brenner Ford's current arguments were considered and rejected in the state court, Brenner Ford was not a party to the state court case. The *Rooker-Feldman* doctrine does not apply because the state court "loser" did not run to federal court in an attempt to invite district court review and

reversal of the state court judgment.  The doctrine does not prevent this court from having subject matter jurisdiction.

Nevertheless, preclusion principles do apply regarding this court's treatment of the judgment in the state court.  *See, e.g., Exxon Mobil*, 544 U.S. at 293 (analyzing the case under preclusion law following the determination that *Rooker-Feldman* does not apply); *Kelley*, 548 F.3d at 607 ("We affirm . . . because the *Rooker-Feldman* doctrine applies and there is no subject matter jurisdiction in this case.  Therefore, we need not address the defendants' arguments related to res judicata and collateral estoppel.").

Collateral estoppel, or issue preclusion, limits the litigation of issues that have been decided between parties in a prior action, and it applies only when the same issue is involved in the second proceeding and the determination of that question is "essential" to the prior judgment.  *King v. Burlington Northern & Santa Fe Ry. Co.*, 538 F.3d 814, 818 (7th Cir. 2008).  The Supreme Court recently reiterated the requirements for issue preclusion, noting that "[i]ssue preclusion . . . bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, ___ U.S. ___, 128 S.Ct. 2161, 2171, 171 L.Ed.2d 155 (2008).

Under Indiana law, when a party argues that the claim pre-clusion component of res judicata applies, four factors must be

present, namely: (1) the former judgment must have been rend-
ered by a court of competent jurisdiction; (2) the former judg-
ment must have been rendered on the merits; (3) the matter now in
issue was, or could have been, determined in the prior action;
and (4) the controversy adjudicated in the former action must
have been between parties to the present suit or their privies.
*In re L.B.*, 889 N.E.2d 326, 333 (Ind. App. 2008). Indiana's
application of issue preclusion differs from the basic federal
requirements in that it affects not just parties, but their
privies. *See **United States v. Clark County, Indiana***, 234
F.Supp.2d 934, 937 (S.D. Ind. 2002) (applying Indiana law to
preclusion issues).

All four of these prerequisites are fulfilled in this
matter. Despite Brenner Ford's insistence that suing the defen-
dant as "Eli's Pub" voids the state court judgment or somehow
calls into question the jurisdiction of the state court, the
first requirement is satisfied as explained above. Secondly,
state court rulings on the merits, including a default judgment,
are res judicata. ***Eichenberger v. Eichenberger***, 743 N.E.2d 370,
374 (Ind. App. 2001) ("A default judgment is a judgment on the
merits for the purpose of res judicata."). *See also **Whitaker v.
Ameritech Corp.***, 129 F.3d 952, 957 (7th Cir. 1998)("The fact that
Whitaker failed to defend her case does not alter this analysis
because a default judgment in Illinois is a judgment on the
merits and has the same preclusive effect as a judgment resulting
from arduous litigation."). Thirdly, the issue of the default

and the change of name were addressed by the state court.  These
issues were litigated to the extent that they were argued to and
denied by two different judges.  The determination of these
issues was considered repeatedly and unquestionably essential to
the entry of final judgment, fully satisfying the third require-
ment.

Finally, the party against whom estoppel is invoked, Brenner
Ford, although not a party to the underlying state court case,
was in privity with Eli's Pub and its legally responsible LLC in
the first action.  "The term 'privity' describes the relationship
between persons who are parties to an action and those who are
not parties to an action but whose interests in the action are
such that they may nevertheless be bound by the judgment in that
action."  *Small v. Centocor, Inc.*, 731 N.E.2d 22, 27-28 (Ind.
App. 2000).  The term includes those who control an action,
though not a party to it, and those whose interests are repre-
sented by a party to the action.  *Id.* at 28.  *See also* *Marsh v.
Paternity of Rodgers by Rodgers*, 659 N.E.2d 171, 173 (Ind. App.
1995)(stating same).  Both Everest, as the insurer, and Brenner
Ford, as counsel, were in a position and, indeed, controlled the
action for the defendant pub.  *See* *Progressive Cas. Ins. Co. v.
Morris*, 603 N.E.2d 1380, 1382-83 (Ind. App. 1992)("Collateral
estoppel applies to insurance contracts and an insurer is ordi-
narily bound by the results of litigation to which its insured is
a party, as long as the insurer had notice and an opportunity to
control the prior proceedings.").  *See also* *Keybank Nat. Ass'n v.*

15

***Shipley***, 846 N.E.2d 290, 300 (Ind. App. 2006)(discussing and affirming the "citadel of privity" between an attorney and his client and the vigorous representation of the client required by the duty of loyalty).  Based on these collateral estoppel principles and the full faith and credit this court accords the Indiana state court's findings, this court will not attempt to alter the decisions made in state court regarding the default and the correction of any misnomer[4].

