UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

ROSELAND McGRATH,                    )
                                     )
            Plaintiff                )
                                     )
      v.                             )  Case No. 2:07 cv 34
                                     )
EVEREST NATIONAL INSURANCE           )
COMPANY,                             )
                                     )
            Defendant                )
*******************************)
EVEREST NATIONAL INSURANCE           )
COMPANY,                             )
                                     )
            Third-Party Plaintiff    )
                                     )
      v.                             )
                                     )
BRENNER FORD MONROE & SCOTT,         )
LTD., a law firm, STEPHEN A.         )
KOLODZIEJ, and K. AMY LEMON,         )
                                     )
            Third-Party Defendants)

OPINION AND ORDER

This matter is before the court on Everest National Insur-
ance Company's Motion for Summary Judgment Against Third-Party
Defendants Brenner Ford Monroe & Scott, Stephen Kolodziej, and K.
Amy Lemon [DE 238] filed on October 23, 2009, and Third-Party
Defendants' Cross Motion for Summary Judgment Against Third-Party
Plaintiff Everest National Insurance Company [DE 289] filed on
December 1, 2009.  For the following reasons, both motions are
**DENIED.**

Background

This matter began as a personal injury case filed by Rose-
land McGrath in the Lake County Superior Court, and it has

blossomed into a massive entanglement of legal conflicts involving at least three courts in two states.[1]  Because the motions are dispositive, the court will discuss the facts even though they have been outlined in several previous orders.

On February 11, 2005, McGrath fell as she was leaving Eli's Pub in Hammond, Indiana.  At the time of McGrath's fall, Eli's Pub was a named insured on a Commercial General Liability Policy of Insurance maintained with Everest.  McGrath's counsel advised Randy Godshalk, the principal member of the company operating Eli's Pub, Aidan Alan, LLC d/b/a Eli's Pub, of her claim against the pub.  Godshalk, in turn, reported her claim to Everest and its third party administrator, Risk Control Associates ("RCA").

On September 5, 2006, McGrath, filed a complaint against "Eli's Pub" in the Lake County Superior Court. Godshalk was served with the summons and complaint.  Godshalk also was the managing or principal member of Randall Neely, LLC, which owns the real estate and leases that property to Eli's Pub.  Plaintiff's counsel also sent a copy of the complaint to Peter Buthmann, the representative from RCA who had investigated the claim for Everest.

On September 8, 2006, an Everest manager contacted Stephen Kolodziej, an attorney at Brenner Ford, and Kolodziej advised

---

[1]This includes the underlying state court claim of *McGrath v. Eli's Pub*, an appeal of Everest's untimely motion to intervene in that case now pending in the Indiana Court of Appeals, this matter, and a suit filed in Illinois state court and removed to the Northern District of Illinois by the third-party defendants, Brenner Ford, against its malpractice carrier, Westchester Fire Insurance Company, 1:08-cv-5833.

Everest that Brenner Ford employed a licensed Indiana attorney who could defend the interests of Everest's insureds in the state court action.  On this basis, Everest retained Brenner Ford.

On September 18, 2006, in a letter from RCA to "Aiden Allen LLC t/a Eli's Bar, Randall Neely, LLC" (hereafter, "the insureds"), RCA indicated that it was "in receipt of a summons and complaint" and had retained the law firm to defend the insureds in the state court action.  This letter contained explicit instructions to the insureds to cooperate fully in the defense and investigation of the claim, instructions repeated in another letter the next day.

No appearance was entered by any attorney from Brenner Ford in the state court matter, and on October 4, 2006, an entry of default was entered against Eli's Pub.  A hearing on McGrath's damages was set for November 29, 2006.  In the interim, Kolodziej corresponded with McGrath's counsel on several occasions, first with a letter on October 13, 2006, informing McGrath that Eli's Pub, the defendant named in the complaint, was "merely a name, and not a legal entity amenable to suit."  (DE 146-3, Ex. 11) Although Kolodziej suggested a misnomer, he kept the insured's identity undisclosed and ignored return communications asking for information concerning the correct party.  This notion of an error in identity was repeated in a November 16, 2006 letter from Kolodziej to Godshalk, wherein Kolodziej explained that his research confirmed that because the named defendant was not an existing legal entity, the lawsuit was a nullity under Indiana

law.  (DE 146-3, Ex. 10)  Kolodziej described his strategy to

Godshalk:

> We are therefore taking no action with re-
> spect to that lawsuit, and will not file an
> appearance or any other pleading with the
> court until and unless plaintiff amends her
> complaint to name a real person or corpora-
> tion amenable to suit, [sic] and properly
> serves that defendant with summons.  Hope-
> fully, plaintiff will fail to do this prior
> to the expiration of the statute of limita-
> tions in February, 2007.