The first argument presented by Brenner Ford which is actually a disagreement with this court's decision rather than an attack of the state court findings is that the court was mistaken in referring the insureds' entry into the stipulation with McGrath as mitigation of damages.  However, in making this argument, Brenner Ford cites no case law concerning mitigation, but rather chooses again to argue the merits of the potential relief in state court under the pending Rule 60(B) motion in an effort to assert that there were no "damages" to mitigate.  This argument is contrary to all law on the issue, and the court cannot locate a breach of contract case where the nonbreaching party's duty to mitigate does not arise until *after* a court has determined the breach.  *See **Albert Johann & Sons Co. v. Echols***, 238 N.E.2d 685, 689 (Ind. App. 1968)("[W]here one person holds a contract to perform services for another and the other party wrongfully discharges the employee, then, while said employee may

_____

[4]Brenner Ford repeatedly has argued that Eli's Pub was not a legal entity.  However, it was an ongoing business and enough of a legal entity to be a named insured in the Everest policy.

have a cause of action for damages resulting from the wrongful
discharge, he may not sit idly by, but must make a reasonable
effort to secure other work and any income from such work may be
offset against the damages sought.").

By failing to enter an appearance and file an answer to the
complaint, the court has ruled that Everest's contractual duty to
defend was breached.  This court noted in the prior opinion that
the *unrefuted* amount of damages put into evidence before the
state court following the entry of default on liability and the
hearings on damages, as well as following several denials of
motions for relief from default, was over $3 million dollars
higher than the amount that the insureds stipulated to in the
agreement.  Simply put, the insureds made the amount "less severe
or intense."  *Black's Law Dictionary* 1093 (9th ed. 2009).  If
Brenner Ford has legal precedent that states otherwise, it has
missed the opportunity to present it.  As for any suggestion that
mitigation was not an appropriate subject for the court to
address in its grant of summary judgment on the contract claim,
the court points out that Everest's Answer to the Second Amended
Complaint, in its legal defenses, states, "Plaintiff [suing under
the assigned claims of the insureds] is at fault in causing and
in contributing to cause Plaintiff claimed injuries and damages,
if any." (Everest Ans., p. 96)  Although not couched in terms of
mitigation, the implication is the same, and it was appropriate
for the court to address the defense raised by pointing out that

the insureds decreased the amount of damages that were pending undisputed before the state court.

Brenner Ford's final argument, one that is echoed by Everest, is that this court erred in finding legal malpractice without expert testimony. Citing *American International Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996) and *Hacker v. Holland*, 570 N.E.2d 951, 953 (Ind. App. 1991), Brenner Ford argues that "with regard to the question of whether the defendant attorney exercised due care in his representation of the client in the underlying matter, Indiana law requires expert opinion testimony to prove this element." (Brenner Ford Brief in Support, p. 17) This contention is a correct, but incomplete, statement of the law. *See Oxley v. Lenn*, 819 N.E.2d 851, 857 (Ind. App. 2004) ("[E]xpert testimony is usually required in a legal malpractice action to establish the standard of care by which the defendant attorney's conduct is measured."). "The only exception to the rule is when the question is within the common knowledge of the community as a whole or when an attorney's negligence is so grossly apparent that a layperson would have no difficulty in appraising it." *Storey v. Leonas*, 904 N.E.2d 229, 238 (Ind. App. 2009).

No reasonable person would dispute that Brenner Ford's failure to appear as a representative for its client and failure to file an answer to a complaint was malpractice. The actions taken (or *not* taken) in the underlying case, where the insurer and the attorneys had actual notice of the complaint, yet failed

18

to answer under the erroneous belief  that the law would support
their attempts to hide behind an assumed name, need no expert
testimony to deduce that the lawyers failed in the most basic of
duties.  *See **American International Adjustment Co.**, 86 F.3d at
1466 ("A lawyer does not buy immunity from a malpractice suit by
hiring an expert to call his pratfalls 'strategic.'").