(DE 146-3, Ex. 10)

Counsel for McGrath, alerted by Kolodziej's evasive corre-

spondence and failure to provide subsequent answers, searched

state records in an effort to identify the proper legal entity to

be sued.  The records of the Indiana Alcohol and Tobacco Commis-

sion revealed the defendant's full name as "Aidan Alan, LLC d/b/a

Eli's Pub."  With this information in hand, McGrath obtained an

order from the state court correcting the misnomer of the defen-

dant.  The same day that the order correcting the defendant's

name was entered, Kolodziej sent McGrath's counsel another

letter, this time advising of his firm's representation of Aiden

Allen, LLC[2] and its intention to enter an appearance and file a

motion to vacate the order of default entered against Eli's Pub.

On November 27, 2006, Brenner Ford attempted to enter the

appearance of Kolodziej and K. Amy Lemon on behalf of the in-

---

[2]The various spellings of "Aidan" are intentional:  the court is pro-
viding accurate representations of the record.  The spelling on the policy is
"Aiden."  (Pltf. Ex. 1)  Eli's Pub is also referred to as "Eli's Bar" in the
policy and in correspondence from RCA.

sureds and filed an emergency motion to quash and vacate the
default order. At that time, however, Lemon was suspended from
the practice of law in Indiana for nonpayment of dues. Kolodziej
had petitioned the court to appear *pro hac vice*, relying on Lemon
as supporting local co-counsel. Both applications were denied -
Lemon's due to her suspension, and Kolodziej's as defective.
Lemon was able to reinstate her Indiana license on the morning of
the hearing,[3] and she alone appeared before Judge Robert Pete for
the damages hearing. She presented Kolodziej's *pro hac vice*
motion for a second time, which Judge Pete again denied as
defective. The court also heard arguments on the motion to quash
and vacate the entry of default, denied the motion twice on the
record, then proceeded to conduct the scheduled hearing on
McGrath's damages.

Lemon, sole counsel appearing for the insureds, was unpre-
pared to participate in the damages hearing. Although Kolo-
dziej's application to appear listed good cause for admittance
"due to the attorney-client relationship that has remained for an
extended period of time[,]" Lemon stammered a stream of reasons
why the hearing on damages should not proceed, including the fact
that "[her] office has not even had a chance to meet with the
client yet." (Transcript of Hearing on Damages, Nov. 29, 2006,
p. 8) McGrath called witnesses concerning damages, but Lemon

---

[3]Lemon's Indiana license has been suspended once again. *See* Cause No.
3:07-mc-00120 in N.D. Ind.; Cause No. 94500-0705-MS-211 in Indiana Supreme
Court.

failed to conduct any cross-examination, each time professing her lack of preparation. At the close of this hearing, the court foreclosed any further discussion on the entry of default, but allowed another setting for the defendants to provide evidence on damages.

After this initial hearing, Kolodziej reported the case's "unbelievable turn of events" in a letter to Buthmann at RCA.[4] Among other things, this letter distorted the nature of the strategy that Kolodziej had chosen to pursue by parenthetically identifying Godshalk, the representative of the insureds, as an Indiana attorney and using the pronoun "we" in describing the choice to ignore the pending lawsuit.

The second hearing on damages proceeded on December 11, 2006, but counsel for the insureds failed to present any evidence. At the close of the hearing, the court permitted briefs rather than argument, and McGrath submitted her Brief on Damages requesting an award of economic and non-economic damages in the sum of $15,825,024, plus any punitive damages the court deemed appropriate. Counsel for the insureds never filed a brief on damages nor any opposition to McGrath's Brief on Damages.