Brenner Ford also misunderstands the federal court's role
regarding the underlying state court final judgment and any
pending appeal of that judgment, and it fails to comprehend that
any discussion by this court of the unlikelihood of the state
court judgment being reversed on appeal was strictly academic.
The court included in the prior order, and again in this order,
discussions on the merits in an effort to point out the futility
of Everest's and Brenner Ford's arguments.

Brenner Ford also is mistaken in the contention that this
court's ruling on a summary judgment motion was somehow "prema-
ture."  Brenner Ford was made a party to this case on September
8, 2008, and responded to the Third-Party Complaint with a motion
to dismiss on October 27, 2008.  Brenner Ford was free to respond
to any of the motions pending on the docket.  If Brenner Ford
truly believed that the summary judgment motion was premature, it
could have requested relief under Federal Rule of Civil Procedure
56(f).

Likewise, Brenner Ford has not been "prevented" from con-
ducting discovery.  In fact, Brenner Ford's refusal to partici-
pate in the discovery process is the subject of its Motion to

Quash Subpoena [DE 96] filed on March 4, 2008, the Amended Motion
to Quash Subpoena [DE 97] filed March 7, 2008, the Plaintiff's
Motion to Compel Production Responsive to March 4, 2008 Subpoena
[DE 107] filed on March 25, 2008, as well as the more recent
Amended Motion for Protective Order and Request for Rule 16
Scheduling Conference [DE 251] filed by Brenner Ford on November
5, 2009, and the Emergency Motion to Stay Discovery Pending a
Ruling on Brenner Ford's Amended Motion for Protective Order and
Request for Rule 16 Scheduling Conference [DE 251] filed on
November 9, 2009.  The dismay at a lack of an opportunity to
conduct discovery rings hollow when the docket reflects no
requests for discovery from Brenner Ford – only repeated demands
for protection from McGrath's discovery requests.[5]  Brenner Ford
wants to restart the entire case with a Rule 26 conference at a
point when the court is readying this matter for trial.  The
discovery disputes will be addressed in subsequent orders on
those specific motions filed, but Brenner Ford's failure to
request discovery for over a year is not grounds for reconsidera-
tion of the grant of partial summary judgment.  Therefore, the
motion to reconsider is **DENIED**.

As a final note to Brenner Ford's motion and its briefing,
this court's Order of November 13, 2009, has alerted the parties
that it will not tolerate any further accusations among the
various counsel that are unsubstantiated and unprofessional name-

---

[5]Brenner Ford's motion for protective order screams at the court in bold
all-caps the lack of case management deadlines, yet at no time in the past 14
months has Brenner Ford requested that any discovery deadline be extended.

calling.  Despite this warning, Brenner Ford's counsel has made
baseless accusations of misconduct against Wruck.  In Brenner
Ford's Reply filed on November 24, 2009, the argument opens with
a sentence that is pure fallacy, while quoting in a footnote an
out-of-context excerpt from McGrath's counsel's affidavit: "Since
at least April 26, 2005, Defendant [referring to Eli's Pub] has
been represented by counsel with respect to this incident."
(Brenner Ford Reply, p. 2, fn. 3)(*quoting* a November 20, 2006
affidavit of Don Wruck).  At the time of this affidavit, Wruck
had corresponded with Godshalk about the injury at the pub.
Godshalk had portrayed himself before the filing of the state
lawsuit as counsel for Eli's Pub without revealing that he was
the sole member of the LLC which owned the premises and ran the
bar.  It is notable that, based on this knowledge, Godshalk *was*
served with the complaint and had notice of the action.  Unbe-
knownst to Wruck, Godshalk had informed his insurer, Everest, of
the suit, who in turn retained Brenner Ford to represent God-
shalk's LLCs' interests in the matter.  In fact, Godshalk never
entered an appearance in state court.  Counsel for Brenner Ford
*knows* this, yet footnotes this quote as support for the charge
that McGrath "secured a void default order, without notice to
known counsel for the Defendant[.]"  Such an inaccurate and
baseless accusation of unprofessional conduct by Wruck is *exactly*
what this court specifically warned the parties to cease, yet
Brenner Ford defied the court order just 11 days later.  There-
fore, as to the unprofessional accusations made against McGrath's

counsel in its Reply brief, Brenner Ford's counsel is **ORDERED TO SHOW CAUSE** why it should not be sanctioned for disregard of the court's November 13, 2009 Order.