Just days after the close of the damages hearing, counsel for the insureds filed a Motion to Reconsider in an effort to be

---

[4]Comparison of the content of letters sent by Kolodziej throughout his representation of the insureds is rich with irony and prevarication. Kolodziej's claimed surprise at the default entry was overshadowed only by his litany of misleading accusations of unethical conduct by McGrath's counsel and Judge Pete.

relieved of the entry of default, but no hearing ever was held to address it.  Unfortunately, in March 2007, Judge Pete unexpectedly died before the issue of damages was resolved.  The judge temporarily assigned to Judge Pete's court entered an order on April 11, 2007, denying McGrath's Motion for Determination of the Damages On Submission Without Further Hearing, stating that without such a stipulation of the parties, a hearing would be held on the matter.

McGrath initiated this federal cause of action in February 2007, originally asserting claims against Godshalk, Randall Neely, LLC, and Everest.  McGrath's federal complaint alleged that Aidan Alan, LLC was insured under a policy with Everest separately from Randall Neely, LLC.  She alleged a count in negligence against Godshalk directly, another count in negligence against "Eli's Pub" as a sole proprietorship of Godshalk, and a count in negligence against Randall Neely, LLC.  McGrath further sought two counts seeking declaratory judgment:  the first, alleging that Godshalk was the alter ego of both LLCs, and the second, seeking declaration that independent acts of negligence committed by the defendants Godshalk and Randall Neely, LLC were separate "occurrences" according to the terms of the Everest policy.  This allegation sought to double the amount of coverage to $2 million.

Everest informed Godshalk that "it was [its] position that there may not be coverage for this matter under the Everest policy[,]" even though Randall Neely, LLC appeared on the Named

Insured Amendment of the policy and Everest's claims adjuster indicated that "[a] review of our policy indicates that Randall Neely, LLC is an additional insured under our policy." Everest agreed to defend the insureds subject to a reservation of rights that there may not be coverage under the policy.[5] The insureds again were reminded that "[p]olicy conditions require that you cooperate fully." In its answers to the original and the amended complaint, Everest denied that Randall Neely, LLC was a named insured on the policy. With this denial, Everest also denied that the policy's $2,000,000 General Aggregate benefits were applicable to McGrath's claims.[6]

The insureds were left with a state court entry of default on liability, a pending damages claim of $15 million, and a federal court claim for which the insurer, in full control of the defense, repeatedly denied that the policy provided coverage. Although counsel for McGrath informed Everest of the conflicts of interest involved, the insureds were not provided with independent representation. In July 2007, Godshalk personally retained the law firm of Rubino, Ruman, Crosmer, Smith, Sersic & Polen ("Rubino Ruman"), to represent him. In spite of repeated efforts to discuss conflicts of interest, settlement, and mediation from

---

[5]Daniel Leininger of the law firm Miner Lemon & Walston, LLP, was retained to defend the insureds at this time. The named partner, Lemon, is a relative of K. Amy Lemon of Brenner Ford.

[6]This court's Opinion and Order of June 19, 2008 [DE 118], held that the $2,000,000 General Aggregate indemnity benefits were applicable to McGrath's claims.

July 2007 to January 2008, Everest rebuffed any offers from
Rubino Ruman.  In fact, on many occasions, Everest's counsel
simply failed to respond.

McGrath attempted to settle both the state and federal
claims with Everest for the aggregate amount of $2,000,000, but
efforts to meet for settlement or mediation were spurned by
Everest.  As a result of failed settlement attempts, McGrath
filed a Renewed Motion for Determination of Damages on Submission
in the state court, and the court scheduled the motion for final
entry of damages on February 13, 2008.  Repeatedly, McGrath com-
municated the possibility of settlement within the policy limits
and further arranged a mediation on January 16, 2008.  Everest
was invited to attend the mediation, but counsel for Everest
refused.  Leininger attended on behalf of Everest's insureds, as
did Rubino Ruman.  Before reaching a compromise with McGrath on
any issue, Rubino Ruman attempted to confer with Everest and
faxed a letter inquiring as to previous settlement demands and
Everest's intentions to provide protection for the insureds in
the event of an excess judgment in state court.  Everest re-
sponded the following day denying McGrath's previous demands
within the policy limits, relying on the belief that the applica-
ble limit of $1,000,000 per occurrence capped the policy limit at
$1,000,000 rather than $2,000,000.  Everest also expressed the
belief that the state court default would be set aside and a
reluctance to address the contingency of an excess judgment.