Additionally, McGrath repeatedly has complained about the delays caused by the defendants in this matter, and the court has wrestled with an immense amount of evidence and briefing in an effort to thoroughly discern the facts. This time spent was not in vain, and any further factual misrepresentations will result in sanctions. To be clear: this includes spurious cites to cases stating that they represent something that they do not. To give an example other than those already discussed above, Brenner Ford's repeated reliance on *Rich v. Fidelity Trust Company of Indiana*, 207 N.E.2d 850 (Ind. App. 1965), as an example of the prohibition against suing a non-existent entity, is less than candid. The case involves a suit against a reorganization trust which had been terminated and therefore no longer existed. *Id.* at 858. This case in no way parallels the situation where a business entity invites the public to enter under a sign with a name on it, yet hides the identity of the legally responsible corporation that owns it so that it cannot be party to a lawsuit. Surprisingly, Brenner Ford includes as exhibits with its Reply the filings of the required documentation for an assumed business name with both the Secretary of State and Lake County, Indiana, dated March 7, 2007, and March 2, 2007, respectively. These belated submissions only confirm what the court and McGrath have been asserting all along: had these required documents been filed

22

before, McGrath would have identified the underlying LLCs upon
initial investigation.  It is contrary to public policy for a
corporation or other business entity to hide behind an assumed
name.  There is absolutely no correlation between a lawsuit
against a non-existent, dissolved trust and a lawsuit against an
existing business entity "doing business as" a local pub under an
assumed name.  The court will not tolerate any further contrived,
exaggerated, or misleading quotes or citations from any of the
parties' counsel.

Everest's Motion for Reconsideration lists ten ways that the
court has erred in both the order on partial summary judgment and
the earlier finding that there were multiple occurrences under
the policy.  Everest boils its arguments down to six basic points
of contention, less one for the assertion that expert testimony
is required to find legal malpractice, which the court has
addressed above.  Before addressing these arguments, the court
reminds Everest that despite the fact counsel for the insurer has
changed mid-litigation, no new arguments may be presented now
which were not presented in the original briefs on summary judg-
ment.  The presentation of legal arguments in a motion to recon-
sider which either were or could have been raised in prior brief-
ing are waived and shall be disregarded.  *See* **Frietch**, 56 F.3d at
828 (discussing standard to be applied on a motion to recon-
sider).  As Everest states in the introduction to its Reply, it
"did not submit new evidence for consideration" but "[r]ather []
concisely identified the errors of law contained within the

Order[s]." Because Everest fully briefed the underlying issues before and fully admits that it simply disagrees with the court's analysis, the court is not required to rehash arguments that already were addressed and decided.

First, Everest asserts that regardless of whether contract theory or tort theory is at issue, Indiana law does not support vicarious liability for Everest. The court disagrees and already has thoroughly explained why that is so. Everest had a contractual duty to defend, and Everest failed to defend the insureds. The argument that the breach was "based solely on the conduct of Brenner Ford" is meritless: Everest had a contractual duty to the insureds and breached that duty. Contractually speaking, it does not matter how the contract was breached by Everest. The Opinion and Order granted summary judgment on the contract claims and denied all claims sounding of legal malpractice in a vicarious liability capacity. The court is unsure of what Everest would like reconsidered in this regard: although the court discussed the applicability of vicarious liability, Everest won on the vicarious liability tort issue when the court denied that portion of McGrath's motion, and no claims sounding in vicarious liability for Brenner Ford's negligence survive. Although the court explored every aspect that had been argued in the original brief-ing, the court held that because Indiana law forbids the assign-ment of legal malpractice claims, all such claims were dismissed. There is no further need to discuss vicarious liability in tort

for the actions of Brenner Ford and certainly no need to certify any question in this regard to the Indiana Supreme Court.

Second, Everest disagrees with the court's finding that it is now estopped from litigating liability, damages, and coverage. The above discussion concerning collateral estoppel under Indiana law prevents Everest from challenging the issues already decided in state court. Everest was in privity with the insureds in the underlying litigation. All elements of issue preclusion apply, and Everest is bound by the state court judgments on liability and damages. As to an insurer challenging coverage for the amount of the state court judgment, the court stands by the Opinion and Order's analysis of cases discussing the ability of insurers to attack the underlying state court judgments, which fit logically into Indiana's requirements for collateral estoppel. Because Everest assumed its duty to defend and Everest repeatedly warned the insureds that it was in charge of the state court defense of the claims, Everest cannot now claim that it was not a party in control of that defense. No matter how often Everest points out that the analogous case law all involves insurers who *refused to defend their insureds* which Everest insists it did not do, the court sees Everest's breach of the duty to defend as equivalent, if not worse.