On January 25, 2008, with less than a month before the scheduled ruling on damages in state court, the insureds and McGrath entered into an Assignment and Non-Execution Agreement ("Assignment"). McGrath promised to reduce the amount of her damages request by over $3,000,000, from $15,825,024 to $12,383,643, to withdraw her request for punitive damages, and to dismiss her federal claims against the insureds with prejudice. In exchange, the insureds agreed to withdraw the motions to reconsider and vacate before the state court and to assign to McGrath all causes of action held against Everest and its agents, whether arising in contract or tort, including all claims for compensatory and punitive damages. The Assignment was submitted to the court, and the state court entered its Order and Final Judgment in accordance with the stipulations of the parties on January 28, 2008.

On June 23, 2008, McGrath filed her Second Amended Complaint against Everest, which asserts claims for declaratory judgment that the state court judgment is binding, breach of contract, bad faith and breach of fiduciary duty, negligence, and fraud, all of which arose from Everest's failure to defend its insureds in the underlying state court claims for McGrath's personal injuries. On September 8, 2008, Everest lodged its Third-Party Complaint against Brenner Ford, Kolodziej, and Lemon, asserting negligence by the attorneys retained to defend the insureds and breach of contract for failing to enter an appearance on behalf of Eli's Pub and the subsequent entry of default, as well as seeking

reimbursement for all its legal fees, costs, and litigation expenses.

On September 23, 2009, this court entered partial summary judgment on McGrath's breach of contract claim against Everest for its failure to defend the insureds, finding the breach at the moment of the entry of default in the state court claim, but denied summary judgment on any tort claims by McGrath sounding in legal malpractice based upon Indiana's prohibition of assignment of such claims. Summary judgment also was denied on the remaining tort claims against Everest assigned to McGrath by the insureds based upon factual disputes. After surviving Brenner Ford's Motion to Dismiss, Everest filed its Motion for Summary Judgment Against Third-Party Defendants on October 23, 2009, and Brenner Ford filed its Cross Motion for Summary Judgment on December 1, 2009. These two third-party action summary judgment motions are before the court here.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986); *Williams v. Excel Foundry & Machine, Inc.*, 489 F.3d 309, 310 (7th Cir. 2007); *Treadwell v. Office of the Illinois Secretary of State*, 455 F.3d 778, 781 (7th Cir. 2006); *Branham v. Snow*, 392 F.3d 896, 901 (7th Cir. 2004). The burden is upon the

moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Ballance v. City of Springfield, Illinois Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004); *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Spiegula v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004); *Hines v. British Steel Corporation*, 907 F.2d 726, 728 (7th Cir. 1990). Finally, summary judgment "will not be defeated simply because motive or intent are involved." *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir. 1994). *See also Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999); *Plair v E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir. 1997); *United Association of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party

opposed to the summary judgment is such that a reasonable jury
might find in favor of that party after a trial.

> The inquiry performed is the threshold in-
> quiry of determining whether there is the
> need for a trial--whether, in other words,
> there are any genuine factual issues that
> properly can be resolved only by a finder of
> fact because they may reasonably be resolved
> in favor of either party.
>
> [T]his standard mirrors the standard for a
> directed verdict under Federal Rule of Civil
> Procedure 50(a), which is that the trial
> judge must direct a verdict if, under the
> governing law, there can be but one reason-
> able conclusion as to the verdict.
>
> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511,
> 91 L.Ed.2d at 212

*See also* ***Scott v. Harris***, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167
L.Ed.2d 686 (2007)("When opposing parties tell two different
stories, one of which is blatantly contradicted by the record, so
that no reasonable jury could believe it, a court should not
adopt that version of the facts for the purposes of ruling on a
motion for summary judgment."); ***Celotex Corp.***, 477 U.S. at 322-
23, 106 S.Ct. at 2553; ***Branham***, 392 F.3d at 901; ***Lawrence***, 391
F.3d at 841; ***Hottenroth***, 388 F.3d at 1027 (stating that a genuine
issue is one on which "a reasonable fact finder could find for
the nonmoving party"); ***Schuster v. Lucent Technologies, Inc.***, 327
F.3d 569, 573 (7th Cir. 2003).