Third, Everest revisits this court's Opinion and Order of June 19, 2008, finding that there were multiple "occurrences" for the underlying injury of McGrath. Again, no new arguments have

25

been made, and the court will not rehash the old ones for the
newly retained attorneys.

Fourth, Everest denies that consequential damages for breach
of contract are available and that the final judgment of the
state court claim equates with such consequential damages. The
court found that leaving the insureds undefended in state court
and refusing to discuss settlement within the policy limits
created the foreseeable consequence of the insureds settling with
McGrath. The case law clearly holds that where insurers refuse
to defend, they are bound by the final judgment as the conse-
quence of that refusal, which is analogous to the failure to
defend by Everest.[6]

Fifth, Everest disputes that the insureds mitigated damages
as a matter of law, relying on the pending motion to vacate the
default judgment at the time of the stipulation between McGrath
and the insureds. As explained above, the breach of contract
already had occurred, and the state court already had denied
several motions to vacate the default judgment at the time of the
stipulation.

Finally, Everest asks the court to certify its Order grant-
ing partial summary judgment for appeal, or in the alternative,
to stay this case pending the outcome of the appeal in the under-

---

[6]Everest repeatedly tells the court of the lack of case law available
for a situation such as this as though the court unjustly stretched the avail-
able law. The likely reason for the dearth of cases where an insurer has
breached the duty to defend in a similar way is that such egregious practice
is exceedingly rare. The cases cited to support consequential damages all
involve refusals to defend, which is the usual practice, rather than promising
to defend, then abandoning the insureds as Everest did here.

lying state court case. Federal Rule of Civil Procedure 54(b) states:

> When an action presents more than one claim
> for relief – whether as a claim, counter-
> claim, crossclaim, or third-party claim – or
> when multiple parties are involved, the court
> may direct entry of a final judgment as to
> one or more, but fewer than all, claims or
> parties only if the court expressly deter-
> mines that there is no just reason for delay.
> Otherwise, any order or other decision, how-
> ever designated, that adjudicates fewer than
> all the claims or the rights and liabilities
> of fewer than all the parties does not end
> the action as to any of the claims or parties
> and may be revised at any time before the
> entry of a judgment adjudicating all the
> claims and all the parties' rights and lia-
> bilities.

"Although Rule 54(b) certification is to a large extent discre-

tionary with the district court, the 'final judgment' requirement

of 28 U.S.C. §1291 and Rule 54 itself together permit orders to

be certified thereunder only if they meet two minimal, nondiscre-

tionary criteria." ***Local P-171, Amalgamated Meat Cutters and***

***Butcher Workmen of North America v. Thompson Farms Co.***, 642 F.2d

1065, 1069 (7th Cir. 1981). First, the district court action as

a whole must contain multiple claims for relief, and second, the

order certified must decide finally and completely at least one

of those discrete claims. *Id.* Appellate courts "rely on the

sound discretion of district judges to make the determination [as

to 'separate' claims] on a case by case basis." *Id.* at 1070.

Once a district court has disposed of a separate claim with a

final judgment entered on that claim, the district court still

must "expressly determine that there is no just reason for delay"

and make an "express direction for the entry of judgment" under Rule 54(b). *Id.* at 1071. This discretionary component "serves both to give the district court virtually unreviewable discretion to refuse certification and to limit its power to grant certification by requiring it to weigh the virtues of accelerated judgment against the possible drawbacks of piecemeal review." *Id.* at 1071-72 (internal citations omitted).

Everest is correct in asserting that this matter contains multiple claims for relief and that the grant of summary judgment on the breach of contract claim decides finally and completely one of those discrete claims. However, after more than two years of shepherding this matter towards finality, this court does not find that the benefits of an accelerated appeal of the contract claim could outweigh the drawbacks of piecemeal review of this matter at this time. Although there remains pending a motion to sever the third-party claims from the original claims between McGrath and Everest, at this time the interrelationship of all the parties appears critical to progress in this matter, whether that progress be settlement or jury trial. In its discretion, the court **DENIES WITHOUT PREJUDICE** the motion for certification under Rule 54(b).