Everest asks the court to enter summary judgment and find:
(1) that Brenner Ford owed contractual and tort duties to Ever-
est; (2) that Brenner Ford breached the contractual and tort
duties, committing legal malpractice; (3) that the breaches by

Brenner Ford proximately caused the entry of the default order
and the final state court judgment in the amount of
$12,383,643.00; and (4) that Everest's liability to McGrath for
the breach of its contractual duty to defend the insureds is
"solely predicated upon the third-party defendants' breach of
contract and legal malpractice."  Everest is seeking "summary
judgment for full indemnification" in the total amount owed to
McGrath.

To begin, Everest asks the court to find that Brenner Ford
owed it contractual and tort duties in the handling of the Eli's
Pub matter in state court, then argues its summary judgment
motion as a breach of contract claim.  Presumably, this is due to
this court's holding that Everest breached its contractual duty
to defend the insureds.  However, the relationship between an
insurer and its insured with a written contract differs from the
relationship between a client and his attorney.  "[C]ourts have
held repeatedly that legal malpractice claims are governed by
tort principles regardless of whether they are brought as a tort,
a breach of contract, or both."  *American International Adjust-
ment Co. v. Galvin*, 86 F.3d 1455, 1459 (7th Cir. 1996) (*citing
Shideler v. Dwyer*, 417 N.E.2d 281, 285-288 (Ind. 1981); *Keystone
Distribution Park v. Kennerk, Dumas, Burke, Backs, Long & Salin*,
461 N.E.2d 749, 751 (Ind. App. 1984), among others).  A plaintiff
may attempt to couch a legal malpractice claim as a breach of
contract to avoid a tort-based statute of limitations and a
contributory negligence defense.  *Galvin*, 86 F.3d at 1459 n.2.

14

The fact Everest has breached a contractual duty to defend
its insureds does not require a finding that Everest's third-
party claims against Brenner Ford sound in contract also.  There
is no dispute that Everest timely filed its claim against Brenner
Ford.  However, Brenner Ford's Fourth Affirmative Defense assert-
ing Everest's contributory negligence comes into play in the
analysis of the third-party claims.  Therefore, the claims that
Everest asserts against Brenner Ford will be controlled by the
tort principles of legal malpractice rather than contract princi-
ples.

To establish legal malpractice under Indiana law, a plain-
tiff must prove:  (i) that he employed the attorney; (ii) that
the attorney failed to exercise ordinary skill and knowledge; and
(iii) that such failure was the proximate cause of damage to the
plaintiff.  *Hedrick v. Tabbert*, 722 N.E.2d 1269, 1272-73 (Ind.
App. 2000).  In a typical legal malpractice case, the plaintiff
must show that the outcome of the underlying litigation would
have been more favorable but for the attorney's negligence.  *Id.*
Causation and the extent of the harm are commonly demonstrated by
a "trial within a trial."  *Picadilly, Inc. v. Raikos*, 582 N.E.2d
338, 344 (Ind. 1991).  Generally, the plaintiff in a legal mal-
practice case must prove that "as a result of the lawyer's in-
competence . . . the client . . . lost his case or paid a larger
judgment than would have been awarded had the defendant performed
competently."  *Transcraft v. Galvin, Stalmack, Kirschner, &*

*Clark*, 39 F.3d 812, 815 (7th Cir. 1994), *cert. denied*, 514 U.S. 1123, 115 S.Ct. 1990, 131 L.Ed.2d 876 (1995).