Everest also requests certification for appeal under 28 U.S.C. §1292(b), which provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial

> ground for difference of opinion and that an
> immediate appeal from the order may materi-
> ally advance the ultimate termination of the
> litigation, he shall so state in writing in
> such order.  The Court of Appeals which would
> have jurisdiction of an appeal of such action
> may thereupon, in its discretion, permit an
> appeal to be taken from such order, if appli-
> cation is made to it within ten days after
> the entry of the order: *Provided, however,*
> That application for an appeal hereunder
> shall not stay proceedings in the district
> court unless the district judge or the Court
> of Appeals or a judge thereof shall so order.

"The filing of a proper petition for permission to appeal within ten days is a jurisdictional prerequisite for invocation of 28 U.S.C. §1292(b)." ***Local P-171,*** 642 F.2d at 1068 (rejecting un-timely request for appeal under §1292(b) and considering request only under Rule 54(b)).  Here, the court's order was entered on September 23, 2009, and Everest's request for appeal under 28 U.S.C. §1292 was filed on October 23, 2009.  Because the motion was not made within ten days, it was untimely and is **DENIED**.

Finally, Everest asks the court to stay this matter pending the underlying state court appeal.  The reasoning asserted is inaccurate as a matter of fact and as a matter of law.  Factually speaking, the pending appeal simply is *not* an appeal of the underlying state court matter, but an appeal of Everest's failed attempt to belatedly intervene as a third party in the state court matter.  It is *not* an appeal of the motion to vacate the default judgment, which, as the court explained in its Opinion and Order of September 23, 2009, is rarely reversed.  It is another step removed from any possible reversal of the final

judgment of the underlying state court matter.  Everest is
appealing "[w]hether the trial court erred in denying Proposed
Intervenor Everest National Insurance Company's (Everest) Motion
for Extension of Time to File Notice of Appeal and whether the
trial court erred in denying Everest's Motion to Intervene."
(Form #App.R. 15-1. Appellant's Case Summary filed by Everest on
August 5, 2009).  Characterizing this simply as an appeal of the
state court judgment is specious and accords the same warning
shot given to Brenner Ford for twisting the facts presented to
this court.

As a matter of law, Everest is mistaken by presuming federal
courts are not bound by doctrines of res judicata regarding any
final judgment of a state court until the matter has exhausted
all appeals.  This is incorrect.  A final judgment for res judi-
cata purposes and for application of abstention doctrines is a
valid, final judgment on the merits at the trial court level, not
the result following an eventual exhaustion of appeals.  *See*
Indiana Rules of Appellate Procedure, Rule 2(H) (defining final
judgment); ***Pond v. McNellis***, 845 N.E.2d 1043, 1054 (Ind. App.
2006)(discussing Indiana courts' definition of a final judgment
and describing such as an appealable judgment)("Final judgments
dispose the subject matter of the litigation as to the parties so
far as the court in which the action is pending has the power to
dispose of it.").  *See also* ***Starzenski v. City of Elkhart***, 87
F.3d 872, 878 (7th Cir. 1996)("Abstention . . . exists to avoid
duplicative litigation; in [this] case, the state court had

already rendered a final judgment. . . . Indiana law provides that judgment of the Superior Court is entitled to final and preclusive effect. Because the state court had already rendered a decision, there was no reason for the district court to stay proceedings pending a final outcome."). Because the trial court has rendered a final judgment in the underlying matter, there is no basis for this court to stay the federal action here and the request for a stay is **DENIED**.

_____

For the foregoing reasons, the Third-Party Defendants' Motion to Reconsider the Court's September 23, 2009 (Doc. 202) Order [DE 213] filed on October 13, 2009, and Defendant Everest National Insurance Company's Motion to Reconsider the Court's September 23, 2009 Order (DE 202) and The Court's June 19, 2008 Order (DE 118) or, Alternatively, for Certification of Appeal and/or Stay Pending State Court Appeal [DE 236] filed on October 23, 2009, are both **DENIED** in all respects. In addition, counsel for Brenner Ford is **ORDERED TO SHOW CAUSE** why it should not be sanctioned for disregarding the court's November 13, 2009 Order by the criticism of McGrath's counsel in its Reply brief filed on November 24, 2009.

**ENTERED** this 15th day of January, 2010

s/ ANDREW P. RODOVICH
United States Magistrate Judge