Here, there is no question that Everest employed Brenner Ford to defend the insureds in the underlying state court matter and that this court has held that Brenner Ford failed to exercise ordinary skill and care in that defense. Yet, there remains a genuine issue as to proximate cause. *See **Solnosky v. Goodwell***, 892 N.E.2d 174, 182 (Ind. App. 2008) (analyzing a legal malpractice case where there was no dispute over the duty owed and the breach of that duty, but focusing solely on proximate cause). "Proximate cause is an essential element in a legal malpractice claim." **Hedrick**, 722 N.E.2d at 1272 (*citing **Rice v. Strunk***, 670 N.E.2d 1280, 1283-84 (Ind. 1996)). The Indiana Supreme Court has stated that proximate cause is "primarily a question of fact to be determined by the jury." **Vernon v. Kroger Co.**, 712 N.E.2d 976, 981 (Ind. 1999).

This court's previous findings leave no doubt that Brenner Ford's failure was *a* proximate cause of the consequential damages ascribed to Everest: "Brenner Ford's malpractice was not the sole proximate cause of the state court final judgment." (DE 202, p. 39) In **Solnosky**, clients brought a legal malpractice action against their attorneys arising from advice the attorney gave the clients regarding duties owed to an employer while the clients were setting up a competing business. 892 N.E.2d at 182. On appeal, there was no dispute that the lawyer owed and breached a duty to the clients, and the focus of the claim was solely on

16

proximate cause.  *Id.*  In particular, ***Solnosky*** held that at the
summary judgment phase, there remained "genuine issues of mate-
rial fact regarding what may have happened during the four months
between [the lawyer's] advice and [start of the new business]."
*Id.*

This case is analogous:  Everest breached a contractual duty
to defend its insureds based in part on the defective legal
advice from Brenner Ford.  However, many things happened between
the time Brenner Ford chose not to answer the complaint and the
time that the final judgment was entered.  Just as in ***Solnosky***,
summary judgment must be denied, and a jury must determine the
apportionment of liability for the consequential damages.

Along these lines, the malpractice action against Brenner
Ford is governed by Indiana's Comparative Fault Act as explained
by the Indiana Supreme Court:

> The Comparative Fault Act, Ind. Code §34-51-
> 2-1, applies generally to damages actions
> based in fault that accrued on or after Janu-
> ary 1, 1985.  The primary objective of the
> Act was to modify the common law rule of
> contributory negligence under which a plain-
> tiff was barred from recovery where he was
> only slightly negligent.  The Act seeks to
> achieve this result through proportional
> allocation of fault, ensuring that each per-
> son whose fault contributed to cause injury
> bears his or her proportionate share of the
> total fault contributing to the injury.
> (footnotes and some citations omitted)
>
> ***Mendenhall v. Skinner & Broadbent Co.***, 728
> N.E.2d 140, 142 (Ind. 2000)

*See also* ***Galvin***, 86 F.3d at 1462 (discussing failed attempt by
attorney to proffer contributory negligence defense against

insurer). A jury trial will determine the allocation of fault. *See, e.g., Solnosky*, 892 N.E.2d at 179 ("[T]he jury returned a general verdict finding the Lawyers 100% at fault and awarding Solnosky $1,491,886 in damages.").

In obvious conflict with the application of the Comparative Fault Act, Everest's final request is for full indemnity from Brenner Ford for the consequential damages owed to McGrath. "Generally, the right of indemnification arises only by contract, express or implied, or by statutory obligation; however, right to indemnity may be implied at common law." 15 *Ind. Law Encyclopedia* Indemnity §5 (2009). Where there is no written indemnity agreement, any claim for implied indemnity must be based on a common law theory. ***Walsh Construction Co. of Illinois v. Janssen & Spaans Engineering, Inc.***, 2003 WL 23104231, *2 (S.D. Ind. 2003). *Cf.* ***Indianapolis City Market Corp. v. MAV, Inc.***, 915 N.E.2d 1013, 1023-24 (Ind. App. 2009)(discussing indemnification clauses in contracts). Indemnity implied at common law is created by a relationship between the parties, such as an employer-employee or a principal-agent relationship. ***McClish v. Niagara Machine & Tool Works***, 266 F.Supp. 987, 989 (S.D. Ind. 1967). The party seeking indemnification must be wholly without fault. ***Bourbon Mini-Mart, Inc. v. Gast Fuel and Services, Inc.***, 783 N.E.2d 253, 257 (Ind. 2003); ***Indianapolis Power & Light Co. v. Brad Snodgrass, Inc.***, 578 N.E.2d 669, 671 (Ind. 1991); ***Sears, Roebuck and Co., Inc. v. Boyd***, 562 N.E.2d 458, 461 (Ind. App. 1990).

18

Here, there can be no indemnity based on the undisputed facts before the court. First, no contractual indemnity agreement was entered into by the parties or provided to the court. Second, any application of indemnity implied at common law by the principal-agent relationship here is negated by the facts of this case. Indemnity requires clean hands, and Everest was a party to the misguided strategy – even if merely in a passive way – by its knowledge of the strategy and allowing it to proceed. Although the evidence available does not pinpoint when Everest first was made aware of Brenner Ford's plan, in a letter dated November 16, 2006, Kolodziej informed Godshalk of this strategy for handling the state court complaint and provided Everest and RCA representatives with a copy of the letter. (DE 146-3, Ex. 10, p. 7) Passive though Everest's participation may have been, the mere acquiescence to the flawed strategy can render Everest's hands unclean. *See Sears, Roebuck*, 562 N.E.2d at 461 n.3 ("Although other jurisdictions have permitted indemnification where the indemnitee was passively or secondarily negligent, Indiana has repudiated the active/passive negligence distinction.") (citations omitted).

Although Everest has been found liable under operation of the non-delegable contractual duty to defend within the insurance policy, there exists a genuine issue of fact as to whether Everest was otherwise without fault and if at fault, the percent-

age attributed to it.[7]  It will be up to a jury to look at the accrued damages and to apply the Indiana Comparative Fault Act to apportion the responsibility among the parties who failed to answer the complaint, failed to present evidence refuting the alleged damages, and refused to enter into meaningful settlement negotiations.

Returning to the prayer for relief presented by Everest, this court finds that Brenner Ford indeed owed a duty of care to Everest in the handling of the defense of the Everest insureds and breached that duty by the implementation of the oft-quoted "misguided strategy" of refusing to enter an appearance and failing to respond to the complaint naming "Eli's Pub" as the defendant.  However, the issues remaining as to comparative fault allocation between Everest and Brenner Ford preclude a finding of proximate cause on the legal malpractice as to the consequential damages awarded to McGrath from Everest.[8]  Likewise, Everest's knowledge of Brenner Ford's legal strategy, passive as it may

---

[7]In the Opinion and Order of September 24, 2009, (DE 203) denying Brenner Ford's Motion to Dismiss the Third-Party Complaint, the court was required to accept as true the well-pleaded facts in Everest's Third-Party Complaint.  Everest pleaded and argued constructive liability imposed upon a third person "who is otherwise without fault."  However, the fact inquiry in deciding a summary judgment motion requires the court to assess all facts in the record, which includes the letter from Kolodziej informing Everest of his strategy.

[8]It is important to note that the entry of consequential damages in the amount of the final state court judgment was based upon the very specific and unique legal precedent concerning the foreseeability of an insurer of the entry of default and full amount of that judgment when the insurer failed to defend its insured.  (*See* Opinion and Order, DE 202, pp 42-44)  The same standard for finding foreseeability cannot be applied to the lawyers in the proximate cause analysis here.

have been, eliminates the availability of indemnity as a remedy. For these reasons, Everest's Motion for Summary Judgment Against Third-Party Defendants is **DENIED.**

In its Cross Motion for Summary Judgment, Brenner Ford asks this court to hold the following: (1) that the October 4, 2006 default order issued in Lake County Superior Court is void *ab initio* as a matter of law; (2) that the November 21, 2006 *nunc pro tunc* default order issued in Lake County Superior Court is void *ab initio* as a matter of law; and (3) that the supposedly void default order and void party name correction order preclude a finding of proximate cause for the resulting damages.

All arguments attempting to persuade this court to declare orders from the Lake County Superior Court void run contrary to the full faith and credit that federal courts afford state judgments. *See Gilbert v. Illinois State Bd. of Education*, ___ F.3d ___, 2010 WL 59188, *4 (7th Cir. January 11, 2010)(discussing "fundamental misunderstanding about the structure of the parallel judicial systems in the United States," including that some constitutional law issues must be adjudicated in federal courts). "State courts possess not only the authority but also the duty to enforce federal law." *Id.* Any due process arguments that Brenner Ford argues here could have been raised in the state court and may not be considered in subsequent litigation. Furthermore, this court has fully analyzed such arguments that

the state court orders are void and determined that those argu-
ments are without merit.[9]  (*See* DE 298, pp. 4-16)

Because this court will not declare the two state court
orders void, Brenner Ford's third prayer, that finding the orders
void eliminates the possibility of any finding of proximate cause
by Brenner Ford, is moot.  This court cannot rewrite the history
of the underlying state court matter that is the basis for the
matter at hand.

As explained above, Brenner Ford is correct in its belief
that the "trial within a trial" method of determining the final
outcome of the legal malpractice claims by Everest are proper,
but Brenner Ford's conclusion that Everest cannot prove its case-
within-case is wrong.  Everest has the right to show a jury that
the outcome of underlying litigation would have been more favor-
able but for Brenner Ford's negligence.  *See **Hedrick***, 722 N.E.2d

---

[9]The court has explained in its prior Opinion and Order the Indiana
statutes and rules regarding registration of business names, correction of
parties named in complaints, and relation back. Brenner Ford's argument citing
the Indiana Rules of Professional Conduct, implying that McGrath's counsel
perpetrated a violation of professional ethics, and concluding that such a
violation could not be foreseen and is therefore, by law, not malpractice is a
baseless, defective attack on the state court proceedings.  The argument that
"there is no connection between Brenner Ford's alleged malpractice (not
appearing or answering the first complaint against 'Eli's Pub,') - - and the
subsequent entry of a stipulated judgment by McGrath and Godshalk" misses the
mark.  First, there was a direct link between that failure to appear and the
default entered and **repeatedly sustained** by Judge Pete.  Second, Brenner
Ford's veiled accusations of professional misconduct that "break[s] the
proximate cause chain" is the same argument restated in a different fashion.
Again with this argument as with all its arguments, Brenner Ford asks this
court to disregard the entry of the stipulated judgment by the state court, an
action that this court cannot and will not do because of res judicata doc-
trines and full faith and credit afforded the state court action.  (*See* DE
298, pp. 12-15)

at 1272 ("To prove causation and the extent of the harm, the client must show that the outcome of the underlying litigation would have been more favorable but for the attorney's negligence. This proof typically requires a 'trial within a trial.'").

The issues of proximate cause and comparative fault for the consequential damages charged to Everest require a jury's fact determinations.  This court has found that Everest's contractual duty to defend was breached when the default was entered against the insureds in the state court claim and that the legal strategy employed by Brenner Ford was legal malpractice as a matter of law.  As discussed above, Everest's knowledge and seeming approval of the doomed strategy prevents any equitable remedy requiring clean hands, such as indemnity.  A trial-within-a-trial is necessary for a jury to find or allocate fault between Everest and Brenner Ford for the failure to defend the insureds for Everest's breach of contract.  The claims that remain between McGrath and Everest are solely claims sounding in tort – minus any legal malpractice claims – that were assigned by the insureds such as bad faith, negligent failure to provide conflict-free counsel, and negligent failure to settle.

Therefore, based on the reasoning previously rendered in the last Opinion and Order, the Third-Party Defendants' Cross Motion for Summary Judgment Against Third-Party Plaintiff Everest National Insurance Company [DE 289] is **DENIED.**

_____

For the foregoing reasons, Everest National Insurance Company's Motion for Summary Judgment Against Third-Party Defendants Brenner Ford Monroe & Scott, Stephen Kolodziej, and K. Amy Lemon [DE 238] filed on October 23, 2009, is **DENIED.** The Third-Party Defendants' Cross Motion for Summary Judgment Against Third-Party Plaintiff Everest National Insurance Company [DE 289] filed on December 1, 2009, is **DENIED.**

ENTERED this 11th day of February, 2010.

s/ ANDREW P. RODOVICH
United States Magistrate Judge